UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

05 11257 NG

PAULA O'DONNELL

Plaintiff

v.

DONNA BRIGGS, BRENDAN HALL,
WILLIAM FRANCIS, MARY LOU MEGAN
and MARIAN DOUCETTE

Defendants

United States District Court

Civil Action No.

(Suffolk Superior Court
Civil Action No. 05-1670-A)

MAGISTRATE JUDGE

RECEIPT #
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK
DATE

NOTICE OF REMOVAL OF CIVIL ACTION

Please take notice that pursuant to 28 U.S.C. §1441 et al., defendants Donna Boggs, Brendan Hall, William Francis, Mary Lou Meighan and Marion Doucette remove Civil Action No. SUCV2005-1670-A entitled *Paula O'Donnell v. Donna Briggs, Brendan Hall, William Francis, Mary Lou Megan and Marian Doucette*, currently pending in the Superior Court of Suffolk County, Boston, Massachusetts to the United States District Court for the District of Massachusetts. The grounds for this removal are as follows:

BACKGROUND

1.      In this lawsuit, the plaintiff has filed a tort action against various members of the Board of Directors and the former Manager/CEO of the Boston Globe Employees Credit Union ("Credit Union"). The plaintiff alleges that the defendants tortiously interfered with her contractual relationship with the Credit Union.

2.      There is a collective bargaining agreement (CBA) between the Credit Union and the Office and Professional Employees International Union, Local 6, AFL-CIO. Ms. O'Donnell

was the Shop Steward for Local 6 and signatory to the CBA during some of the relevant period. Defendants Hall and Doucette were also signatories to the agreement on behalf of the Credit Union.

3. Section 301 of the Labor Management Relations Act (29 U.S.C. §185) provides for federal jurisdiction for all claims that implicate the CBA.

4. Plaintiff's contractual relationship with the Credit Union is based on the CBA. A determination of whether the defendants tortiously interfered with this contractual relationship requires interpretation of the CBA. Plaintiff's claims are therefore subject to federal jurisdiction by their nature.

5. Pursuant to 28 USC §1331 the District Court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

6. Pursuant to 28 USC §1441(a) except as otherwise expressly provided by act of Congress, any civil action brought in a State Court of which the District Courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the District Court of the United States for the district and division embracing the place where such action is pending.

7. The United States District Court for the District of Massachusetts is the District Court for the district and division embracing matters pending at the Superior Court of Suffolk County, Boston, Massachusetts.

8. Diversity of citizenship is not a prerequisite, since this is a federal question.

9. This is a federal question and, therefore, the amount in controversy is not an issue.

10. This notice is being filed within 30 days of acceptance of service of plaintiff's complaint on June 10, 2005. The complaint was the initial pleading in this matter. The

acceptance of service of the complaint was the first receipt by the defendant of the initial pleading.

11. A true and correct copy of the summons and complaint served upon the defendant as of the time of the filing of this Notice of Removal is attached hereto as Exhibit 1 pursuant to 28 U.S.C. §1446(a).

12. True and correct copies of the Notice of Removal will be served upon plaintiff's counsel and filed with the Clerk of the Superior Court of Suffolk County, Boston, Massachusetts.

13. Within ten days after filing this Notice of Removal, defendants will file in this Court certified copies of all state court records and proceedings and a certified copy of all state court docket entries, including a copy of the notice of removal.

14. In filing the Petition for Removal and the accompanying Notice of Removal the defendant does not waive any of its defenses available in this action.

DONNA BRIGGS, BRENDAN HALL,
WILLIAM FRANCIS, MARY LOU
MEIGHAN and MARION DOUCETTE,

By their attorneys,

_____
Harvey Weiner, BBO#519840
Robert J. O'Keefe, BBO#655653
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

June 16, 2005

## CERTIFICATE OF SERVICE

I, Harvey Weiner, hereby certify this 16th day of June, 2005 that I served a copy of the foregoing document by first-class mail, postage prepaid upon all counsel of record:

Scott Adams, Esq.
92 State Street, 9th Floor
Boston, MA 02109

_____
Harvey Weiner

PABOS2:ROKEEFE:615113_1

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, ss

SUPERIOR COURT
Docket No: 05-1670 A

Paula O'Donnell,
    Plaintiff,
v.

Donna Boggs, Brendan Hall, William Francis,
Mary Lou Megan, Bob Sylvester, and Marian
Doucette
    Defendants.

Complaint
and
Jury Demand

**Parties:**

1. Plaintiff Paula O'Donnell is an individual who resides at 18 Hill View Lane in Plymouth, MA 02360

2. Defendant Marian Doucette is a Mass. resident whose address is currently unknown.
3. Defendant Brendan Hall is a Mass. resident whose address is currently unknown.
4. Defendant Donna Boggs is a Mass. resident whose address is currently unknown.
5. Defendant William Francis is a Mass. resident whose address is currently unknown.
6. Defendant Mary Lou Megan is a Mass. resident whose address is currently unknown.

**Facts:**

7. Ms. O'Donnell began employment with the Boston Globe Employees Credit Union in 1974. She has also been a member of that credit union since her hiring.

8. In early 1998 Ms. O'Donnell, then Head Teller, discovered fraud and embezzlement of credit union funds by the Manager/CEO Gene Farrell, Jr. She reported this to the security department and to the Board of Directors ["Board."]. Following an investigation confirming Mr. Farrell's misconduct, he was terminated.

9. Ms. O'Donnell's reporting of the fraud and embezzlement by Mr. Farrell engendered hostility and antagonism from certain members of the board, including Brendan Hall and Bob Sylvester. Furthermore, other members of the Board acted negatively to Ms. O'Donnell, and behaved toward her in a manner unusual and not previously experienced.

10. In December 1998 Marion Doucette was appointed to the vacant position of Manager/CEO.

11. In March of 1999 Ms. O'Donnell was appointed to the position of Bookkeeper, and in October of 2000 she was appointed to the position of Systems Manager.

12. In November of 2000 Ms. Doucettee hired her daughter Linda Doucette for the position of Bookkeeper. Ms. Doucette misrepresented her daughter's qualifications for the job in order to have her hired when she was otherwise not sufficiently qualified, and then arranged to have her daughter paid $10 more per week than the union compensation schedule allowed. The previously terminated Manager/CEO, Mr. Farrell, had also arranged to have his relatives hired and paid more than the union contract allowed—a fact that was known to Ms. Doucette.

13. Ms. O'Donnell complained to Ms. Doucette regarding the improper hiring and compensation of her daughter Linda, and also brought the issue to the attention of the Board.

14. Soon afterward Ms. Doucette began a course of retaliation, intimidation and interference directed at Ms. O'Donnell. She began to verbally harass and intimidate Ms. O'Donnell, obstructed performance of her duties, and prevented her from fully participating in managerial tasks that would allow her to maintain or advance her position in the Credit Union.

15. While Ms. Doucettte's daughter Linda was bookkeeper she bounced over 100 checks on her personal credit union account. These checks were processed and paid even though Linda had no funds to cover the checks. This was contrary to credit union procedure, policy and regulation but approved and directed by Ms. Doucette. Ms. O'Donnell learned of this and complained to Ms. Doucette and reported the matter to the Board. Neither Ms. Doucette or the Board took appropriate actions consistent with credit union procedure and policy, which would normally require suspension of Linda's employment and account privileges.

16. After Ms. O'Donnell's complaints and reports of these incidents, Ms. Doucette's conduct towards her became more abusive and threatening, and the Board's inaction and willful blindness towards the incidents and the retaliation became more notable.

17. On or about November 15, 2002 Linda deliberately manipulated the accounting system and overrode security procedures in order to clear a personal check when there were insufficient funds to cover it. This misconduct was discovered by another credit union employee and reported to Ms. O'Donnell, and then reported to the Board.

18. Ms. Doucette's conduct towards Ms. O'Donnell became more abusive and threatening, and the Board's inaction and support for Ms. Doucette continued.

19. During January of 2003 Ms. O'Donnell began investigating un-posted ATM /Debit-Card transactions that Ms. Doucette's daughter Linda was responsible for but had failed to register. Ms. O'Donnell discovered that Linda was manipulating the clearing account and falsifying financial records in order to fraudulently obtain funds. This was again reported to Ms. Doucette, and then to the Board. This matter was investigated and Linda was terminated in February 2003.

20. Upon information and belief this matter was reported to the Board of Banking by individuals unknown. A Board Member, William Francis and Donna Boggs responded to this situation by blaming Ms. O'Donnell in a hostile and antagonistic manner for reporting the incident.

21. On or about April 4, 2003 Ms. O'Donnell discovered that she had been locked out of the computer system through manipulation of certain security measures, and could no longer monitor Linda Doucette's still active credit union account. In fact, Linda was continuing to write bad checks and the lockout had been put in place by Ms. Doucette to prevent Ms. O'Donnell from auditing her daughter's account and learning this fact. This matter was brought to the Board's attention by Ms. O'Donnell but she was discouraged by board member Donna Boggs from pursuing the matter. In fact, Ms. Boggs ordered Ms. O'Donnell to clear certain overdrawn checks submitted by Linda, even though to do so was contrary to credit union procedure, policy and regulation.

22. From shortly after Ms. O'Donnell's initial complaints and reporting of the improper hiring and compensation of Ms. Doucettes's daughter Linda, Ms. Doucette engaged in an escalating course of retaliation, intimidation, and interference, including daily verbal abuse, almost weekly acts of physical violence leading to a reasonable fear for personal safety, and weekly interference with the performance of Ms. O'Donnell's duties, etc. This continued, escalating conduct, which was intentional on the part of Ms. Doucette, and negligently or intentionally allowed to continue by the Board, resulted in both actual physical and emotional injury to Ms. O'Donnell and such a hostile, unsafe work environment that, upon prudent medical advice, she could not continue to work for the credit union and had to take a leave of absence from August 15, 2003.

23. Following Ms. O'Donnell's complaints to the Board regarding (i) Ms. Doucettes actions in allowing and protecting her daughter Linda from the consequences of her misconduct, and (ii) Ms. Doucette's retaliation and interference directed at Ms. O'Donnell, the Board and its individual members had actual knowledge of the misconduct, the retaliation, and the interference in consequence of Ms. O'Donnell's written and oral complaints to the Board, and through various Union grievance procedures. The Board exhibiting willful blindness, intentionally and wrongfully refused to take reasonable and possible actions to fully protect the interests of the credit union and its members, and the interests of Ms. O'Donnell in having a safe, secure and non-hostile work environment. In fact, the Board and particular Board members, intended to and did, by act and omission, attempt to make Ms. O'Donnell's employment situation so hostile that she would either leave employment or act in derogation of her duties. In fact, the Board's failure to take any remedial action, and its unwavering support of Ms. Docuette created a situation in which they prevented Ms. O'Donnell from carrying out her duties and resulted in a constructive discharge.

24. Following Ms. O'Donnell's absence from work, she attempted through the Board, to correct the situation and return to work but the Board, including members Donna Boggs, Brendan Hall, William Francis, and Mary Lou Megan continued to refuse to acknowledge the problem

3

and take any action to cure or mitigate the abusive, dangerous and hostile environment, and did so in retaliation for Ms. O'Donnell's conduct in complaining of and reporting improper conduct at the Credit Union. The Board eventually terminated Ms. O'Donnell. Eventually the Board finally took belated steps to remove Ms. Doucette from her employment.

### Count 1: Tortious Interference with Contractual Relations by Marian Doucette

25. Plaintiff repeats the allegations set forth elsewhere in this complaint.

26. Plaintiff had an ongoing employment relationship with the credit union, with reasonable expectation of continuing and prospective employment. Defendant Marian Doucette was at all times aware of this.

27. Defendant Marian Doucette knowingly acted in such a manner so as to cause Plaintiff to be unable to perform her required duties for the credit union, and induced the credit union to terminate Plaintiff's employment relationship.

28. Defendant Marian Doucette acted out of improper motive, for self-gain and in retaliation for Plaintiff's complaints and reporting of improper conduct, which Plaintiff had a duty to do.

29. Defendant Marian Doucette's wrongful conduct has caused Plaintiff injury through the loss of employment, and damaged her in an amount that cannot as yet be accurately determined.

### Count 2: Tortioius Interference with Contractual Relations by Various Board Members

30. Plaintiff repeats the allegations set forth elsewhere in this complaint.

31. Plaintiff had an ongoing employment relationship with the credit union, with reasonable expectation of continuing and prospective employment. Defendants Donna Boggs, Brendan Hall, William Francis, and Mary Lou Megan were at all times aware of this.

32. Defendants Donna Boggs, Brendan Hall, William Francis, and Mary Lou Megan knowingly acted in such a manner so as to cause Plaintiff to be unable to perform her required duties for the credit union, and induced the credit union to terminate Plaintiff's employment relationship.

33. Defendants Donna Boggs, Brendan Hall, William Francis, and Mary Lou Megan acted out of improper motive, for self-gain and in retaliation for Plaintiff's complaints and reporting of improper conduct, which Plaintiff had a duty to do.

34. Defendants Donna Boggs, Brendan Hall, William Francis, and Mary Lou Megan's wrongful conduct has caused Plaintiff injury through the loss of employment, and damaged her in an amount that cannot as yet be accurately determined.

**Prayer for Relief**

Wherefore, the Plaintiff respectfully request that this Honorable Court:

1. Order judgment in Plaintiff's favor against Defendants in such amount as will compensate Plaintiff fully for all injuries and damages, including costs, and pre- and post-judgment interest as allowed;
2. Order such further relief as this Court deems fair and just.

**Jury Demand**

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted for Plaintiff,
By his attorney,

dated: 4/28, 2005

Scott Adams (BBO# 639166)
92 State St., 9th Flr.
Boston, MA 02109
Tel: (617) 742-4554

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Paula O'Donnell

## DEFENDANTS
Donna Boggs, Brendan Hall, William Francis, Mary Lou Megan and Marion Doucette

(b) County of Residence of First Listed Plaintiff   Plymouth
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Scott Adams, Esq.
92 State Street, 9th Floor, Boston, MA 02109

Attorneys (If Known)
Harvey Weiner, Esq., Peabody & Arnold LLP
30 Rowes Wharf, Boston, MA 02110

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☒ 3   Federal Question (U.S. Government Not a Party)
- ☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment |  ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract |  ☐ 385 Property Damage Product Liability | ☒ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury |  | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / Habeas Corpus: |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  ☐ 530 General |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  |  |
|  |  ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition |  |  |  |
|  | ☐ 440 Other Civil Rights |  |  |  |

## V. ORIGIN   (Place an "X" in One Box Only)
- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. Section 185
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions:)
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)  Paula O'Donnell v. Donna Boggs, et al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    - [ ] I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.
    - [X] II. 195, 196, 368, 400, 440, 444-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.  for patent, trademark or copyright cases
    - [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.
    - [ ] IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.
    - [ ] V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]  NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]  NO [X]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]  NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]  NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [X]  NO [ ]

    A. If yes, in which division do all of the non-governmental parties reside?
       Eastern Division [X]   Central Division [ ]   Western Division [ ]

    B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
       Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]  NO [X]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Harvey Weiner
ADDRESS  Peabody & Arnold LLP, 30 Rowes Wharf, Boston, MA 02110
TELEPHONE NO.  (617) 951-2100

(CategoryForm.wpd - 5/2/05)