UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

PAULA O'DONNELL

    Plaintiff

v.

DONNA BOGGS*, BRENDAN HALL,
WILLIAM FRANCIS, MARY LOU MEGAN
and MARIAN DOUCETTE

    Defendants

Civil Action No. 05-11257-NG

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

Pursuant to Fed. R. Civ. P. 56, Defendants Donna Boggs, Brendan Hall, William Francis, Mary Lou Meighan and Marion Doucette move to dismiss Plaintiff's claims as a matter of law. Plaintiff's claims of tortious interference with contractual relations implicate the collective bargaining agreement ("CBA") that governs the employment relationship between Plaintiff and her former employer. As such, Plaintiff's claims are subject to complete preemption by § 301 of the Labor Management Relations Act ("LMRA") (29 U.S.C. § 185), and must be dismissed.

Plaintiff Paula O'Donnell ("O'Donnell") is a former employee of the Boston Globe Employees Credit Union ("Credit Union"). She was a member of the Office and Professional Employees International Union, Local 6, AFL-CIO ("Local 6"), which negotiated a CBA with

---

* Defendant Donna Boggs was incorrectly identified in Defendants' Notice of Removal as Donna Briggs.

the Credit Union. O'Donnell was the Shop Steward for Local 6 and signatory to the CBA during some of the relevant period.

The Defendants are current and former members of the Credit Union's Board of Directors. Marion Doucette is also the former Manager/CEO of the Credit Union. Defendants Hall and Doucette were also signatories to the CBA on behalf of the Credit Union during the same period.

Plaintiff claims she was treated hostilely after she made complaints to the Board of Directors about the purported misconduct of Ms. Doucette's daughter, a former employee. She alleges that she was constructively discharged after the Board failed to adequately address her complaints and resolve the hostile working environment that developed after Plaintiff's complaints to individual members of the board. Local 6 filed a grievance on her behalf. She filed this tort action against various members of the Board of Directors and the former Manager/CEO of the Credit Union, alleging that the Defendants tortiously interfered with her contractual relationship with the Credit Union.

Section 301 of the LMRA provides for federal preemption for all claims that implicate a collective bargaining agreement. Plaintiff's contractual relationship with the Credit Union is based on the CBA. A determination of whether the Defendants tortiously interfered with this contractual relationship requires interpretation of the CBA. Plaintiff's claims are therefore preempted and must be dismissed.

ESSENTIAL UNDISPUTED FACTS

1.  O'Donnell is a former employee of the Credit Union who alleges that over the course of several years she was harassed and ultimately constructively discharged. Complaint at ¶¶ 7, 23.

2. The Credit Union is a state-chartered financial institution incorporated in 1962 and located in Boston, Massachusetts. Affidavit of Harvey Weiner at ¶ 6.

3. Defendant Donna Boggs was a member of Credit Union's Board of Directors at all times relevant through 2004 and served as Chairman during the relevant period. Id. at ¶ 7.

4. Defendant J. Brendan Hall was a member of the Credit Union's Board of Directors at all times relevant. Id. at ¶ 8.

5. Defendant William Francis has been a member of the Credit Union's Board of Directors since 2000. Id. at ¶ 9.

6. Defendant Mary Lou Meighan has been a member of the Credit Union's Board of Directors since 2001. Id. at ¶ 10.

7. Defendant Marion Doucette was an employee of the Credit Union for 30 years. She served on the Credit Union's Board of Directors at all times relevant, and served as Manager/CEO of the Credit Union from June 1998 until her retirement on July 2, 2004. Id. at ¶ 11.

8. O'Donnell was employed by the Credit Union from 1974 through February 13, 2004. Complaint at ¶ 7; Weiner Aff., Ex. 10: Letter from Weiner to Adams dated February 13, 2004.

9. Credit Union non-managerial employees are covered by a CBA between the Credit Union and Local 6. The text of the relevant portions of the CBA remained unchanged from the January 1, 2000 agreement through the January 1, 2003 agreement. Weiner Aff. at ¶ 14.

10. O'Donnell was a signatory to the CBA as Shop Steward for Local 6 for the CBA in effect from January 1, 2000 through December 31, 2002, and was a member of Local 6 at all relevant times. Id. at ¶ 15; Ex. 1 at 18.

11. Defendants Marion Doucette and J. Brendan Hall were also signatories to the CBA during the same period. Weiner Aff. at ¶ 16; Ex. 1 at 18. Doucette signed as Manager/CEO and Hall signed as a Member of the Board of Directors. Id.

12. Defendants Doucette, Hall and Marylou Meighan were signatories to the CBA in effect from January 1, 2003 through December 31, 2005. Weiner Aff. at ¶ 17; Ex. 2 at 18. Hall and Meighan signed as members of the Board of Directors and Doucette signed as Manager. Id.

13. The CBA includes: Article VI, which vests all management rights in the Credit Union; Article XV, which addresses unpaid leaves of absence; Article XIX, which provides a grievance procedure; Article XX, which addresses discipline and discharge; and Article XXI, which provides for arbitration of grievances. Weiner Aff. at ¶ 18; Ex. 1 at 3, 8, 11, 13; Ex. 2 at 3, 8, 11, 13.

14. Article VI of the CBA provides in part:

"All disciplinary action undertaken by Management against a member of the Bargaining Unit shall be for just cause and will be conducted in private and in such manner as to create respect for authority and preserve individual dignity. It is the responsibility of Management to inform individuals directly and in private of any alleged failure to perform their work properly so that the necessary changes and/or corrections can be made as speedily as possible."

Weiner Aff. at ¶ 19; Ex. 1 at 3-4; Ex. 2 at 3-4.

15. Article XV of the CBA states as follows:

"Unpaid Leaves of Absence – Unpaid leaves of absence for good and sufficient reason in the opinion of the Employer shall be granted upon written request and shall not be unreasonably denied. Such leaves shall not be construed to be a termination of employment so long as they last no more than 6 months and the employee does not become employed by another employer. The employer will

not be obligated to maintain benefits coverage during leaves covered by this article, but may do at its discretion considering each case."

Weiner Aff. at ¶ 20; Ex. 1 at 8-9; Ex. 2 at 8-9.

16. Article XX of the CBA states in part:

"The Union and the Employer agree that discipline, including discharge, must be administered fairly and consistently for just cause. Discipline will typically be progressive. The offense facts and circumstances will determine the level of discipline to be applied regardless of prior discipline, if any...

...A minimum of two written warnings will be issued before an employee may be dismissed except in the case of *gross neglect of duty* or serious misconduct." [Emphasis added.]

Weiner Aff. at ¶ 21; Ex. 1 at 13; Ex. 2 at 13.

17. O'Donnell did not return to her job after August 14, 2003. Her sick leave and vacation time expired on or about November 30, 2003. Weiner Aff. at ¶ 22.

18. Through her attorney, Scott Adams, O'Donnell indicated that she would not return to work because of what she perceived to be a hostile working environment. Weiner Aff. at ¶ 23; Ex. 3: Letter from Adams to Boggs dated October 27, 2003.

19. The letters from Attorney Adams acknowledged that O'Donnell's claims needed to be addressed through the grievance procedure provided for in the CBA. Weiner Aff. at ¶ 24; See, e.g., Ex. 3: Letter from Adams to Donna Boggs dated October 27, 2003; Ex. 5: Letter from Adams to Weiner dated December 30, 2003; Ex. 7: Letter from Adams to Weiner dated January 19, 2004.

20. On or about January 19, 2004, O'Donnell requested an unpaid leave of absence. Weiner Aff. at ¶ 25; Ex. 7: Letter from Adams to Weiner dated January 19, 2004. The request was denied by the Board of Directors on the grounds that O'Donnell had not provided good and

sufficient reason to grant the request as required by Article XV of the CBA. Weiner Aff. at ¶ 25; Ex. 8: Letter from Weiner to Adams dated February 2, 2004; Ex. 1 at 8; Ex. 2 at 8.

21.     On February 2, 2004, the Board of Directors gave O'Donnell one final opportunity to end her unauthorized absence and return to work on February 17, 2004. Weiner Aff. at ¶ 26.

22.     O'Donnell declined the opportunity to end her unauthorized absence from work. Weiner Aff. at ¶ 27; Ex. 9: Letter from Adams to Weiner dated February 11, 2004. As a result, the Board of Directors terminated O'Donnell for gross neglect of duty, as allowed for in Article XX of the CBA. Weiner Aff. at ¶ 27; Ex. 10: Letter from Weiner to Adams dated February 13, 2004; Ex. 2 at 13.

23.     Local 6 filed a grievance on behalf of O'Donnell on February 25, 2004. Weiner Aff. at ¶ 28; Ex. 11: Letter from Lisa Lemieux to Marion Doucette dated February 25, 2004. The grievance alleged that O'Donnell's termination violated Articles I, VI, XV and XX of the CBA, and sought O'Donnell's reinstatement. Id.

24.     There is a multiple-step grievance process under the CBA. Weiner Aff. at ¶ 29; Ex. 2 at 11-12. A grievance hearing was held on March 19, 2004. Weiner Aff. at ¶ 29; Ex. 13: Letter from Lemieux to Vinci dated August 24, 2004. The Credit Union denied the grievance on March 25, 2004. Weiner Aff. Ex. 11A: Letter from J. Brendan Hall to Lemieux dated March 25, 2004 (unsigned).

25.     There was a dispute as to the subsequent steps in the grievance process between Local 6 and the Credit Union. Weiner Aff. at ¶ 30; Ex. 14: Letter from Lemieux to Vinci dated September 7, 2004; Ex. 15: Letter from Vinci to Lemieux dated September 13, 2004; Ex. 16: Letter from Lemieux to Vinci dated September 15, 2004. Ultimately, the Credit Union agreed

to arbitrate the grievance despite a dispute over the timing of the request for arbitration. Weiner Aff. at ¶ 30; Ex. 17: Letter from Weiner to Lemieux dated September 21, 2004.

26.     Local 6 abandoned the grievance just prior to a scheduled arbitration. Weiner Aff. at ¶ 31. The grievance was formally withdrawn on June 14, 2005. Id.; Ex. 18: Letter from Peter Manning to Weiner dated June 14, 2005.

27.     O'Donnell filed the instant complaint in Massachusetts Superior Court on or about April 28, 2005, alleging two counts of tortious interference with contractual relations, one against Doucette and the other against the other named Board members.

ARGUMENT

SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT PREEMPTS PLAINTIFF'S CLAIMS.

A.     Section 301 Preemption

Section 301 of the LMRA, appearing at 29 U.S.C. §185, provides the basis for federal jurisdiction in this matter and for preemption and dismissal of the Plaintiff's state common law claims. Under the Supreme Court's decisions in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985), and later in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988), a doctrine of preemption has evolved to preempt all state-law tort claims that would require an interpretation of a collective bargaining agreement. *Id.* at 42. Thus, "[q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for a breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp.*, 471 U.S. at 211. The test for preemption of a tort claim is whether in analyzing

the claim, the court must construe provisions of the collective bargaining agreement. *See Lingle*, 486 U.S. at 407.

Preemption of claims involving disputes potentially involving a collective bargaining agreement occurs in one of two ways: (1) the claim is preempted if it alleges conduct that arguably constitutes a breach of duty that arises pursuant to the collective bargaining agreement; or (2) the claim is preempted if it its resolution hinges upon an interpretation of a provision of the collective bargaining agreement. *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997). The complaint itself need not raise a federal claim directly to be subject to removal and preemption. *See Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 41, n. 1 (1st Cir. 1997)(noting that well-pleaded complaint rule is not implicated in removal under § 301).

B.     Preemption of Plaintiff's State Law Tort Claims

The preemption of state law tort claims depends on the degree to which the collective bargaining agreement must be analyzed in light of the alleged tortious behavior. Negligence and intentional tort claims will be preempted if the duty alleged to be breached springs from the collective bargaining agreement or the conduct of the alleged tortfeasor must be considered in light of the collective bargaining agreement. *See Flibotte*, 131 F.3d at 26. Flibotte bought claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against his employer in Massachusetts state court after he was fired for refusing to take a drug test at the scheduled time and place. He alleged that his employer provided unsanitary facilities for testing and he was not yet due for testing, so he boycotted the drug test, causing him emotional distress and resulting in an unjust termination. After removal to federal court and a trial, the jury found for Flibotte, and the employer successfully moved for

judgment as a matter of law on the grounds of § 301 preemption (the employer had previously moved for a directed verdict on preemption grounds).

On appeal, the First Circuit affirmed. As to the plaintiff's negligence claims, the Court found that the employer's duty could only be determined by analyzing the collective bargaining agreement, i.e., the collective bargaining agreement must be consulted to determine if the employer was within its rights under the agreement to terminate Flibotte for failing to appear at the test and provided adequate facilities. *Id.* at 27. In considering the intentional infliction of emotional distress claim, the Court noted that not only would the rights and obligations of the employer be central to an inquiry into the employer's intentions, but also whether the employer's behavior was sufficiently outrageous to justify liability for that claim. *Id.*; *see also Sweeney v. Westvaco*, 926 F.2d 29, 36 (1st Cir. 1991)(Finding that when the reasonableness of employer conduct is at issue, preemption of the tort action is likely). The Court cited the well-settled principle that a party cannot be held liable for infliction of emotional distress if it does no more than insist upon its legal rights in a permissible way. *See Flibotte*, 131 F.3d at 27. Since the employer's legal rights were established by the collective bargaining agreement, the claim was preempted. *Id.*

With respect to claims of intentional or tortious interference with contractual relations, courts have generally held that where the contractual relationship at issue is governed by a collective bargaining agreement, such a claim is preempted under § 301. *See Magerer v. John Sexton & Co.,* 912 F.2d 525, 530-531 (1st Cir. 1990); *Wynn v. National Broadcasting Co.,* 234 F. Supp. 2d 1067, 1119 (C.D. Cal. 2002); *Troconis v. Lucent Technologies, Inc.*, 160 F. Supp. 2d 150, 156 (D. Mass. 2001); *Sheet Metal Workers Ass'n v. Kirkwood, Inc.*, 911 F. Supp. 1197, 1211 (E.D. Mo. 1996); *Ellis v. Lloyd*, 838 F. Supp. 704, 708 (D. Conn. 1993); *Meier v. Hamilton*

*Standard Electronic Systems, Inc. Teledynamics Div. et al.*, 748 F. Supp. 296, 302 (E.D. Penn. 1990); *Kneeland v. Pepsi Cola Metropolitan Co., Inc.*, 605 F. Supp. 137, 139 (D. Mass. 1985).

To establish a claim of interference with contractual relations under Massachusetts law, a plaintiff must show, among other things, that there was a contract with a third party and the defendant knowingly induced the third party to break that contract. *Magerer*, 912 F.2d at 531, *citing, United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 551 N.E.2d 20, 21 (1990). If that contract is a collective bargaining agreement, then a determination of whether the defendant violated duties imposed by that agreement manifestly requires its interpretation. *Troconis*, 1690 F. Supp. 2d at 156.

In *Magerer*, the plaintiff brought claims in Massachusetts Superior Court against his employer and his supervisor for his alleged wrongful termination, including a claim of intentional interference with contractual relations against the supervisor. 912 F.2d at 526. The employer removed the case to federal court and sought dismissal of the claims based on § 301 preemption. The District Court dismissed the claims and denied the plaintiff's motion for remand. The First Circuit affirmed the dismissal. With respect to the plaintiff's intentional interference with contract claim, the Court found that since the collective bargaining agreement was the contract at issue, the question of whether the supervisor induced the employee to break the contract would require the court to decide whether the employer was entitled to discharge the plaintiff under the terms of the agreement. *See Magerer*, 912 F.2d at 531; *see also Troconis*, 160 F. Supp. 2d. at 156. In other words, the claim required an interpretation of the collective bargaining agreement, and was therefore preempted by § 301. *See Magerer*, 912 F.2d at 531.

Setting aside whether Plaintiff states a claim for tortious interference with contractual relations in the case at bar, it is clear that her claims are preempted. *See Flibotte*, 131 F.3d at 26-

27; *Magerer*, 912 F.2d at 530-531. The contract that governs the relationship between Plaintiff and the Credit Union is the CBA, and analysis of the CBA cannot be avoided. *See Troconis*, 160 F. Supp. 2d at 156. To properly assess whether Defendants interfered with the Plaintiff's employment relationship with the Credit Union requires an analysis of the CBA to determine whether the Defendants were within their rights as directors or officers of the Credit Union to act as they did. *See Magerer*, 912 F.2d at 531.

Management authority is vested in the Credit Union through Article VI of the CBA. Unpaid leaves of absence are governed by Article XV, which only authorizes leaves of absence where the employee demonstrates "good and sufficient reason in the opinion of the Employer." The Board found that Plaintiff failed to demonstrate good and sufficient reason, and denied her request for a leave of absence. Weiner Aff. at ¶ 20. A grievance procedure is provided in Article XIX, which Local 6 availed itself of on behalf of O'Donnell before it abandoned the claim. Discipline and discharge of employees is governed by Article XX, which requires two written warnings before dismissal unless the dismissal is for gross neglect of duty.

After Plaintiff declined the opportunity to return to work, the Board dismissed her for gross neglect of duty under Article XX of the CBA. Id. at ¶ 22. Local 6 then filed a grievance alleging that, "the grievant was unjustly terminated." Weiner Aff., Ex. 11. The grievance alleged that O'Donnell's termination violated Articles I, VI, XV and XX, and any other relevant articles of the CBA. Id.

In short, all of the issues presented by the Complaint are covered by provisions of the CBA, and require its interpretation to determine if the Board acted improperly with respect to O'Donnell. Therefore, Plaintiff's claims are subject to removal to federal court and are preempted under § 301.

Plaintiff cannot avoid preemption by naming the directors individually. While Section 301 applies to claims based on a collective bargaining agreement between an "employer" and a "labor organization," claims of interference with contractual relations brought against individuals acting in their official capacities are still subject to § 301 preemption even if the "employer" is not named directly. *See* 29 U.S.C. § 185; *Magerer*, 912 F.2d at 530; *Kneeland*, 605 F. Supp. at 139. Supervisory employees act as agents in administering the collective bargaining agreement on behalf of the employer. *See Kneeland*, supra. For the purposes of § 301 claims (and state law claims preempted by § 301), they *are* the employer, since the employer is liable for their conduct. *Id.*

Defendants Doucette, Hall and Meighan were all signatories to the CBA during some or all of the relevant period. Weiner Aff. at ¶¶ 11-12. They signed the CBA in their official capacities as Members of the Board (Hall and Meighan) or as the Manager (Doucette). Weiner Aff., Ex. 1 at 18, Ex. 2 at 18. The allegedly tortious conduct also involves the Defendants acting in their official capacities. The decision on whether or not to grant Plaintiff an unpaid leave of absence pursuant to Article XV of the CBA was made by the Board of Directors. Weiner Aff. at ¶ 20. The decision to terminate the Plaintiff for gross neglect of duty under Article XX of the CBA was made by the Board of Directors, which included all the Defendants, except for Doucette. Weiner Aff. at ¶ 22. It is clear that the Defendants, acting in their official capacities, are the agents for the Credit Union in administering the CBA, and are considered employers for the purposes of § 301 preemption. *See Kneeland*, 605 F. Supp. at 139. Any claim brought against them as individuals is therefore also subject to preemption. *Id.*

## CONCLUSION

Plaintiff alleges that the Defendants interfered with her contractual relationship with the Credit Union. That contractual relationship is governed by the CBA. The Court cannot analyze Plaintiff's claims without also interpreting the CBA. Because Plaintiff's claims implicate the CBA, they are subject to preemption under § 301 of the LMRA. That the Plaintiff named the directors individually instead of her employer has no impact on § 301 preemption. Therefore, the Court should enter summary judgment for the Defendants on all counts of the Plaintiff's Complaint.

Respectfully submitted,

DONNA BOGGS, BRENDAN HALL, WILLIAM FRANCIS, MARY LOU MEIGHAN and MARION DOUCETTE,

By their attorneys,

/s/ Harvey Weiner

Harvey Weiner, BBO#519840
Robert J. O'Keefe, BBO#655653
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

September 6, 2005

617326_1