UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

PAULA O'DONNELL

Plaintiff

v.

DONNA BOGGS*, BRENDAN HALL,
WILLIAM FRANCIS, MARY LOU MEGAN
and MARIAN DOUCETTE

Defendants

Civil Action No. 05-11257-NG

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Defendants Donna Boggs, Brendan Hall, William Francis, Mary Lou Meighan and Marion Doucette submit the following statement of undisputed material facts in support of their motion for summary judgment:

1. Paula O'Donnell ("O'Donnell") is a former employee of the Credit Union who alleges that over the course of several years she was harassed and ultimately constructively discharged. Complaint at ¶¶ 7, 23.

2. The Credit Union is a state-chartered financial institution incorporated in 1962 and located in Boston, Massachusetts. Affidavit of Harvey Weiner at ¶ 6.

3. Defendant Donna Boggs was a member of Credit Union's Board of Directors at all times relevant until 2004 and served as Chairman during the relevant period. Id. at ¶ 7.

---

* Defendant Donna Boggs was incorrectly identified in defendants' Notice of Removal as Donna Briggs.

4. Defendant J. Brendan Hall was a member of the Credit Union's Board of Directors at all times relevant. Id. at ¶ 8.

5. Defendant William Francis has been a member of the Credit Union's Board of Directors since 2000. Id. at ¶ 9.

6. Defendant Mary Lou Meighan has been a member of the Credit Union's Board of Directors since 2001. Id. at ¶ 10.

7. Defendant Marion Doucette was an employee of the Credit Union for 30 years. She served on the Credit Union's Board of Directors at all times relevant, and served as Manager/CEO of the Credit Union from June 1998 until her retirement on July 2, 2004. Id. at ¶ 11.

8. O'Donnell was employed by the Credit Union from 1974 through February 13, 2004. Complaint at ¶ 7; Weiner Aff., Ex. 10: Letter from Weiner to Adams dated February 13, 2004.

9. Credit Union employees are covered by a collective bargaining agreement ("CBA") between the Credit Union and Office and Professional Employees International Union, Local 6, AFL-CIO ("Local 6"). The text of the relevant portions of the CBA remained unchanged from the January 1, 2000 agreement through the January 1, 2003 agreement. Weiner Aff. at ¶ 14.

10. O'Donnell was a signatory to the agreement as Shop Steward for Local 6 for the CBA in effect from January 1, 2000 through December 31, 2002, and was a member of Local 6 at all relevant times. Id. at ¶ 15; Ex. 1 at 18.

11.     Defendants Marion Doucette and J. Brendan Hall were also signatories to the collective bargaining agreement during the same period. Weiner Aff. at ¶ 16; Ex. 1 at 18. Doucette signed as Manager/CEO and Hall signed as a Member of the Board of Directors. Id.

12.     Defendants Doucette, Hall and Marylou Meighan were signatories to the CBA in effect from January 1, 2003 through December 31, 2005. Weiner Aff. at ¶ 17; Ex. 2 at 18. Hall and Meighan signed as members of the Board of Directors and Doucette signed as Manager. Id.

13.     The CBA includes: Article VI, which vests all management rights in the Credit Union; Article XV, which addresses unpaid leaves of absence; Article XIX, which provides a grievance procedure; Article XX, which addresses discipline and discharge; and Article XXI, which provides for arbitration of grievances. Weiner Aff. at ¶ 18; Ex. 1 at 3, 8, 11, 13; Ex. 2 at 3, 8, 11, 13.

14.     Article VI of the CBA provides in part:

"All disciplinary action undertaken by Management against a member of the Bargaining Unit shall be for just cause and will be conducted in private and in such manner as to create respect for authority and preserve individual dignity. It is the responsibility of Management to inform individuals directly and in private of any alleged failure to perform their work properly so that the necessary changes and/or corrections can be made as speedily as possible."

Weiner Aff. at ¶ 19; Ex. 1 at 3-4; Ex. 2 at 3-4.

15.     Article XV of the CBA states as follows:

"<u>Unpaid Leaves of Absence</u> – Unpaid leaves of absence for good and sufficient reason in the opinion of the Employer shall be granted upon written request and shall not be unreasonably denied. Such leaves shall not be construed to be a termination of employment so long as they last no more than 6 months and the employee does not become employed by another employer. The employer will not be obligated to maintain benefits coverage during leaves covered by this article, but may do at its discretion considering each case."

Weiner Aff. at ¶ 20; Ex. 1 at 8-9; Ex. 2 at 8-9.

16.     Article XX of the CBA states in part:

> "The Union and the Employer agree that discipline, including discharge, must be administered fairly and consistently for just cause. Discipline will typically be progressive. The offense facts and circumstances will determine the level of discipline to be applied regardless of prior discipline, if any...
>
> ...A minimum of two written warnings will be issued before an employee may be dismissed except in the case of gross neglect of duty or serious misconduct."

Weiner Aff. at ¶ 21; Ex. 1 at 13; Ex. 2 at 13.

17. O'Donnell did not return to her job after August 14, 2003. Her sick leave and vacation time expired on or about November 30, 2003. Weiner Aff. at ¶ 22.

18. Through her attorney, Adams, O'Donnell indicated that she would not return to work because of what she perceived to be a hostile working environment. Weiner Aff. at ¶ 23; Ex. 3: Letter from Adams to Boggs dated October 27, 2003.

19. The letters from Attorney Adams acknowledged that O'Donnell's claims needed to be addressed through the grievance procedure provided for in the CBA. Weiner Aff. at ¶ 24; See, e.g., Ex. 3: Letter from Adams to Donna Boggs dated October 27, 2003; Ex. 5: Letter from Adams to Weiner dated December 30, 2003; Ex. 7: Letter from Adams to Weiner dated January 19, 2004.

20. On or about January 19, 2004, Ms. O'Donnell requested an unpaid leave of absence. Weiner Aff. at ¶ 25; Ex. 7: Letter from Adams to Weiner dated January 19, 2004. The request was denied by the Board of Directors on the grounds that O'Donnell had not provided good and sufficient reason to grant the request as required by Article XV of the CBA. Weiner Aff. at ¶ 25; Ex. 8: Letter from Weiner to Adams dated February 2, 2004; Ex. 1 at 8; Ex. 2 at 8.

21. On February 2, 2004, the Board of Directors gave O'Donnell one final opportunity to end her unauthorized absence and return to work on February 17, 2004. Weiner Aff. at ¶ 26.

4

22.     O'Donnell declined the opportunity to end her unauthorized absence from work. Weiner Aff. at ¶ 27; Ex. 9: Letter from Adams to Weiner dated February 11, 2004. As a result, the Board of Directors terminated O'Donnell for gross neglect of duty, as allowed for in Article XX of the CBA. Weiner Aff. at ¶ 27; Ex. 10: Letter from Weiner to Adams dated February 13, 2004; Ex. 2 at 13.

23.     Local 6 pursued a grievance on behalf of O'Donnell on February 25, 2004. Weiner Aff. at ¶ 28; Ex. 11: Letter from Lisa Lemieux to Marion Doucette dated February 25, 2004. The grievance alleged that O'Donnell's termination violated Articles I, VI, XV and XX of the CBA, and sought O'Donnell's reinstatement. Id.

24.     There is a multiple-step grievance process under the CBA. Weiner Aff. at ¶ 29; Ex. 2 at 11-12. A grievance hearing was held on March 19, 2004. Weiner Aff. at ¶ 29; Ex. 13: Letter from Lemieux to Vinci dated August 24, 2004. The Credit Union denied the grievance on March 25, 2004. Weiner Aff. Ex. 11A: Letter from J. Brendan Hall to Lemieux dated March 25, 2004.

25.     There was a dispute as to the subsequent steps in the grievance process between Local 6 and the Credit Union. Weiner Aff. at ¶ 30; Ex. 14: Letter from Lemieux to Vinci dated September 7, 2004; Ex. 15: Letter from Vinci to Lemieux dated September 13, 2004; Ex. 16: Letter from Lemieux to Vinci dated September 15, 2004. Ultimately, the Credit Union agreed to arbitrate the grievance despite a dispute over the timing of the request for arbitration. Weiner Aff. at ¶ 30; Ex. 17: Letter from Weiner to Lemieux dated September 21, 2004.

26.     Local 6 abandoned the grievance just prior to a scheduled arbitration. Weiner Aff. at ¶ 31. The grievance was formally withdrawn on June 14, 2005. Id.; Ex. 18: Letter from Peter Manning to Weiner dated June 14, 2005.

27. O'Donnell filed the instant complaint in Massachusetts Superior Court on or about April 28, 2005, alleging two counts of tortious interference with contractual relations, one against Doucette and the other against the other named Board members.

Respectfully submitted,

DONNA BOGGS, BRENDAN HALL, WILLIAM FRANCIS, MARY LOU MEIGHAN and MARION DOUCETTE,

By their attorneys,

/s/ Harvey Weiner

---

Harvey Weiner, BBO#519840
Robert J. O'Keefe, BBO#655653
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA  02110
(617) 951-2100

September 6, 2005

619918_1