UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAULA O'DONNELL,
  Plaintiff,

  v.                                        CIVIL ACTION NO.
                                            05-11257-NG
DONNA BOGGS, BRENDAN HALL,
WILLIAM FRANCIS, MARY LOU MEGAN
and MARIAN DOUCETTE,
  Defendants.

**REPORT AND RECOMMENDATION RE:
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY # 4)**

**April 21, 2006**

**BOWLER, U.S.M.J.**

     Pending before this court is a motion for summary judgment
(Docket Entry # 4) filed by defendants Donna Boggs ("Boggs"),
Brendan Hall ("Hall"), William Francis ("Francis"), Mary Lou
Megan ("Megan") and Marian Doucette ("Doucette") (collectively:
"defendants").[1]  Defendants' motion was referred to this court for
a report and recommendation.  After conducting a hearing, this
court took the motion (Docket Entry # 4) under advisement.


PROCEDURAL HISTORY

     Plaintiff Paula O'Donnell ("plaintiff") filed this complaint
on April 28, 2005, in state court.  (Docket Entry # 2).
Plaintiff alleges two counts of tortious interference with

---

     [1]  Defendants Donna Boggs and Mary Lou Megan are also
referred to in the record as Donna Briggs and Mary Lou Meighan.

contractual relations.   Count I alleges tortious interference with contractual relations against Doucette.   Count II alleges tortious interference with contractual relations against remaining defendants Boggs, Hall, Francis and Megan.   Defendants removed this action to federal court pursuant to 28 U.S.C. §§ 1331 and 1441 on the grounds that section 301 of the Labor Management Relations Act ("section 301") preempts plaintiff's state law tort claims.[2]   29 U.S.C. § 185(a); (Docket Entry # 1).

Defendants seek summary judgment on both counts.   (Docket Entry # 4).   At a hearing before this court, the parties agreed to delay discovery pending resolution of the section 301 preemption issue on summary judgment.   (Docket Entry # 8, pp. 1-2).

FACTUAL BACKGROUND

Plaintiff was an employee of the Boston Globe Employees Credit Union ("Credit Union") from 1974 to February 13, 2004.[3]

---

[2]   Section 301 states that, "Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties . . .." 29 U.S.C. § 185(a).

[3]   Plaintiff does not dispute defendants' statement of material facts in support of defendants' motion for summary judgment.   (Docket Entry # 8, p. 2).   Defendants submitted a statement of facts in support of their summary judgment motion accompanied by excerpts of the collective bargaining agreement ("CBA") and letters between the Office and Professional Employees International Union Local 6, AFL-CIO ("Union") and the Credit Union regarding plaintiff's grievance.   (Docket Entry # 7, Ex. 1-

(Docket Entry # 8, Affidavit of Paula O'Donnell ("O'Donnell Aff."); (Docket Entry # 6, ¶ 8); (Docket Entry # 7, Ex. 10).  The parties do not contest that plaintiff's employment was governed by the CBA between the Credit Union and the Union at all relevant times.[4]  (Docket Entry # 6, p. 2, ¶¶ 9 & 10).

In 1998, plaintiff reported to the Credit Union security department and the Credit Union's Board of Directors ("Board") that then Manager/Chief Executive Officer Gene Farrell ("Farrell") had fraudulently taken Credit Union funds.  (Docket Entry # 8, O'Donnell Aff., ¶ 1).  An investigation confirmed the misconduct and Farrell was terminated.  Id.

As Systems Manager in 2000, plaintiff's duties included discovering, investigating and reporting misconduct by other Credit Union employees.  Id. at ¶¶ 6.  Plaintiff reported to the Board that succeeding Manager/Chief Executive Officer Doucette had hired her daughter, Linda Doucette ("Doucette's daughter"), as a Credit Union Bookkeeper at above normal compensation and to

---

18).  Plaintiff submitted her own affidavit to support her opposition to summary judgment but does not dispute defendants' statement of facts.  (Docket Entry # 8).  Accordingly, uncontroverted statements of fact in defendants' statement of material facts comprise part of the summary judgment record.  LR. 56.1; Stonkus v. City of Brockton School Dept., 322 F.3d 97, 102 (1st Cir. 2003).

[4]  As Shop Steward, plaintiff was a signatory to the 2000-2002 version of the CBA.  (Docket Entry # 7, Ex. 1, p. 18).  Doucette, Hall and Megan were signatories to the CBA as Manager and Board members respectively.  (Docket Entry # 6, p. 3, ¶¶ 11 & 12).

a position she was not qualified to fill.[5]  Id. at ¶ 2.  The Board did not act on the complaint.  Id.  Doucette, however, initiated retaliatory mistreatment against plaintiff.  Id. at 2, ¶ 2.

Plaintiff later discovered that Doucette's daughter had bounced personal checks drawn on the Credit Union and that Doucette had approved the payment in violation of Credit Union policy and practice.[6]  Id. at 2, ¶ 3.  Plaintiff reported the activity to Doucette and board members Hall and Boggs.  Id.  Boggs indicated that the matter did not violate Credit Union policy and plaintiff should not pursue the matter.  Plaintiff disagreed and threatened a shareholder action against the Credit Union if the matter were not addressed.  Id.

Plaintiff next discovered and reported Doucette's daughter's manipulation of accounting, security and Automatic Teller Machine ("ATM") procedures in order to fraudulently obtain funds, precipitating Doucette's daughter's resignation.  Id. at ¶ 4. Boggs directed plaintiff to continue to approve payment of Doucette's daughter's overdrawn checks, a request which plaintiff reported to the Union.  Id.  The fraudulent use of ATMs resulted in an admonishment to the Credit Union by the state banking

_____

[5]  Base pay for the positions of Head Teller, Bookkeeper and Systems Manager are provided in CBA Article IV.  (Docket Entry # 7, Ex. 1 p. 2 & Ex. 2, p. 2).

[6]  Plaintiff avers to more than 100 bounced checks, but defendants admit to 21.  (Docket Entry # 8, O'Donnell Aff., p. 2, ¶ 3); (Docket Entry # 2, Answers of Doucette, Hall, Francis, Megan & Boggs, ¶¶ 15).

commission ("commission").  <u>Id.</u> at ¶ 5.  Board members Boggs,
Megan and Francis all blamed plaintiff for notifying the
commission.  <u>Id.</u>

Doucette subsequently increased her retaliatory treatment of
plaintiff in the form of verbal and physical intimidation.  <u>Id.</u>
at ¶ 6.  Plaintiff reported Doucette's conduct to Boggs, Hall,
Francis and Megan to no avail.  <u>Id.</u> at ¶ 7.  Plaintiff thereafter
suffered "adverse employment action" and discipline by
defendants.  <u>Id.</u> Stress created by the negative work environment
led plaintiff to absent herself from work beginning on August 14,
2003, at the suggestion of a Boston Globe medical officer.[7]  <u>Id.</u>
at ¶ 8; (Docket Entry # 6, ¶ 17).

On January 19, 2004, plaintiff formally requested a leave of
absence from the Credit Union.  (Docket Entry # 6, ¶ 20).  On
February 2, 2004, the Board denied plaintiff's request citing a
lack of "good and sufficient reason" and demanded that plaintiff
return to work or face termination.  (Docket Entry # 6, ¶¶ 20 &
21).  Plaintiff indicated her intent not to return and the Credit
Union discharged plaintiff on February 13, 2004.  <u>Id.</u> at ¶ 22.

On February 25, 2004, the Union initiated a grievance on
behalf of plaintiff alleging that the termination violated the
CBA and seeking reinstatement.  <u>Id.</u> at ¶ 23.  The Credit Union
refused to reinstate plaintiff after considering the grievance.

---

[7] Plaintiff's authorized sick leave and vacation time
expired on or about November 30, 2003.  (Docket Entry # 6, ¶ 17).

Id. ¶ 24.  A dispute later arose between the Union and Doucette's successor, Manager/Chief Executive Officer Peter Vinci, about whether to arbitrate plaintiff's grievance.  The parties, however, ultimately designated arbitrators in preparation for arbitration.  Id. at ¶¶ 24 & 25.  On June 14, 2005, however, the Union withdrew its grievance prior to arbitration.  Id. at ¶ 26.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)); see Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A genuine issue of fact is one that a reasonable jury could resolve in favor of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In reviewing the record, the court draws all reasonable inferences in the light most favorable to the non-moving party. Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 39 (1st Cir. 1992).

Defendants move for summary judgment on three grounds. First, defendants argue that plaintiff's interference with contractual relations claims are preempted by section 301.  See Fuentes v. Hampden County Sheriff's Dept., 2004 WL 1490434 * 10 (D.Mass. July 25, 2004) (ruling that preemption is threshold

6

issue).  Second, defendants argue that plaintiff's claims should be dismissed, as opposed to allowing plaintiff an opportunity to amend, because the claims are preempted by section 301.  Third, defendants assert that plaintiff's claims are barred by the section 301 six month statute of limitations.

## PREEMPTION

Section 301 preempts state law claims that depend on interpretation of a CBA.  Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988); Allis-Chalmers v. Lueck, 471 U.S. 202, 209 & 220 (1985) (explaining that Congress passed section 301 so that CBAs would be interpreted under a uniform federal labor law); Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40, 41-42 (1st Cir. 1997) (explaining development of section 301 preemption); Magerer v. John Sexton & Co., 912 F.2d 525, 528 (1st Cir. 1990); see Robert A. Gorman & Matthew W. Finkin, Basic Text on Labor Law: Unionization and Collective Bargaining, pp. 1110-1113 & 1123, (2nd ed. 2004).  State law claims may depend on an interpretation of a CBA where the conduct at issue allegedly breaches duties established by the CBA or violates rights created by the CBA.  Fant v. New England Power Service Co., 239 F.3d 8, 15 (1st Cir. 2001).  Rights existing independently of a CBA under state and federal law, however, are not preempted.  Lividas v. Bradshaw, 512 U.S. 107, 123-124 (1994); Ralph v. Lucent Technologies, Inc., 135 F.3d 166, 171 (1st Cir. 1998).

Furthermore, disputes requiring mere reference to terms of a CBA are not preempted.  <u>Lingle</u>, 486 U.S. at 413 n. 12.  Where, however, a dispute turns on an interpretation of a CBA, congressional interest in uniform interpretation of CBAs calls for federal preemption.  <u>Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.</u>, 369 U.S. 95, 104 (1962); <u>see</u> <u>Textile Workers v. Lincoln Mills</u>, 353 U.S. 448, 456 (1957) (section 301 gives federal courts mandate to develop law addressing labor contract disputes).

The Supreme Court in <u>Allis-Chalmers</u> held that although the nature of a state tort is a matter of state law, the question of whether the tort is sufficiently independent of federal contract interpretation to avoid preemption is a matter of federal law. <u>Allis-Chalmers</u>, 471 U.S. at 214.  A claim of interference with contractual relations depends on interpretation of a CBA if the CBA establishes grounds for termination.  <u>Magerer</u>, 912 F.2d at 529 & 531; <u>Acciavatti v. Professional Services Group, Inc.</u>, 982 F.Supp. 69, 76 (D.Mass. 1997).  Likewise, where a CBA provides standards of employer and employee conduct, a retaliation based claim may depend on an interpretation of relevant provisions of the CBA.  <u>Magerer</u>, 912 F.2d at 529 & 530.

Where a CBA governs the employment relationship, a state law claim can be treated as a section 301 claim or dismissed as preempted by federal labor law.  <u>Allis-Chalmers</u>, 471 U.S. at 220. Dismissal, however, is appropriate where treating the state claim

8

as a section 301 claim would be futile because the plaintiff failed to exhaust grievance procedures under the CBA.  Id. at 220-221; see Magerer, 912 F.2d at 530.  Thus, section 301 preemption may leave a plaintiff remediless.  Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40, 44 (1st Cir. 1997) (finding plaintiff remediless where plaintiff failed to arbitrate).

In Allis-Chalmers, the plaintiff alleged that his employer breached its duty of good faith performance by inconsistently issuing disability payments granted by the CBA.  Allis-Chalmers 471 U.S. at 206.  The plaintiff initially filed in state court where the Wisconsin Supreme Court held that the tort suit was independent of the CBA and, therefore, the plaintiff's claim was not preempted by section 301.  The Supreme Court reversed, holding that where a CBA created the rights allegedly violated, i.e., the right to disability benefits, the CBA determines the scope of the rights.  Id. at 210-211.  Therefore, section 301 preemption was appropriate because determining whether the plaintiff's rights had been violated required interpretation of the CBA according to standards of federal labor law.  Id. at 15.

Federal courts in this circuit uniformly hold claims of intentional interference with contractual relations to be preempted by section 301.[8]  Magerer v. John Sexton & Co., 912 F.2d

---

[8]  "Tortious interference" with contractual relations and "intentional interference" with contractual relations are used interchangeably to refer to the tort of interference with contractual relations.  See Restatement (Second) of Torts, § 766

525 (1st Cir. 1990); <u>Troconis v. Lucent Technologies, Inc.</u>, 160
F.Supp.2d 150, 153-154 (D.Mass. 2001); <u>Acciavatti v. Professional
Services Group, Inc. et al.</u>, 982 F.Supp. 69, 76 (D.Mass. 1997).
Indeed, in <u>Rocheleau v. Brockway-Smith Co.</u>, 1999 WL 172813 * 1-2
(D.Mass. March 25, 1999), the plaintiffs sought leave to amend
their complaint to eliminate an interference with contractual
relations claim in order to avoid removal to federal court under
section 301 preemption.

The court in <u>Magerer</u> considered *inter alia* a claim of
intentional interference with contractual relations against a
supervisor for discharging the plaintiff. <u>Magerer</u>, 921 F.2d at
531. Under Massachusetts law, a claim of interference with
contractual relations requires the plaintiff to show "he had a
contract with a third party [and] the defendant knowingly induced
the third party to break the contract." <u>Id.</u> at 531 (quoting
<u>United Truck Leasing Corp. v. Geltman</u>, 551 N.E.2d 20, 21 (Mass.
1990)). The court held that the supervisor acted as an agent for
the employer and, thus, whether the supervisor acted wrongfully
in discharging the plaintiff required interpreting whether the
employer would have been entitled to discharge the plaintiff
under the CBA.[9] <u>Magerer</u>, 912 F.2d at 531. Furthermore, whether

_____

(2005); <u>Platten v. HG Bermuda Exempted Ltd.</u>, 437 F.3d 118 (1st
Cir. 2006).

[9] The court in <u>Magerer</u> noted that where a defendant acts in
his capacity as a supervisor and, hence, as an agent of the
employer, the defendant may be held liable for breach of the CBA.

the supervisor's conduct was within his authority under the CBA required interpretation of the CBA. <u>Id.</u> at 530-531. Section 301 preemption was therefore appropriate because section 301 requires interpretation of CBAs under federal labor law. <u>Id.</u> at 529 & 531. The court further found that federal law required dismissal of the claims even if they had been brought as a section 301 claim because the plaintiff did not exhaust grievance procedures under the CBA. <u>Id.</u> at 531.

The plaintiff in <u>Troconis</u> injured his back at work and underwent back surgery. <u>Troconis</u>, 160 F.Supp.2d 150. Upon returning to work the plaintiff requested an accommodation for his condition. The plaintiff then sued his employer alleging a violation of state antidiscrimination laws, retaliation and intentional interference with contractual relations based on alleged mistreatment by colleagues and supervisors. <u>Id.</u> at 153-54. The court explained that section 301 preempts state law claims where they require interpretation of a CBA either because the alleged conduct "arguably constitutes" a breach of the CBA or because the claim arguably hinges on an interpretation of the CBA. <u>Id.</u> at 154-155. The CBA at issue enumerated duties of supervisors and Union members and contained a nondiscrimination clause. <u>Id.</u> at 155-156. Hence, the court held that section 301 preempted the interference with contractual relations claim

---

<u>Magerer</u>, 912 F.2d at 530-531.

because determining whether the defendant's conduct violated the CBA required interpreting the CBA. Id. at 156.

The court in Acciavatti relied on Magerer's section 301 preemption standard to dismiss under Federal Rule of Civil Procedure 12(b)(6) an interference with contractual relations claim against the plaintiff's supervisor and employer. Acciavatti, 982 F.Supp. at 76. The supervisor retaliated and eventually discharged the plaintiff after the plaintiff disclosed contamination of the public water supply to the City of Brockton's Department of Public Works Commissioner because the supervisor failed to fix the problem. Id. at 72. The plaintiff followed the CBA grievance procedure, arbitrated his dispute and was reinstated. Id. at 73. The supervisor, however, continued retaliatory treatment resulting in a second discharge, which the second arbitrator found supported by just cause. Id. The plaintiff brought suit against inter alia the supervisor for intentionally and maliciously interfering with contractual relations with the employer. Id. at 73, 76. The court found section 301 preemption appropriate because whether the supervisor acted improperly in terminating the plaintiff required determining whether the CBA entitled the employer to discharge the plaintiff. Id. at 76.

In this case, the CBA governing plaintiff's employment provided for management conduct, established a right to

12

reasonable leaves of absence, provided for conditions warranting discharge and set forth a grievance procedure.  Article VI of the CBA provides that, "All disciplinary action undertaken by Management [shall] be for just cause and will be conducted in [such] manner as to create respect for authority and preserve individual dignity."  (Docket Entry # 7, Ex. 1, p. 3).  Article XV of the CBA provides that, "Unpaid leaves of absence for good and sufficient reason in the opinion of the Employer [shall] not be unreasonably denied."  (Docket Entry # 7, Ex. 2, p. 8).  Article XX of the CBA provides that discharge will be for "just cause."  (Docket Entry # 7, Ex. 1, p. 13).  Articles XIX and XXI set forth the grievance and arbitration procedure.  Id. at pp. 11 & 14.

Whether defendants' conduct toward plaintiff derogated from Article VI of the CBA requires interpreting the duties imposed by the CBA according to the standards of federal labor law.  See Allis-Chalmers, 471 U.S. at 210 & 214.  Likewise, determining whether the denial of the leave of absence was reasonable requires application of federal labor law.  See Id. at 215-216; see also International Brotherhood. of Elec. Workers v. Hechler, 481 U.S. 851, 862 & n. 5 (1987) (noting under some circumstances a CBA may provide a standard of reasonableness different than state law).  Moreover, whether the terms of the CBA entitled the Credit Union to discharge plaintiff in this situation requires an interpretation of the CBA.  See Magerer, 912 F.2d at 529-531

13

(holding section 301 preempts interference with contractual relations claim).  Thus, section 301 preempts plaintiff's interference with contractual relations claims because they depend on interpretations of the CBA.

In sum, section 301 preempts state law claims that depend on an interpretation of a CBA because Congress intended CBAs to be interpreted under a uniform federal labor law.  <u>Lingle</u>, 486 U.S. 399; <u>Allis-Chalmers</u>, 471 U.S. 202; <u>Martin</u>, 105 F.3d at 41-42. Tortious interference with contractual relations claims depend on an interpretation of the CBA where, as here, the CBA establishes the rights and duties of the parties.  <u>Magerer</u>, 912 F.2d 525. The CBA governing plaintiff's employment set forth the duties of defendants as well the standards guiding leaves of absence, discharge and arbitration procedures.  Whether defendants acted wrongfully therefore depends on whether they breached the terms of the CBA.  Because plaintiff's claims depend on an interpretation of the CBA, section 301 preempts plaintiff's claims.


<u>DISMISSAL OF PREEMPTED CLAIMS</u>

Plaintiff contends that preemption does not require a dismissal of her claims.[10]  (Docket Entry # 8, p. 6).

_____

[10]  For the proposition that interference with contractual relations claims are not preempted, plaintiff cites <u>Tosti v. Ayik</u>, 437 N.E.2d 1062 (Mass. 1982), where the Massachusetts Supreme Judicial Court considered National Labor Relations Board

Furthermore, plaintiff argues that this court should consider the claims without amendment as "well pleaded" section 301 claims for breach of the CBA.[11]  Id.  Defendants, in contrast, argue that the preemptive effect of section 301 alone is sufficient to dismiss plaintiff's claims.

Two lines of cases are relevant.  First, the Flibotte-Troconis cases dismiss state law claims preempted by section 301.  See, e.g., Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 27 (1st Cir. 1997) (affirming preemption of state law claims involving rights modifiable by the CBA).  Second, the DelCostello-Top-Flite cases allow the plaintiff to sue her employer under section 301 by bringing a hybrid section 301/unfair representation claim that the employer's breach of the CBA and the union's breach of its duty of fair representation

----

preemption, not section 301 preemption at issue in this case. See Allis-Chalmers, 471 U.S. at 214  n. 9 (distinguishing NLRB preemption balancing test from section 301 complete preemption).

[11]  Plaintiff cites cases where section 301 did not apply because a CBA did not govern the plaintiffs' employment. Zimmerman v. Direct Federal Credit Union et al., 262 F.3d 70 (1st Cir. 2001) (affirming jury finding of tortious interference pendant to federal Equal Pay Act and Family Medical Leave Act claims); Legoff v. Trustees of Boston University, 23 F.Supp.2d 120 (D.Mass. 1998) (denying dismissal for timeliness of tortious interference claim pendant to Title IX claim); Ruffino v. State Street Bank & Trust Co., 788 F.Supp. 1019 (D.Mass. 1995) (denying summary judgment of tortious interference claim pendant to Title VII claim); Boyle v. Boston Foundation, Inc., 788 F.Supp. 627 (D.Mass. 1992) (denying dismissal of tortious interference claim pendant to federal age discrimination claim); Tosti v. Ayik, 437 N.E.2d 1062 (Mass. 1982) (denying federal preemption of tortious interference claim arising from union-management antagonism).

caused an unjust result in the grievance process.  E.g. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 165 (1983); Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 20 (1st Cir. 2003).

Where an employee challenges discharge under a CBA's grievance process, an employer's discharge decision is final if the discharge did not violate the CBA or if the grievance result was not unjust due to the union's breach of its duty of fair representation.  Vaca v. Sipes, 386 U.S. 171, 186 (1967).  Thus, in the Flibotte-Troconis cases the courts dismissed the preempted claims because the plaintiffs either failed to exhaust administrative remedies, thereby precluding a section 301 claim, or failed to challenge the grievance result as unjust due to the union's breach of its duty of fair representation.  See Magerer, 921 F.2d at 531 (failing to exhaust); Flibotte, 131 F.3d 21, 23 (dismissing preempted claim where arbitration finding of valid discharge unchallenged); Troconis, 160 F.Supp.2d 150 (failing to exhaust); Acciavatti, 982 F.Supp. at 73 (failing to challenge arbitration result as a breach of duty of fair representation).

The DelCostello-Top-Flite line of cases, which this court finds more appropriate, develop the elements of a section 301 claim.  To establish a section 301 claim the employee must exhaust any grievance or arbitration remedies required by the

CBA.[12] <u>Republic Steel Corp. v. Maddox</u>, 379 U.S. 650 (1965).  The
result of the grievance and arbitration is final unless the
employee shows the outcome to be unjust as a result of the
union's breach of its duty of fair representation in pursuing the
claim.  <u>Vaca v. Sipes</u>, 386 U.S. 171, 186 (1967).  The employee
need not join the union to defend the fair representation claim
but plaintiff must nonetheless prove the union's breach of duty.[13]
<u>Id.</u>; <u>DelCostello v. International Broth. of Teamsters</u>, 462 U.S.
151, 165 (1983).  Thus, to establish a viable section 301 claim,
the employee bears the burden of production and persuasion on
both the employer's breach of the CBA and the union's violation
of its duty of fair representation.  <u>Hines v. Anchor Motor</u>
<u>Freight, Inc.</u>, 424 U.S. 554, 570-571 (1976).  The First Circuit
describes the employee's burden as a heavy one which "require[s]
the claimant to produce sufficient evidence from which a
reasonable factfinder can conclude not only that the discharge

_____

[12]   The employee, however, "should not be limited to the
exclusive remedial procedures established by the contract [when]
conduct of the employer amounts to a repudiation of those
contractual procedures."  <u>Vaca v. Sipes</u>, 386 U.S. 171, 185
(1967).  Although the record shows a dispute between the Credit
Union and the Union about whether to arbitrate, the record does
not show that the Credit Union refused to arbitrate.

[13]   Where both the employer and the union are defendants,
the section 301 action is known as a hybrid section 301/unfair
representation claim.  <u>Arriaga-Zayas v. International Ladies'</u>
<u>Garment Workers' Union-Puerto Rico Council</u>, 835 F.2d 11, 12 (1st
Cir. 1987).  Where only the employer is a defendant this court
refers to the claim as a section 301 claim, though the union's
unfair representation is a necessary element.

was improper but also that the union's breach undermined the grievance process and thereby contributed to the error." Mulvihill v. Top-Flite Golf Co., 335 F.3d at 20.

Plaintiff discovered and reported instances of fraud in the scope of her employment, eliciting retaliatory treatment and eventual discharge followed by plaintiff's grievance under the CBA. Plaintiff alleges that defendants acted wrongfully, requiring a determination whether their conduct derogated from the CBA. Furthermore, plaintiff states that the Union acted "[a]gainst my wishes and instruction" in abandoning the grievance and that plaintiff has brought suit against the Union in a separate action before the NLRB. (Docket Entry # 8, O'Donnell Aff., ¶ 9). Plaintiff now seeks to have these claims treated as a section 301 action. Defendants concede in their brief that state law tort claims preempted by section 301 may be treated as a section 301 claim. The Flibotte-Troconis cases relied on by defendants do not indicate that the plaintiffs sought to establish a section 301 claim at the pleading stage, see, e.g., Troconis, 160 F.Supp.2d 150; (Docket Entry # 9, p. 2), and this case has yet to proceed to discovery.

A district court may grant leave to amend in its sound discretion where the plaintiff seeks to establish a section 301 claim and the section 301 claim would not be futile.[14]   See

_____

[14]   A section 301 claim is futile if it would be time barred or if the plaintiff failed to exhaust the grievance procedures

<u>Niagrara of Wisconsin Paper Corp. V. Paper Industry Union-Management Pension Fund</u>, 800 F.2d 742, 748 (8th Cir. 1986); <u>Abrams v. Carrier Corp.</u>, 434 F.2d 1234, 1255 (2nd Cir. 1970) (granting leave to amend to state hybrid section 301/fair representation claim); <u>Baron v. National-Standard Co.</u>, 850 F.Supp. 320 (E.D.Pa. 1994) (granting leave to amend to state section 301 claim for breach of CBA); <u>Elam v. Kaiser Foundation Health Plan, Inc.</u>, 2005 WL 3590991 * 8 (N.D.Cal. Dec. 30, 2005); <u>Mulvihill v. Spalding Sports Worldwide, Inc.</u>, 184 F.Supp.2d 99, 102 (D.Mass. 2002) (denying dismissal where court has jurisdiction under section 301). "Leave [to amend] shall be given freely when justice so requires." Fed. R. Civ. P. 15(a). Plaintiff should therefore be permitted to amend the complaint to set forth the essential elements of a section 301 claim as elaborated in <u>Top-Flite</u>. <u>Top Flite</u>, 335 F.3d at 20 ("the claimant must prove an erroneous discharge, a breach of duty on the union's part, and a causal nexus between the two"). In sum, this court declines to grant summary judgment at this time and allows plaintiff leave to amend. The present ruling, however, does not bar defendants from seeking summary judgment at a later date albeit subject to any

---

required under the CBA. <u>Allis-Chalmers</u>, 471 U.S. at 220. As requested by the parties, this court declines to address exhaustion at this time. The evidence currently in the record, however, taken in the light most favorable to plaintiff does not preclude a finding that plaintiff had knowledge of the Union's breach of duty at the time of filing. <u>See Arriaga-Zayas v. International Ladies' Garment Workers' Union-Puerto Rico Council</u>, 835 F.2d 11, 13 (1st Cir. 1987).

case management order.

<u>TIMELINESS</u>

Defendants argue that plaintiff's claim is not timely. Hybrid section 301/unfair representation claims are governed by a six month statute of limitations.  <u>DelCostello</u>, 462 U.S. at 169. The limitations period begins when "the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing."  <u>Arriaga-Zayas</u>, 835 F.2d at 13.

As discussed above, because plaintiff is essentially attempting to state a hybrid section 301/unfair representation claim without joining the Union, the six month statute of limitations under <u>Arriaga-Zayas</u> is appropriate.  The Union abandoned plaintiff's grievance on June 14, 2005, and plaintiff filed her complaint April 28, 2005.  At this time, due to the lack of evidence currently in the record concerning the Union's possible breach of duty and viewing the facts in the light most favorable to plaintiff, this court declines to find plaintiff's filing time-barred.

<u>CONCLUSION</u>

For the foregoing reasons, this court **RECOMMENDS**[15] that

---

[15]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another

defendant's motion for summary judgment (Docket Entry # 4) be **DENIED** and that plaintiff be permitted to amend the complaint within 30 days.  The parties shall appear for a scheduling conference to establish a discovery schedule at 10:00 a.m. on May 8, 2006.


     /s/  Marianne B. Bowler    
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  <u>United States v. Escoboza Vega</u>, 678 F.2d 376, 378-379 (1st Cir. 1982); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).