UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11257-NG

PAULA O'DONNELL,
    Plaintiff

v.

1st Amended (Consolidated) Complaint

DONNA BOGGS, MARIAN DOUCETTE,
BRENDAN HALL, WILLIAM FRANCIS,
MARY LOU MEGAN and THE BOSTON
GLOBE EMPLOYEES CREDIT UNION
    Defendants

Parties:

1. Plaintiff Paula O'Donnell resides at 18 Hill View Lane in Plymouth, MA 02360

2. Individual Defendants are:

   a) Marian Doucette is a Mass. resident whose address is currently unknown.

   b) Brendan Hall is a Mass. resident whose address is currently unknown.

   c) Donna Boggs is a Mass. resident whose address is currently unknown.

   d) William Francis is a Mass. resident whose address is currently unknown.

   e) Mary Lou Megan is a Mass. resident whose address is currently unknown.

3. Defendant The Boston Globe Employees Credit Union (the "Credit Union") is a registered credit union located at 135 Morrissey Boulevard in Boston, MA 02125-3310. Peter Vinci is currently the Manager.

Jurisdiction:

4. Jurisdiction is afforded this Court, for some or all claims, pursuant to the Labor Management Relations Act §301.

Facts:

5. Mrs. O'Donnell began employment with the Credit Union in 1974. She has also been a member of that Credit Union since her hiring.

6. Mrs. O'Donnell was employed at the Credit Union as a union member under a Collective Bargaining Agreement ("CBA") between the Credit Union and the Office and Professional Employees International Union, Local 6, AFL-CIO (hereinafter "Local 6"). Local 6 is located at 1 Billings Road, Suite 200, Quincy, MA 02171 and Mary Mahoney is the current President and Business Manager.

7. Defendant Credit Union is a federally insured and regulated, and a state chartered entity. As such, there are required, independent and non-negotiable duties and rights external to the CBA and requiring an agent or employee to report even suspected crimes such as fraud, larceny, embezzlement, etc.. (See 12 CFR 748.0 and 748.1(c) and 209 CMR 4.03.) An agent or employee failing to make such reports may be subject to civil penalties. (See 12 CFR 748.1(c)(3)). Defendants had actual knowledge of these federal and state rights and duties.

8. In early 1998 Mrs. O'Donnell, then Head Teller, discovered fraud and embezzlement of Credit Union funds by the Manager/CEO Gene Farrell, Jr. She reported this to the security department and to the Credit Union's Board of Directors ["Board."]. Following an investigation confirming Mr. Farrell's misconduct, he was terminated.

9. Mrs. O'Donnell's reporting of the fraud and embezzlement by Mr. Farrell engendered hostility and antagonism from certain Board members, including Brendan Hall. Furthermore, other members of the Board acted negatively to Mrs. O'Donnell, and behaved toward her in a manner unusual and not previously experienced.

10. In December 1998 Marion Doucette was appointed to the vacant position of Manager/CEO.

11. In March of 1999 Mrs. O'Donnell was appointed to the position of Bookkeeper, and in October of 2000 she was appointed to the position of Systems Manager. In both positions Mrs. O'Donnell had certain auditing and oversight functions and duties, including the duty to insure the security of depositor funds.

12. In November of 2000 Ms. Doucettee hired her daughter Linda Doucette for the position of Bookkeeper. Ms. Doucette misrepresented her daughter's qualifications for the job in order to have her hired even though she was otherwise not sufficiently qualified, and then arranged to have her daughter paid more than the union compensation schedule allowed. The previously terminated Manager/CEO, Mr. Farrell, had also arranged to have his relatives hired and paid more than the union contract allowed—a fact that was known to Ms. Doucette.

13. Mrs. O'Donnell complained to Ms. Doucette regarding the improper hiring and compensation of her daughter Linda, and also brought the issue to the attention of the Board.

14. Soon afterward Ms. Doucette began a course of retaliation, intimidation and interference directed at Mrs. O'Donnell. She began to verbally harass and intimidate Mrs. O'Donnell, obstructed performance of her duties, and prevented her from fully participating in managerial tasks that would allow her to maintain or advance her position in the Credit Union.

15. While Ms. Doucettte's daughter Linda was bookkeeper she bounced over 100 checks on her personal Credit Union account. These checks were processed and paid even though Linda had no funds to cover the checks. This was contrary to Credit Union procedure, policy and regulation, as it endangered depositor funds, but was directed by Ms. Doucette. Mrs. O'Donnell learned of this and complained to Ms. Doucette and reported the matter to the

Board. Neither Ms. Doucette or the Board took appropriate actions consistent with Credit Union procedure or policy, which would normally require suspension of Linda's employment and account privileges, or consistent with regulations.

16. After Mrs. O'Donnell's complaints and reports of these incidents, Ms. Doucette's conduct towards her became more abusive and threatening, and the Board's inaction and willful blindness towards the incidents and the retaliation became more notable.

17. On or about November 15, 2002 Linda deliberately manipulated the accounting system and overrode security procedures, thereby endangerning depositor funds, in order to clear a personal check when there were insufficient funds to cover it. This misconduct was discovered by another Credit Union employee and reported to Mrs. O'Donnell, and then reported to the Board.

18. Following this, Ms. Doucette's conduct towards Mrs. O'Donnell became even more abusive and threatening, and the Board's inaction and support for Ms. Doucette continued.

19. During Jan. 2003 Mrs. O'Donnell began investigating un-posted ATM/Debit-Card transactions that Ms. Doucette's daughter Linda was responsible for but had failed to register. She discovered that Linda was manipulating the clearing account and falsifying financial records in order to fraudulently obtain funds. This was again reported to Ms. Doucette, and then to the Board. After an investigation and Linda was terminated in Feb. 2003.

20. Upon information and belief this matter was reported to the Board of Banking by individuals unknown. A Board Member, William Francis and Donna Boggs responded to this situation by blaming Mrs. O'Donnell in a hostile and antagonistic manner for reporting the incident, and further retaliated by obstructing the performance of her duties.

21. On or about April 4, 2003 Mrs. O'Donnell discovered that she had been locked out of the computer system through manipulation of certain security measures, and could no longer monitor Linda Doucette's still active Credit Union account, which was a duty of her position. In fact, Linda was continuing to write bad checks and the lockout had been put in place by Ms. Doucette to prevent Mrs. O'Donnell from auditing Linda's account and learning this fact.

22. This matter was brought to the Board's attention by Mrs. O'Donnell but she was discouraged by board member Donna Boggs from pursuing the matter. In fact, Ms. Boggs ordered Mrs. O'Donnell to clear certain overdrawn checks submitted by Linda, thereby endangering depositor funds, even though to do so was contrary to Credit Union procedure, policy and regulation.

23. From shortly after Mrs. O'Donnell's initial complaints and reporting of the improper hiring and compensation of Ms. Doucettes's daughter Linda, Ms. Doucette engaged in an escalating course of retaliation, intimidation, and interference, including but not limited to daily verbal abuse, almost weekly acts of physical violence leading to a reasonable fear for personal safety, and weekly interference with the performance of Mrs. O'Donnell's duties. This continued, escalating conduct, which was intentional on the part of Ms. Doucette, and negligently or intentionally allowed to continue by the Board and the Credit Union, interfered with Mrs. O'Donnell's performance of her duties and also resulted in both actual physical, emotional and professional injury to Mrs. O'Donnell, and to such a hostile, unsafe work environment that, upon prudent medical advice, she could not continue to work for the Credit Union and had to take a leave of absence from August 15, 2003.

24. Following Mrs. O'Donnell's complaints to the Board regarding (i) Ms. Doucettes actions in allowing and protecting her daughter Linda from the consequences of her misconduct, and

5

(ii) Ms. Doucette's retaliation and interference directed at Mrs. O'Donnell, the Credit Union, and the Credit Union Board and its individual members had actual knowledge of the misconduct, the retaliation, and the interference in consequence of Mrs. O'Donnell's written and oral complaints to the Board, and through various grievance procedures.

25. The Credit Union and the Board, exhibiting willful blindness, intentionally and wrongfully refused to take reasonable and possible actions to fully protect the interests of the Credit Union and its members, and the interests of Mrs. O'Donnell in having a safe, secure and non-hostile work environment. In fact, the Credit Union, its Board and particular Board members, intended to and did, by act and omission, interfere with Mrs. O'Donnell's performance of her duties and attempted to make Mrs. O'Donnell's employment situation so hostile, or allow a hostile situation to continue, such that she would either leave employment or act in derogation of her duties. The failure to take any remedial action and continuing support of Ms. Docuette created a situation in which they prevented Mrs. O'Donnell from carrying out her duties and resulted in a constructive discharge.

26. Prior to and during Mrs. O'Donnell's absence from work, she attempted personally and through Local 6 to correct the situation and return to work but the Credit Union and Board members Donna Boggs, Brendan Hall, William Francis, and Mary Lou Megan continued to refuse to acknowledge the problem and take any action to cure or mitigate the abusive, dangerous and hostile environment, and did so in retaliation for Mrs. O'Donnell's conduct in complaining of and reporting improper conduct at the Credit Union. Mrs. O'Donnell was eventually terminated. After this, Ms. Doucette's employment belatedly ended.

27. Mrs. O'Donnell consistently reported to the Local 6 steward, or other appropriate authorities, all instances of Defendant' Doucette's misconduct and retaliation, and misconduct and

retaliation by the Board, and the hostile and injurious working conditions. Many, if not all of the reported issues were the subject of grievances or other discussions between Local 6 and the Credit Union, including a grievance of termination. Just prior to arbitration, Local 6-against the wishes and desires of Mrs. O'Donnell–abandoned the grievance.

**Count 1: Tortious Interference with Contractual Relations by Marian Doucette**

28. Plaintiff repeats the allegations set forth elsewhere in this complaint.

29. Plaintiff had an ongoing employment relationship with the Credit Union, with reasonable expectation of continuing and prospective employment. Defendant Marian Doucette was at all times aware of this and knowingly acted in such a manner so as to cause Plaintiff injury and prevent her from fully performing her required duties for the Credit Union,

30. Defendant Marian Doucette knowingly acted in such a manner so as to induce the Credit Union to terminate Plaintiff's employment relationship.

31. Defendant Marian Doucette acted out of improper motive, for self-gain and in retaliation for Plaintiff's complaints and reporting of improper conduct, which Plaintiff had a duty to do.

32. Defendant Marian Doucette's wrongful conduct has caused Plaintiff injury and damaged her in an amount that cannot as yet be accurately determined.

**Count 2: Tortious Interference with Contractual Relations by Board Member Defendants**

33. Plaintiff repeats the allegations set forth elsewhere in this complaint.

34. Plaintiff had an ongoing employment relationship with the Credit Union, with reasonable expectation of continuing and prospective employment. Defendants Donna Boggs, Brendan Hall, William Francis, and Mary Lou Megan were at all times aware of this.

35. Defendants Donna Boggs, Brendan Hall, William Francis, and Mary Lou Megan knowingly acted in such a manner so as to cause Plaintiff injury and prevent her form fully performing her required duties for the Credit Union,

36. Defendants Boggs, Hall, Francis, and Megan also knowingly acted in such a manner so as to induce the Credit Union to terminate Plaintiff's employment relationship.

37. Defendants Boggs, Hall, Francis, and Megan acted out of improper motive, for self-gain and in retaliation for Plaintiff's complaints and reporting of improper conduct, which Plaintiff had a duty and right to do.

38. Defendants Donna Boggs, Brendan Hall, William Francis, and Mary Lou Megan's wrongful conduct has caused Plaintiff injury and damaged her in an amount that cannot as yet be accurately determined.

**Count 3: Breach of Contract By Boston Globe Credit Union**

39. Plaintiff repeats the allegations set forth elsewhere in this complaint.

40. Plaintiff had an ongoing employment relationship with the Credit Union, with reasonable expectation of continuing and prospective employment.

41. Express and implied covenants concerning Plaintiff's employment and conditions of work existed between Plaintiff and the Credit Union, such covenants were made for sufficient consideration or existed as a matter of law.

42. Plaintiff's employment was covered under a Collective Bargaining Agreement between the Credit Union and Local 6.

43. The Plaintiff fully performed her duties and invoked all of her CBA-based rights and remedies.

44. The Credit Union, without cause or excuse, through its officers, employees and agents,

breached its express and implied duties and the Collective Bargaining Agreement by, among other things, failing to insure that the conditions of Plaintiff's work were safe and reasonable, and that she not be subject to abuse or retaliation by Defendant Doucette or others.

45. The Credit Union's actions and inactions, in regards to Plaintiff's employment and Defendant's Doucette's actions and conduct, violated the terms of the CBA.

46. Local 6, in failing to take Plaintiff's grievance to arbitration, violated its duty of fair representation since the failure to do so was not done to protect or expand the rights or interest of Local 6 or its members but, rather, in an improperly motivated, arbitrary, discriminatory, neglectful and bad-faith manner.

47. As a direct and proximate cause of Defendant's breach of its express and implied duties, Plaintiff suffered injury and damages in an amount that cannot as of yet be determined.

**Count 4: Various Public Policy and Rights Violations**

48. Plaintiff repeats the allegations set forth elsewhere in this complaint.

49. Plaintiff was engaged in protected activities of discovering and reporting wrongful conduct in a financial institution by Marion and Linda Doucette, and her employer and its officers and agents were aware of her actions, and she suffered adverse employment actions by Defendants causally connected to her engagement in the protected activities.

50. Plaintiff's exercise or rights secured by the Constitution or laws of the United States and the Commonwealth were interfered with, or attempted to be interfered with through threats, intimidation or coercion by Defendants, and resulted in injury to Plaintiff's rights.

51. Conduct of Plaintiff's employer towards Plaintiff was a vioaltion of federal and state public policy, including 31 U.S.C. §5328 protecting whistleblowers employed at financial entities.

9

52. Conduct of Plaintiff's employer and the other Defendants, including Defendant Doucette, towards Plaintiff was in violation of the Mass. Civil Rights Act.

Prayer for Relief

Wherefore, the Plaintiff respectfully request that this Honorable Court:

1. Order judgment in Plaintiff's favor against Defendants in such amount as will compensate Plaintiff fully for all injuries and damages, including costs, and pre- and post-judgment interest as allowed;

2. Order such further relief, including equitable relief, as this Court deems fair and just.

Jury Demand

Plaintiff requests a trial by jury of all issues so triable.

                                          Respectfully submitted for Plaintiff,
By his attorney,

dated: ___5/31, 2006        __/s/ Scott Adams _____
Scott Adams (BBO# 639166)
92 State St., 9th Flr.
Boston, MA 02109
Tel: (617) 742-4554