UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA O'DONNELL<br><br>        Plaintiff<br><br>v.<br><br>DONNA BOGGS*, MARIAN DOUCETTE*,<br>BRENDAN HALL, WILLIAM FRANCIS,<br>MARY LOU MEGAN*, and BOSTON<br>GLOBE EMPLOYEES CREDIT UNION<br><br>        Defendants | Civil Action No. 05-11257-NG |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 56, Defendants Donna Boggs, Marion Doucette, Brendan Hall, William Francis, Mary Lou Meighan, and the Boston Globe Employees Credit Union move to dismiss Plaintiff's claims as a matter of law. Plaintiff's claims against her former employer, the Boston Globe Employees Credit Union (the "Credit Union"), and certain board members (the "individual defendants") are governed by Section 301 of the Labor Management Relations Act ("LMRA") (29 U.S.C. § 185). As previously held by this Court, plaintiff's state law claims against the individual defendants for tortious interference with contractual relations are preempted by Section 301. *See* Electronic Order dated May 18, 2006, adopting the Report and

---

* Defendant Donna Boggs was incorrectly identified in Defendants' Notice of Removal as Donna Briggs. Plaintiff has misspelled the names of defendants Mary Lou Meighan and Marion Doucette in her Complaints. The proper spelling is used herein, as is the caption contained in Plaintiff's First Amended (Consolidated) Complaint.

Recommendations of Magistrate Judge M. B. Bowler (the "Report") (Docket Entry #11). The summary judgment record clearly establishes that Plaintiff cannot establish a Section 301 claim. Plaintiff cannot prove a breach of the duty of fair representation by Local 6 of the Office and Professional Employees International Union, AFL-CIO ("Local 6"), or a breach of contract by the Credit Union. Moreover, even if the Section 301 claim was not substantively flawed, it is barred by the six-month statute of limitations under the LMRA. Finally, Plaintiff's civil rights claims depend upon an interpretation of the CBA and are preempted under Section 301. Although the Court need not reach this issue, an analysis of the merits of these civil rights claims also demonstrates that they are substantively flawed, and that Plaintiff cannot prevail on claims for violation of 31 U.S.C. §5328 (which on its face does not apply here), or for violation of the Massachusetts Civil Rights Act.

The Plaintiff cannot prove any element of her claims, and the Amended Complaint must be dismissed in its entirety.

## ESSENTIAL UNDISPUTED FACTS[1]

Plaintiff is a former employee of the Credit Union. (Facts, ¶8.) She was a member of Local 6, which negotiated a Collective Bargaining Agreement ("CBA") with the Credit Union. O'Donnell was the Shop Steward for Local 6 and signatory to the CBA during some of the relevant period. *Id.*, ¶10. The individual defendants are current and former members of the Credit Union's Board of Directors. *Id.*, ¶¶3-7, 11-12. Marion Doucette is also the former

---

[1] Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, the Defendants have filed herewith a Statement of Undisputed Material Facts ("Facts"). To avoid duplication, the Facts are incorporated herein by reference and are summarized briefly here.

Manager/CEO of the Credit Union. *Id.*, ¶7. Defendants Hall and Doucette were also signatories to the CBA on behalf of the Credit Union during the same period. *Id.*, ¶12.

Plaintiff claims she was treated hostilely after she made complaints to the Board of Directors about the purported misconduct of Ms. Doucette's daughter, a former employee. (First Amended (Consolidated) Complaint ("AC"), ¶¶13-14.) She alleges that she was constructively discharged after the Board failed to adequately address her complaints and resolve the hostile working environment that developed after Plaintiff's complaints to individual members of the board. (AC, ¶23.) Claiming stress-related reasons, Plaintiff stopped showing up for work after August 15, 2003. *Id.* She exhausted her sick leave and vacation time on or about November 30, 2003. (Facts, ¶17.)

On January 19, 2004, Plaintiff formally requested a leave of absence from the Credit Union. *Id.*, ¶20. On February 2, 2004, the Board denied her request on the grounds that O'Donnell had not provided good and sufficient reason for the request under Article XV of the CBA, and demanded that Plaintiff return to work or face termination. *Id.* On February 2, 2004, the Board of Directors gave O'Donnell one final opportunity to end her unauthorized absence and return to work on February 17, 2004. *Id.*, ¶21. O'Donnell did not provide any medical documentation to support her request for the leave of absence, and declined the opportunity to end her unauthorized absence from work. *Id.*, ¶22. As a result, the Board of Directors terminated O'Donnell for gross neglect of duty, as allowed for in Article XX of the CBA. *Id.*

Local 6 filed a grievance on O'Donnell's behalf on February 25, 2004. The grievance alleged that O'Donnell's termination violated Articles I, VI, XV and XX of the CBA, and sought O'Donnell's reinstatement. *Id.*, ¶23. There is a multiple-step grievance process under the CBA. *Id.*, ¶24. A grievance hearing was held on March 19, 2004, and the Credit Union denied the

grievance on March 25, 2004. *Id.* There was a dispute as to the subsequent steps in the grievance process between Local 6 and the Credit Union. Ultimately, the Credit Union agreed to arbitrate the grievance despite the dispute over the timing of the request for arbitration. *Id.*, ¶25.

Local 6 withdrew the grievance just prior to a scheduled arbitration, and notified counsel for the Plaintiff on June 6, 2005 in writing of its decision not to proceed to arbitration. *Id.*, ¶26. Local 6 determined that the case did not have sufficient merit to win at arbitration and that the Credit Union did not violate the CBA in dealing with Ms. O'Donnell's request for a leave of absence. *Id.*, ¶27. Plaintiff filed a Charge dated August 22, 2005 against Local 6 with the National Labor Relations Board ("NLRB") alleging violation of the Union's duty of fair representation. *Id.*, ¶28.

In its response to the Charge, Local 6 set forth the reasons for its decision not to proceed with the arbitration of Ms. O'Donnell's grievance and stated in part as follows:

> [O'Donnell] was denied a 6-month unpaid leave of absence when she was unable and/or unwilling to provide medical documentation justifying her remaining on leave. When she still refused to return to work her employment was terminated in February 2004. ( . . . ) The Union ultimately concluded, however, that the employer was within its rights to deny the leave of absence, and that [O'Donnell] was required to obey and grieve. In addition, the Union learned from Ms. O'Donnell that she did not want to return to work for the credit union.

*Id.*, ¶29.

The NLRB's Regional Director agreed with Local 6, dismissed the Charge, and found that:

> The Union's decision not to take the case to arbitration was made after analysis of the grievance showed that it would not be possible for an arbitrator to remedy the grievance, thereby rendering the arbitration process moot. There is no evidence that the Union processed your grievance in an unfair or discriminatory manner.

*Id.*, ¶30.

The plaintiff appealed this decision, and the NLRB's Director of the Office of Appeals denied the appeal for substantially the reasons set forth in the Regional Director's October 19, 2005 letter, stating that "the evidence shows that the Union did not pursue [the] grievance to arbitration after a good faith review of the dispute, because [Ms. O'Donnell] refused either reinstatement or a negotiated monetary settlement. Inasmuch as the Union's decision was not based on unlawful considerations, further proceedings herein were deemed unwarranted." *Id.*, ¶31.

O'Donnell filed a complaint in Massachusetts Superior Court on or about April 28, 2005, alleging two counts of tortious interference with contractual relations, one against Doucette and the other against the other named Board members (Brendan Hall, William Francis, Mary Lou Meighan, Bob Sylvester[2]). The defendants removed the case to federal district court. (Docket Entry # 1.) *Id.*, ¶33.

On December 12, 2005, Plaintiff filed a separate civil action against the Credit Union alleging breach of the CBA by the Credit Union (Civ. A. No. 05-CV-12490-NG) (the "Second Civil Action"). *Id.*, ¶34. Pursuant to the Court's Electronic Order dated May 18, 2006, the claims of the Second Civil Action and the original action were to be consolidated into an

---

[2] Plaintiff appears to have abandoned any claim against Bob Sylvester, as his name appears only in the caption of the original complaint.

Amended Complaint, which Plaintiff filed on May 31, 2006. (Electronic Order dated May 18, 2006; and Docket Entry # 14.)

## ARGUMENT

Plaintiff's Amended Complaint is in four counts: Tortious Interference with Contractual Relations by Marion Doucette (Count I); Tortious Interference with Contractual Relations by Board Member Defendants (Count II); Breach of Contract by the Credit Union (Count III); and Various Public Policy and Rights Violations (Count IV). None of these counts can survive summary judgment. We address each claim in turn.

## I.    AS PREVIOUSLY DECIDED BY THIS COURT, PLAINTIFF'S CLAIMS FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS ARE PREEMPTED UNDER SECTION 301.

The Court has previously noted that Section 301 of the Labor Management Relations Act "preempts state law claims that depend on an interpretation of a CBA because Congress intended CBAs to be interpreted under a uniform federal labor law." *See* Report at 14. Because Plaintiff's tortious interference with contractual relations claims depend on an interpretation of the CBA between the Credit Union and Local 6, "section 301 preempts plaintiff's claims." *Id.* Plaintiff has nonetheless repleaded the identical claims as Counts I and II of her Amended Complaint. *Compare* Amended Complaint, ¶¶28-38 *with* Original Complaint, ¶¶25-34.

The Court's prior ruling applies equally here under the law of the case doctrine, which posits that "when a court decides upon a rule of law, that decision should govern the same issues in subsequent stages of the case." *Harlow v. Children's Hospital*, 432 F.3d 50, 55 (1st Cir. 2005) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The Court has already addressed and decided the preemption issue with regard to identical claims, and there is no need to revisit the Court's earlier decision here. As stated therein, the "CBA governing plaintiff's employment set

forth the duties of defendants as well as the standards guiding leaves of absence, discharge and

arbitration procedures.  Whether defendants acted wrongfully therefore depends on whether they

breached the terms of the CBA."  Report at 14.  For the same reasons as those set forth in the

Court's May 18, 2006 Report, the Plaintiff's state law claims for tortious interference with

contractual relations require an interpretation of the CBA, and are thus preempted.

Accordingly, the Defendants are entitled to judgment as a matter of law on Counts I and

II of the Amended Complaint.

## II.    PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW.

The Court permitted Plaintiff to amend her complaint "to set forth the essential elements

of a Section 301 claim as elaborated in *Top-Flite*."  Report at 19 (citing *Mulvihill v. Top-Flite

Golf Co.*, 335 F. 3d 15, 20 (1st Cir. 2003)).  For purposes of this Motion, defendants assume that

Plaintiff exhausted her administrative remedies.  The summary judgment record establishes,

however, that Plaintiff cannot prevail on the Section 301 claim as a matter of substantive law.[3]

To prevail on her claim, Plaintiff must prove that the employer breached the Collective

Bargaining Agreement, and that the Union breached its duty of fair representation.  *DelCostello

v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164-65 (1983); *Top-Flite*, 335 F. 3d at 20.  The claims

against the employer and the union are "inextricably interdependent."  *DelCostello*, 462 U.S. at

164.  This means that the Plaintiff must provide "sufficient evidence from which a reasonable

---

[3] As the Court noted in its Report, where both the employer and the union are defendants the
Section 301 action is known as a hybrid Section 301/unfair representation claim.  Report at 17 n.
13; *Arriaga-Zayas v. Int'l Ladies' Garment Workers*, 835 F. 2d 11, 12 (1st Cir. 1987).  Where, as
here, only the employer is the defendant, we refer to the claim as a Section 301 claim.  The
Union's unfair representation is a necessary element.  *DelCostello*, 462 U.S. at 165 ("The
employee may, if he chooses, sue one defendant and not the other; but the case he must prove is
the same whether he sues one, the other or both.").

factfinder can conclude not only that the discharge was improper but also that the union's breach undermined the grievance process and thereby contributed to the error." *Top-Flite*, 335 F. 3d at 20-21.  She cannot meet either of these requirements.

**A.    Plaintiff Cannot Establish that the Union Breached Its Duty of Fair Representation.**

To prevail on her claim, Plaintiff must prove: (1) erroneous discharge; (2) breach of duty by the union; and (3) a causal nexus between the erroneous discharge and the union's breach of duty.  *See* 29 U.S.C. § 1985; *Top-Flite*, 335 F.3d at 20.

A union has the duty "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177 (1967).  A union breaches its duty of fair representation only when its conduct is "arbitrary, discriminatory, or in bad faith." *Id.*, 386 U.S. at 190; *Air Line Pilots v. O'Neill*, 499 U.S. 65 (1991); *Chaparro-Febus v. Int'l Longshoremen Ass'n, Local 1575,* 983 F.2d 325, 330 (1st Cir. 1992).  The actions of a union "are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside 'a wide range of reasonableness' . . . as to be irrational." *Miller v. United States Postal Service*, 985 F.2d 9, 11-12 (1st Cir. 1993) (quoting *Air Line Pilots,* 499 U.S. at 67).

Employees have no "absolute right" to have a grievance taken to arbitration. *Vaca*, at 191.  "A union is under no duty to arbitrate a grievance that it honestly and in good faith believes lacks merit." *Chaparro-Febus*, 983 F.2d at 331 (citations omitted).  Moreover, reviewing courts owe ample deference to union decisions on pursuing grievances to arbitration. *Miller*, 985 F.2d at 12 (quoting *Air Line Pilots*, 499 U.S. at 78); *Berrigan v. Greyhound Lines, Inc.*, 782 F. 2d 295, 298 (1st Cir. 1986) (if a union were forced to arbitrate "a case that it felt had little basis in the

contract, it arguably would jeopardize its credibility with the employer for purposes of later, more supportable, disputes with management policies, instituted on behalf of all members"); *Sear v. Cadillac Automobile Co. of Boston*, 654 F.2d 4, 8 (1st Cir. 1981) (stating that the First Circuit is "unwilling to hold that a union breaches its duty of fair representation merely because, in the course of representing all of its members, it fails to espouse a position supported by some of the members who comprise its membership"). Failure to take a grievance to arbitration constitutes a breach of the duty of fair representation "only when the union's otherwise good faith decision is arbitrary." *Miller*, at 12.

In this case, the undisputed facts establish that the Union filed a grievance on Plaintiff's behalf, requested arbitration when the employer denied the grievance, disagreed with the Credit Union that time for arbitration had lapsed, chose an arbitrator, scheduled an arbitration date, engaged in settlement negotiations on behalf of the plaintiff, and for numerous reasons identified in the record ultimately decided that the grievance was not sufficiently meritorious to prevail at arbitration. (Mahoney Aff., ¶¶ 12-21.) The Union determined that the Credit Union was within its rights under the CBA to ask the Plaintiff for medical documentation to support her request for a leave of absence, and did not find a violation of the CBA by her employer. *Id.*, ¶¶ 16-19. Moreover, Plaintiff did not want to return to work at the Credit Union and there was thus no viable remedy for the grievance. *Id* , ¶20. The NLRB reviewed this decision on appeal and agreed, stating that "the Union's decision not to take the case to arbitration was made after analysis of the grievance showed that it would not be possible for an arbitrator to remedy the grievance, thereby rendering the arbitration process moot. There is no evidence that the Union processed [the] grievance in an unfair or discriminatory manner." (Mahoney Aff. ¶24; Mahoney Aff. Ex. 14, NLRB Regional Director's dismissal dated October 19, 2005.) The plaintiff

appealed the dismissal to the NLRB's Office of Appeals, which denied the appeal and held that "the evidence shows that the Union did not pursue [the] grievance to arbitration after a good faith review of the dispute, because [plaintiff] refused either reinstatement or a negotiated monetary settlement."  (Mahoney Aff. ¶25; Mahoney Aff. Ex. 15, NLRB's Office of Appeals letter dated December 7, 2005.)

On this record, there is no evidence that the Union's decision to withdraw the grievance was "arbitrary, discriminatory, or in bad faith."  *Vaca*, 386 U.S. at 190.  As set forth in *Ryan Iron Works, Inc. v. NLRB*, the Court of Appeals grants the National Labor Relations Board "deference with regard to its interpretation of the Act as long as its interpretation is rational and consistent with the statute."  257 F.3d 1, 6 (1st Cir. 2001) (quoting *NLRB v. Beverly Enters.-Mass., Inc.,* 174 F.3d 13, 22 (1st Cir. 1999)).  "The Board's findings of fact are conclusive if supported by substantial evidence on the record considered as a whole."  *Id.*  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)).  The ultimate question is "whether on this record it would have been possible for a reasonable jury to reach the Board's conclusion."  *Id.* (quoting *NLRB v. Hosp. of San Pablo, Inc.*, 207 F.3d 67, 70 (1st Cir. 2000)).

In the absence of any evidence of unreasonableness, arbitrariness, or discrimination, the NLRB's determination that Local 6 did not breach its duty of fair representation should not be disturbed.  For these reasons, Plaintiff cannot prove a breach by Local 6, and her Section 301 claim cannot survive summary judgment.  Accordingly,  judgment should enter for the Defendants on Count III of the Amended Complaint.

**B.    Plaintiff Cannot Establish that the Credit Union Breached the CBA.**

Plaintiff cannot succeed on her breach of contract claim against the Credit Union unless she is also able to establish that Local 6 breached its duty of fair representation. *DelCostello*, 462 U.S. at 164-65; *Chaparro-Febus*, 983 F. 2d at 330. Because she is unable to establish a breach of the duty of fair representation on the part of Local 6, Plaintiff's breach of contract claim against the Credit Union must also fail as a matter of law. However, even if the Court were to reach this issue, no genuine issue of material fact exists regarding the appropriateness of the Credit Union's actions under the CBA.

Local 6 determined that the Credit Union did not violate the CBA when it terminated Plaintiff for gross neglect of her duties. At the time of her termination, Plaintiff had failed to show up for work for over four months. Her sick time and vacation time had expired two months into her unauthorized absence from her job at the Credit Union, yet when she finally requested an authorized leave of absence, she provided no medical documentation to her employer to support her request. When given the opportunity to provide medical documentation, she declined to do so and utterly failed to provide medical support for the leave she claims she needed. There is nothing unreasonable about the Union's determination that the Credit Union did not breach the CBA.

The CBA specifically provides that "Unpaid leaves of absence for good and sufficient reason in the opinion of the employer shall be granted upon written request and shall not be unreasonably denied." (Weiner Aff., Ex. 2, at 8). There is simply no evidence that the Credit Union's denial of the Plaintiff's request was unreasonable. Indeed, there is ample evidence that the Credit Union abided by the CBA's provisions. The Union agreed and found no violation of

11

the CBA, and the NLRB affirmed the Union's decision to withdraw the grievance.  There is no

reason to overturn these determinations here.

For all of these reasons, Plaintiff cannot show a breach by the Union of its duty of fair

representation or breach of the CBA by the Credit Union, and Defendants are entitled to

judgment on her Section 301 claim.

## III.    PLAINTIFF'S SECTION 301 CLAIM IS TIME-BARRED AND FAILS AS A MATTER OF LAW.

As further grounds for dismissal, Plaintiff's Section 301 claim is untimely and must be

dismissed for failure to comply with the applicable six-month statute of limitations.  The relevant

statute of limitations in a Section 301 action with respect to both the breach of contract claim

against the employer and the fair representation claim against the union is six months, as dictated

by Section 10(b) of the NLRA.  *DelCostello*, 462 U.S. at 165; *Demars v. General Dynamics

Corp.*, 779 F.2d 95, 97 (1st Cir. 1985); *see also* Report at 20.  To prevail, a plaintiff must not only

prove the breach of contract, she must also prove that the union breached its duty of fair

representation.  Hence, a Section 301 cause of action accrues when the plaintiff received notice

of the alleged union wrongdoing.  *Demars*, 779 F.2d at 97.  In this case, the Court must

determine when the plaintiff became aware that the Union decided not to pursue the arbitration

regarding the plaintiff's termination.  The answer to this question is not in doubt.

The summary judgment record is clear that the Union informed counsel for the Plaintiff

by telephone and in writing on June 6, 2005 that the Union had chosen not to proceed with

arbitration of O'Donnell's grievance.  The Union sent this letter by facsimile as well as by

regular mail to counsel for the plaintiff.  The Plaintiff did not file her claim for breach of the duty

of fair representation by the Union until more than six months later, on December 12, 2005. This is six days after the time for filing had expired.[4]

The Union's letter to Plaintiff's counsel could not be more clear. It confirms a conversation on June 6, 2005 between Robert S. Manning, General Counsel for the Union, and counsel for the Plaintiff as follows:

> This letter will confirm our conversation today. As we discussed, the Union has decided not to proceed to arbitration on Ms. O'Donnell's grievance. Our investigation and analysis of the matter has led us to believe that the grievance is not sufficiently meritorious to win at arbitration. Instead, the company complied with its obligations under Articles XV and XX of the collective bargaining agreement. We are therefore withdrawing the case.

(Facts, ¶26; Mahoney Aff. Ex. 10.) There can be no question that this letter constitutes unequivocal notice to the Plaintiff that the Union would not proceed with arbitration of her claim. Plaintiff knew no later than June 6, 2005 that the Union would not pursue arbitration of the grievance relating to her termination. This is the alleged wrongdoing about which she now complains. Because the cause of action accrues when "the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing," *Arriaga-Zayas,* 835 F.2d at 13, the statute of limitations began to run upon receipt of the Union's June 6, 2005 facsimile letter, and expired on December 6, 2005.[5] Consequently, Count III of the Amended Complaint is

---

[4] Plaintiff's filing of the original Complaint in Massachusetts Superior Court on April 28, 2005 does not save her. That Complaint included only the state law claims for tortious interference with contract against the individual defendants. She did not file a claim against the Credit Union in any manner until December 12, 2005.

[5] Plaintiff may attempt to argue that she relied on a subsequent letter from the Union to Harvey Weiner, counsel for the Credit Union, dated June 14, 2005 confirming the Union's decision not to proceed to arbitration. This argument is unavailing. First, it is irrelevant when defense counsel for the Credit Union learned of the Union's decision. The dispositive issue is notice to

untimely and must be dismissed as a matter of law. *See Hazard v. Southern Union Co.*, 275 F. Supp. 2d 214, 223-25 (D.R.I. 2003) (granting motions for summary judgment of employer and union on statute of limitations and substantive grounds).

For the reasons set forth here, Plaintiff's Section 301 claim is substantively and procedurally defective, and summary judgment should enter for Defendants on Count III of the Amended Complaint.

## IV.    PLAINTIFF CANNOT PREVAIL ON HER CIVIL RIGHTS/PUBLIC POLICY CLAIMS

Count IV of the Amended Complaint is styled "Various Public Policy and Rights Violations." Plaintiff alleges that she "was engaged in protected activities of discovering and reporting wrongful conduct in a financial institution by Marion and Linda Doucette," that her "employer and its officers and agents were aware of her actions," and that "she suffered adverse employment actions by Defendants causally connected to her engagement in the protected activities." AC, ¶49. She further alleges that her "exercise or [sic] rights secured by the Constitution or laws of the United States and the Commonwealth were interfered with, or attempted to be interfered with through threats, intimidation or coercion by Defendants, and resulted in injury." *Id.*, ¶50. She claims violations of 31 U.S.C. § 5328 (a whistleblower statute for employees of financial institutions which does not apply here), and the Massachusetts Civil

---

the Plaintiff of the Union's alleged wrongdoing. Second, the June 14, 2005 letter is not addressed to the Plaintiff or her counsel, and she is not noted as a recipient of a copy of that correspondence. Third, even if one assumes *arguendo* that the Plaintiff received a copy of the June 14, 2005 letter at some point, this is irrelevant as well because the letter served only to confirm the information already provided to Plaintiff's counsel in conversation and in writing on June 6, 2005, that is, that the Union had decided not to pursue arbitration of the Plaintiff's grievance.

Rights Act. Neither claim withstands scrutiny. On the facts of this case, such claims are preempted. Even if the Court were to reach the merits of each claim, they fail as a matter of law.

A.    **Plaintiff's Claim under 31 U.S.C. § 5328 Is Preempted By Section 301, and Plaintiff Is Not Entitled to Any Relief under the Statute.**

As this Court has already ruled, Section 301 preempts claims that depend upon an interpretation of the CBA. Report at 7 (citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988); *Allis-Chalmers v. Lueck*, 471 U.S. 202, 209 & 220 (1985); *Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 41-42 (1st Cir. 1997); *Magerer v. John Sexton & Co.*, 912 F.2d 525, 528 (1st Cir. 1990); Gorman & Finkin, *Basic Text on Labor Law: Unionization and Collective Bargaining*, pp. 1110-1113 & 1123 (2nd ed. 2004)). Where a dispute turns on an interpretation of a CBA, congressional interest in uniform interpretation of CBAs calls for federal preemption. Report at 8 (citing *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962); *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456 (1957)). As the Court also pointed out, rights that exist "independently of a CBA under state and federal law, however, are not preempted." Report at 7 (citing *Lividas v. Bradshaw*, 512 U.S. 107, 123-24 (1994); *Ralph v. Lucent Technologies, Inc.*, 135 F.3d 166, 171 (1st Cir. 1998)). The preemption inquiry "focuses on whether the state law claims are 'founded directly on rights created by collective-bargaining agreements' or are 'substantially dependent' on analysis of such agreements." *Nuzzo v. Northwest Airlines, Inc.*, 887 F. Supp. 28, 31 (D. Mass. 1995) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)). If they are, the claims are preempted. *Id*. In this case, Plaintiff has not identified any rights that exist independently of the CBA, and her claims substantially depend on analysis of the CBA that governed the terms of her employment.

Plaintiff alleges that 39 U.S.C. § 5328(a) protects "whistleblowers employed at financial entities." AC, ¶51. This is incomplete and inaccurate. The statute provides in pertinent part as follows:

> No financial institution ( . . . ) may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee ( . . .) provided information to the Secretary of the Treasury, the Attorney General, or any Federal supervisory agency regarding a possible violation of any provision of this subchapter ( . . . ) by the financial institution (. . . ) or any director, officer, or employee of the financial institution.

39 U.S.C. § 5328 (a).

Plaintiff alleges that she suffered adverse employment actions as a result of having complained about the conduct of Marion and Linda Doucette. AC, ¶49. Based on her allegations, the adverse employment action is the Credit Union's denial of her request for a leave of absence, and her termination. The essence of all of Plaintiff's claims is that the Credit Union wrongfully denied her request for a leave of absence and wrongfully terminated her employment. As the Court has already held, the question of whether the Defendants "derogated from Article VI of the CBA requires interpreting the duties imposed under the CBA according to the standards of federal labor law," just as "determining whether the denial of the leave of absence was reasonable requires application of federal labor law," and whether "the terms of the CBA entitled the Credit Union to discharge plaintiff in this situation requires an interpretation of the CBA." Report at 13 (citing *Allis-Chalmers*, 471 U.S. at 210 & 214-16; *International Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 862 & n. 5 (1987); *Magerer*, 912 F.2d at 529-31). This claim depends entirely upon an interpretation of the CBA under federal labor law, and is thus preempted.

Although the Court need not reach this issue here, this claim is also substantively flawed. Even if one assumes *arguendo* that the state-chartered Credit Union is subject to 39 U.S.C. § 5328(a), it is clear that the statute does not apply to the Plaintiff because she did not provide any information to the Secretary of the Treasury, the Attorney General, or any federal supervisory agency, and she does not allege that she did.  Indeed, Plaintiff claims only that she reported the alleged wrongdoing of Marion and Linda Doucette to certain board members.  AC, ¶¶13, 15, 17, 19, 22, 24.  This is patently insufficient, and Plaintiff has no cause of action under 31 U.S.C. § 5328.

> **B.**    **Plaintiff's Claim under the Massachusetts Civil Rights Act Is**
> **Also Preempted by Section 301, and Plaintiff is Not Entitled to**
> **Any Relief under this Statute.**

The Plaintiff also seeks relief under the Massachusetts Civil Rights Act ("MCRA"). M.G.L. c. 12 §§ 11H & 11I (providing a remedy for the interference "by threat, intimidation, or coercion" with an individual's "exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth").  Plaintiff does not specify the constitutional right she was exercising or the nature of the alleged violation, but based on her allegations it is likely that she claims her employer violated a right to free speech by retaliating against her after she reported alleged misconduct of Marion and Linda Doucette by denying her request for a leave of absence and terminating her employment.[6]  Assuming this is her claim, such allegations relate directly to the

---

[6] The Massachusetts whistleblower statute does not apply here, because, *inter alia*, the Credit Union is not a government employer as defined in the state statute.  M.G.L. c. 149, §185(a)(2) (defining "employer" as "the commonwealth, and its agencies or political subdivisions, including, but not limited to cities, towns, counties, and regional school districts, or any authority, commission, board or instrumentality thereof.").  Nor does Plaintiff allege that she

Credit Union's denial of Plaintiff's request for a leave of absence and her termination, and require an interpretation of the CBA to determine whether her employer's actions complied with the provisions of the CBA. It is undisputed that the CBA governs the employment relationship here. Her MCRA claim is thus preempted under Section 301. *See Tamburello v. Comm-Tract*, 67 F.3d 973, 980-81 (1st Cir. 1995) (NLRA preempts MCRA claim where plaintiff alleged retaliation by his employer for his union activities); *Nuzzo*, 887 F. Supp. at 32 (plaintiff's MCRA claim of retaliatory discharge was based only on the contract right to his position arising out of the CBA and "last chance agreement" setting forth his rights as a probationary employee, and was preempted by Railway Labor Act, which requires the same preemption analysis as under Section 301); *Hart v. Verizon Communication, Inc.*, 2004 WL 438786, at *2 (D. Mass. 2004) (LMRA preempts breach of contract claim based on Code of Business Conduct where Code was not a contract between parties and interpretation of CBA was required to resolve plaintiff's claims). In *Tamburello*, the plaintiff's MCRA claim for retaliation for union activities raised the same question as would be asked in an unfair labor practice proceeding, and there was a significant risk of state interference with the unfair labor practice of the NLRB. The MCRA claim was thus preempted. 67 F.3d at 980-81.

The *Acciavatti* case is distinguishable from the instant case for several reasons. In *Acciavatti*, the plaintiff brought an action against his former employer and supervisor for, *inter alia*, violation of his rights under the MCRA when he was terminated after he informed city officials about water supply contamination at Brockton's water treatment facility. *Acciavatti v. Professional Services Group, Inc.*, 982 F. Supp. 69, 72 (D. Mass. 1997). The defendants moved

---

disclosed or threatened to disclose "a risk to public health, safety or the environment." M.G.L. c. 149, §185(1).

to dismiss. With regard to the MCRA claim, the Court held that the claim could proceed to discovery, declined to exercise pendant jurisdiction, and remanded it to State Court. The Court ruled that the plaintiff's MCRA claim was not preempted because it did not substantially depend on an interpretation of the CBA but instead involved a determination of whether the employer's proffered reason for the termination was pretextual. *Id*. at 79. The plaintiff's MCRA claim thus survived the motion to dismiss.

The circumstances differ greatly here, where the summary judgment record establishes that Ms. O'Donnell was given an opportunity to provide medical support for her request for a leave of absence and she simply declined to do so. (Facts, ¶¶ 20-22.) She then declined the opportunity to return to work after her unauthorized absence of many months. *Id*. The Credit Union was thus faced with an employee who refused to return to work yet failed to provide any medical support for a leave of absence. She provided no "good and sufficient reason" to grant the request for a leave of absence under the CBA, and the Credit Union did not violate the CBA or any purported civil right by terminating her for gross neglect of duty. Unlike *Acciavatti*, the circumstances of plaintiff's termination are well-developed and fully documented in the summary judgment record here, and are intricately intertwined with the CBA. Her MCRA claim is thus preempted by Section 301.

However, even if the Court were to reach the merits of Plaintiff's MCRA claim, the claim fails as a matter of law. First, there is no evidence that Plaintiff was prevented from expressing her concerns about Marion and Linda Doucette. Indeed, the Amended Complaint is replete with references to Plaintiff's reports to Board members about these very concerns. *See* AC, ¶¶ 13, 15, 17, 19, 22, 24. Her displeasure with the steps taken by the Board to respond to her complaints does not rise to the level of a violation of the right to free speech, and is insufficient to state a

claim under the MCRA. *See Canney v. Chelsea*, 925 F. Supp. 58, 68 (D. Mass. 1996) (allegation that employer dismissed plaintiff's concerns fails to state a claim under MCRA).

Second, Massachusetts courts are very reluctant to find "threats, intimidation or coercion" in routine personnel actions such as those presented here. *Webster v. Motorola, Inc.*, 418 Mass. 425, 430  (1994).   Again, an analysis of the Credit Union's personnel decisions in denying Plaintiff's request for a leave of absence and her termination directly implicate the CBA and require an interpretation of the contract governing her employment.  Accordingly, Plaintiff's federal and state civil rights claims fail as a matter of law, and Count IV of the Amended Complaint should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the defendants are entitled to summary judgment on all claims against them, and the Court should enter judgment in their favor on all counts of the Amended Complaint.

Respectfully submitted,

Defendants

DONNA BOGGS, MARIAN DOUCETTE,
BRENDAN HALL, WILLIAM FRANCIS,
MARY LOU MEGAN, and BOSTON
GLOBE EMPLOYEES CREDIT UNION

By their attorneys,

/s/Elizabeth A. Houlding

Harvey Weiner, BBO#519840
Elizabeth A. Houlding, BBO#645981
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA  02110
(617) 951-2100

January 19, 2007

## **CERTIFICATE OF SERVICE**

I, Elizabeth A. Houlding, hereby certify that I have this 19th day of January, 2007, served a copy of the foregoing document upon all counsel of record by causing a copy of same to be electronically served upon:  seaink@earthlink.net

/s/Elizabeth A. Houlding
_____
Elizabeth A. Houlding

652771_1
193-90324