UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA O'DONNELL<br><br>Plaintiff<br><br>v.<br><br>DONNA BOGGS[*], MARIAN DOUCETTE*,<br>BRENDAN HALL, WILLIAM FRANCIS,<br>MARY LOU MEGAN*, and BOSTON<br>GLOBE EMPLOYEES CREDIT UNION<br><br>Defendants | Civil Action No. 05-11257-NG |

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS
PURSUANT TO LOCAL RULE 56.1**

The Defendants submit this Statement of Undisputed Material Facts in support of their Motion for Summary Judgment and in compliance with Fed. R. Civ. P. 56 and Local Rule 56.1.

**I.   PLAINTIFF'S EMPLOYMENT BY THE CREDIT UNION**

1.   Plaintiff Paula O'Donnell ("O'Donnell") is a former employee of the Boston Globe Employees Credit Union (the "Credit Union") who alleges that over the course of several years she was harassed and ultimately constructively discharged. First Amended (Consolidated) Complaint ("AC"), at ¶¶5, 23.

---

[*] Defendant Donna Boggs was incorrectly identified in Defendants' Notice of Removal as Donna Briggs. Plaintiff has misspelled the names of defendants Mary Lou Meighan and Marion Doucette in her Complaints. The proper spelling is used herein, as is the caption contained in Plaintiff's First Amended (Consolidated) Complaint.

2. The Credit Union is a state-chartered financial institution incorporated in 1962 and located in Boston, Massachusetts. Affidavit of Harvey Weiner ("Weiner Aff."), at ¶6.[1]

3. Defendant Donna Boggs was a member of Credit Union's Board of Directors at all times relevant through 2004 and served as Chairman during the relevant period. *Id.* at ¶7.

4. Defendant Brendan Hall was a member of the Credit Union's Board of Directors at all times relevant. *Id.* at ¶8.

5. Defendant William Francis has been a member of the Credit Union's Board of Directors since 2000. *Id.* at ¶9.

6. Defendant Mary Lou Meighan has been a member of the Credit Union's Board of Directors since 2001. *Id.* at ¶10.

7. Defendant Marion Doucette was an employee of the Credit Union for 30 years. She served on the Credit Union's Board of Directors at all times relevant, and served as Manager/CEO of the Credit Union from June 1998 until her retirement on July 2, 2004. *Id.* at ¶11.

## II. THE COLLECTIVE BARGAINING AGREEMENTS

8. O'Donnell was employed by the Credit Union from 1974 through February 13, 2004. AC at ¶5; Weiner Aff. Ex. 10: Letter from Weiner to Adams dated February 13, 2004.

---

[1] References herein to the Affidavit of Harvey Weiner are to the affidavit and its attached exhibits filed on September 6, 2005 with the Defendants' previous Motion for Summary Judgment. To avoid duplication and unnecessarily burdening the Court's electronic filing system, the Defendants respectfully refer the Court to the Weiner Affidavit and exhibits thereto as previously filed. (Docket Paper # 7.)

2

9. Credit Union non-managerial employees are covered by a CBA between the Credit Union and Local 6. The text of the relevant portions of the CBA remained unchanged from the January 1, 2000 agreement through the January 1, 2003 agreement. Weiner Aff. at ¶14.

10. O'Donnell was a signatory to the CBA as Shop Steward for Local 6 for the CBA in effect from January 1, 2000 through December 31, 2002, and was a member of Local 6 at all relevant times. *Id.* at ¶15; Weiner Aff. Ex. 1 at 18.

11. Defendants Marion Doucette and J. Brendan Hall were also signatories to the CBA during the same period. Weiner Aff. at ¶16; Weiner Aff. Ex. 1 at 18. Doucette signed as Manager/CEO and Hall signed as a Member of the Board of Directors. *Id.*

12. Defendants Doucette, Hall and Meighan were signatories to the CBA in effect from January 1, 2003 through December 31, 2005. Weiner Aff. at ¶17; Weiner Aff. Ex. 2 at 18. Hall and Meighan signed as members of the Board of Directors and Doucette signed as Manager. *Id.*

13. The CBA includes: Article VI, which vests all management rights in the Credit Union; Article XV, which addresses unpaid leaves of absence; Article XIX, which provides a grievance procedure; Article XX, which addresses discipline and discharge; and Article XXI, which provides for arbitration of grievances. Weiner Aff. at ¶18; Weiner Aff. Ex. 1 at 3, 8, 11, 14; Weiner Aff. Ex. 2 at 3, 8, 11, 14.

14. Article VI of the CBA provides in part:

> "All disciplinary action undertaken by Management against a member of the Bargaining Unit shall be for just cause and will be conducted in private and in such manner as to create respect for authority and preserve individual dignity. It is the responsibility of Management to inform individuals directly and in private of any alleged failure to perform their work properly so that the necessary changes and/or corrections can be made as speedily as possible."

Weiner Aff. at ¶19; Weiner Aff. Ex. 1 at 3-4; Weiner Aff. Ex. 2 at 3-4.

15. Article XV of the CBA states as follows:

"<u>Unpaid Leaves of Absence</u> – Unpaid leaves of absence for good and sufficient reason in the opinion of the Employer shall be granted upon written request and shall not be unreasonably denied. Such leaves shall not be construed to be a termination of employment so long as they last no more than 6 months and the employee does not become employed by another employer. The employer will not be obligated to maintain benefits coverage during leaves covered by this article, but may do at its discretion considering each case."

Weiner Aff. at ¶20; Weiner Aff. Ex. 1 at 8-9; Weiner Aff. Ex. 2 at 8-9.

16. Article XX of the CBA states in part:

"The Union and the Employer agree that discipline, including discharge, must be administered fairly and consistently for just cause. Discipline will typically be progressive. The offense facts and circumstances will determine the level of discipline to be applied regardless of prior discipline, if any…

…A minimum of two written warnings will be issued before an employee may be dismissed except in the case of *gross neglect of duty* or serious misconduct." [Emphasis added.]

Weiner Aff. at ¶21; Weiner Aff. Ex. 1 at 13; Weiner Aff. Ex. 2 at 13.

### III. PLAINTIFF'S REQUEST FOR LEAVE OF ABSENCE AND FAILURE TO PROVIDE SUPPORTING MEDICAL DOCUMENTATION.

17. O'Donnell did not return to her job after August 14, 2003. Her sick leave and vacation time expired on or about November 30, 2003. Weiner Aff. at ¶22.

18. Through her attorney, Scott Adams, O'Donnell indicated that she would not return to work because of what she perceived to be a hostile working environment. Weiner Aff. at ¶23; Weiner Aff. Ex. 3: Letter from Adams to Boggs dated October 27, 2003.

19. The letters from Attorney Adams acknowledged that O'Donnell's claims needed to be addressed through the grievance procedure provided for in the CBA. Weiner Aff. at ¶24; *See, e.g.*, Weiner Aff. Ex. 3: Letter from Adams to Boggs dated October 27, 2003; Weiner Aff.

4

Ex. 5: Letter from Adams to Weiner dated December 30, 2003; Weiner Aff. Ex. 7: Letter from Adams to Weiner dated January 19, 2004.

20.     On or about January 19, 2004, O'Donnell requested an unpaid leave of absence. Weiner Aff. at ¶25; Weiner Aff. Ex. 7: Letter from Adams to Weiner dated January 19, 2004. The request was denied by the Board of Directors on the grounds that O'Donnell had not provided good and sufficient reason to grant the request as required by Article XV of the CBA. Weiner Aff. at ¶25; Weiner Aff. Ex. 8: Letter from Weiner to Adams dated February 2, 2004; Weiner Aff. Ex. 1 at 8; Weiner Aff. Ex. 2 at 8.

21.     On February 2, 2004, the Board of Directors gave O'Donnell one final opportunity to end her unauthorized absence and return to work on February 17, 2004. Weiner Aff. at ¶26; Weiner Aff. Ex. 8: Letter from Weiner to Adams, dated February 2, 2004.

22.     O'Donnell did not provide any medical documentation to support her request for the leave of absence, and declined the opportunity to end her unauthorized absence from work. Weiner Aff. at ¶27; Weiner Aff. Ex. 9: Letter from Adams to Weiner dated February 11, 2004. As a result, the Board of Directors terminated O'Donnell for gross neglect of duty, as allowed for in Article XX of the CBA. Weiner Aff. at ¶27; Weiner Aff. Ex. 10: Letter from Weiner to Adams dated February 13, 2004; Weiner Aff. Ex. 2 at 13.

### IV.     PLAINTIFF'S GRIEVANCE PROCEEDING UNDER THE COLLECTIVE BARGAINING AGREEMENT

23.     Local 6 filed a grievance on behalf of O'Donnell on February 25, 2004. Affidavit of Mary Mahoney ("Mahoney Aff."), filed herewith, at ¶12; Mahoney Aff. Ex. 3: Letter from Lemieux to Doucette dated February 25, 2004. The grievance alleged that O'Donnell's termination violated Articles I, VI, XV and XX of the CBA, and sought O'Donnell's reinstatement. *Id.*

24. There is a multiple-step grievance process under the CBA. Mahoney Aff. at ¶13; Mahoney Aff. Ex. 2 at 11-12. A grievance hearing was held on March 19, 2004. Mahoney Aff. at ¶13; Mahoney Aff. Ex. 4: Letter from Lemieux to Vinci dated August 24, 2004. The Credit Union denied the grievance on March 25, 2004. Mahoney Aff. ¶13; Mahoney Aff. Ex. 5: Letter from Hall to Lemieux dated March 25, 2004 (unsigned).

25. There was a dispute as to the subsequent steps in the grievance process between Local 6 and the Credit Union. Mahoney Aff. at ¶14; Mahoney Aff. Ex. 6: Letter from Lemieux to Vinci dated September 7, 2004; Mahoney Aff. Ex. 7: Letter from Vinci to Lemieux dated September 13, 2004; Mahoney Aff. Ex. 8: Letter from Lemieux to Vinci dated September 15, 2004. Ultimately, the Credit Union agreed to arbitrate the grievance despite a dispute over the timing of the request for arbitration. Mahoney Aff. at ¶14; Mahoney Aff. Ex. 9: Letter from Weiner to Lemieux dated September 21, 2004.

26. Local 6 withdrew the grievance just prior to a scheduled arbitration. Mahoney Aff. at ¶15. The grievance was formally withdrawn in writing on June 6, 2005. *Id.*; Mahoney Aff. Ex. 10: Letter from Manning to Adams dated June 6, 2005.

27. After review of the grievance, Local 6 determined that the case did not have sufficient merit to win at arbitration and that the Credit Union did not violate the CBA in dealing with Ms. O'Donnell's request for a leave of absence. Mahoney Aff. at ¶¶ 16-21.

V. **REVIEW AND DISMISSAL OF PLAINTIFF'S APPEAL BY THE NATIONAL LABOR RELATIONS BOARD**

28. Plaintiff filed a Charge against Local 6 with the National Labor Relations Board ("NLRB") alleging violation of its duty of fair representation on or about August 22, 2005. Mahoney Aff. at ¶22; Mahoney Aff. Ex. 12.

29. In its response to the Charge, Local 6 set forth the reasons for its decision not to proceed with the arbitration of Ms. O'Donnell's grievance and stated, in part, as follows:

> "[O'Donnell] was denied a 6-month unpaid leave of absence when she was unable and/or unwilling to provide medical documentation justifying her remaining on leave. When she still refused to return to work her employment was terminated in February 2004. ( . . . ) The Union ultimately concluded, however, that the employer was within its rights to deny the leave of absence, and that [O'Donnell] was required to obey and grieve. In addition, the Union learned from Ms. O'Donnell that she did not want to return to work for the credit union."

Mahoney Aff. at ¶23; Mahoney Aff. Ex. 13.

30. The NLRB's Regional Director dismissed the Charge on October 19, 2005, and found that:

> The Union's decision not to take the case to arbitration was made after analysis of the grievance showed that it would not be possible for an arbitrator to remedy the grievance, thereby rendering the arbitration process moot. There is no evidence that the Union processed your grievance in an unfair or discriminatory manner.

Mahoney Aff. at ¶24; Mahoney Aff. Ex. 14.

The Regional Director refused to issue a Complaint in this matter, and advised O'Donnell of her right to appeal. *Id.*

31. Plaintiff filed an appeal, which the NLRB's Office of Appeals denied for substantially the reasons set forth in the Regional Director's October 19, 2005 letter, stating that "the evidence shows that the Union did not pursue [the] grievance to arbitration after a good faith review of the dispute, because [Ms. O'Donnell] refused either reinstatement or a negotiated monetary settlement. Inasmuch as the Union's decision was not based on unlawful

7

considerations, further proceedings herein were deemed unwarranted." Mahoney Aff. at ¶25; Mahoney Aff. Ex. 15.

## VI. RELEVANT DATES AND PROCEDURAL HISTORY

32. O'Donnell filed a complaint in Massachusetts Superior Court on or about April 28, 2005, alleging two counts of tortious interference with contractual relations, one against Doucette and the other against the other named Board members (Brendan Hall, William Francis, Mary Lou Megan, Bob Sylvester).

33. The defendants removed the case to federal district court. (Docket Entry # 1.)

34. On December 12, 2005, the Plaintiff filed a separate civil action against the Credit Union alleging breach of contract by the Credit Union. Civ. A. No. 05-CV-12490-NG) (the "Second Civil Action").

35. The Defendants moved for summary judgment in the original action on September 6, 2005 on the grounds that Plaintiff's state law claims of tortious interference with contractual relations were subject to preemption by Section 301 of the Labor Management Relations Act. The Court denied the summary judgment motion on May 18, 2006, allowed the Plaintiff leave to amend her complaint, and ordered Plaintiff to include all of her claims from both this action and the Second Civil Action into an amended complaint in this action. (Electronic Order dated May 18, 2006.)

36. The Plaintiff filed a "First Amended (Consolidated) Complaint" (the "Amended Complaint") against Donna Boggs, Marion Doucette, Brendan Hall, William Francis, Mary Lou Meighan, and the Boston Globe Employees Credit Union on May 31, 2006. (Docket Entry # 14.) The Amended Complaint is in four counts: "Tortious Interference with Contractual Relations by Marian Doucette" (Count I); "Tortious Interference with Contractual Relations by

8

Board Member Defendants" (Count II); "Breach of Contract by Boston Globe Credit Union" (Count III); and "Various Public Policy and Rights Violations" (Count IV). *Id.*

                                                Respectfully submitted,

                                                Defendants

                                                DONNA BOGGS, MARIAN DOUCETTE, BRENDAN HALL, WILLIAM FRANCIS, MARY LOU MEGAN, and BOSTON GLOBE EMPLOYEES CREDIT UNION

                                                By their attorneys,

                                                /s/Elizabeth A. Houlding
                                                _____
                                                Harvey Weiner, BBO#519840
                                                Elizabeth A. Houlding, BBO#645981
                                                PEABODY & ARNOLD LLP
                                                30 Rowes Wharf
                                                Boston, MA  02110
                                                (617) 951-2100

January 19, 2007

## **CERTIFICATE OF SERVICE**

      I, Elizabeth A. Houlding, hereby certify that I have this 19th day of January, 2007, served a copy of the foregoing document upon all counsel of record by causing a copy of same to be electronically served upon:  seaink@earthlink.net

                                      /s/Elizabeth A. Houlding
                                      _____
                                      Elizabeth A. Houlding

652816_1
193-90324