UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

PAULA O'DONNELL
                Plaintiff

v.                                                    Civil Action No. 05-11257-NG

DONNA BOGGS, MARIAN DOUCETTE,
BRENDAN HALL, WILLIAM FRANCIS,
MARY LOU MEGAN, and BOSTON
GLOBE EMPLOYEES CREDIT UNION

                Defendants

## AFFIDAVIT OF MARY MAHONEY

I, Mary Mahoney, hereby depose under oath and state as follows:

1.      I am the President and Business Manager of the Office and Professional Employees International Union, Local 6, AFL-CIO ("Local 6").

2.      My office is located at 77 Parkingway in Quincy, Massachusetts, 02169.

3.      I have been the President of Local 6 for 11 years, and the Business Manager for 3 years.

4.      Local 6 is responsible for the union membership of the Boston Globe Employees Credit Union ("the Credit Union").

5.      A true and accurate copy of the Collective Bargaining Agreement ("CBA") between the Credit Union and Local 6, dated January 1, 2000 through December 31, 2002 is attached hereto as Exhibit 1.

6.      A true and accurate copy of the CBA between the Credit Union and Local 6 dated January 1, 2003 through December 31, 2005 is attached hereto as Exhibit 2.

7.      The CBA includes: Article VI, which vests all management rights in the Credit Union; Article XV, which addresses unpaid leaves of absence; Article XIX, which provides a grievance procedure; Article XX, which addresses discipline and discharge; and Article XXI, which provides for arbitration of grievances. Ex. 1 at 3, 8, 11, 14; Ex. 2 at 3, 8, 11, 14.

8.      Article VI of the CBA provides in part:

"All disciplinary action undertaken by Management against a member of the Bargaining Unit shall be for just cause and will be conducted in private and in such manner as to create respect for authority and preserve individual dignity.  It is the responsibility of Management to inform individuals directly and in private of any alleged failure to perform their work properly so that the necessary changes and/or corrections can be made as speedily as possible."

Ex. 1 at 3-4; Ex. 2 at 3-4.

9.      Article XV of the CBA states as follows:

"Unpaid Leaves of Absence – Unpaid leaves of absence for good and sufficient reason in the opinion of the Employer shall be granted upon written request and shall not be unreasonably denied.  Such leaves shall not be construed to be a termination of employment so long as they last no more than 6 months and the employee does not become employed by another employer.  The employer will not be obligated to maintain benefits coverage during leaves covered by this article, but may do at its discretion considering each case."

Ex. 1 at 8-9; Ex. 2 at 8-9.

10.      Article XX of the CBA states in part:

"The Union and the Employer agree that discipline, including discharge, must be administered fairly and consistently for just cause.  Discipline will typically be progressive.  The offense facts and circumstances will determine the level of discipline to be applied regardless of prior discipline, if any…

…A minimum of two written warnings will be issued before an employee may be dismissed except in the case of gross neglect of duty or serious misconduct."

Ex. 1 at 13; Ex. 2 at 13.

11.     I am familiar with Paula O'Donnell's grievance against the Credit Union regarding her termination from the Credit Union. The grievance was based on the Credit Union's denial of Ms. O'Donnell's request for an unpaid leave of absence.

12.     Local 6 pursued a grievance on behalf of O'Donnell on February 25, 2004. Ex. 3: Letter from Lisa Lemieux to Marion Doucette dated February 25, 2004. The grievance alleged that O'Donnell's termination violated Articles I, VI, XV and XX of the CBA, and sought O'Donnell's reinstatement. *Id.*

13.     There is a multiple-step grievance process under the CBA. Ex. 2 at 11-12. A grievance hearing was held on March 19, 2004. Ex. 4: Letter from Lemieux to Vinci dated August 24, 2004. The Credit Union denied the grievance on March 25, 2004. Ex. 5: Letter from Hall to Lemieux dated March 25, 2004 (unsigned).

14.     There was a dispute as to the subsequent steps in the grievance process between Local 6 and the Credit Union. *See* Ex. 6: Letter from Lemieux to Vinci dated September 7, 2004; Ex. 7: Letter from Vinci to Lemieux dated September 13, 2004; Ex. 8: Letter from Lemieux to Vinci dated September 15, 2004. Ultimately, the Credit Union agreed to arbitrate the grievance despite the dispute over the timing of the request for arbitration. Ex. 9: Letter from Weiner to Lemieux dated September 21, 2004.

15.     Local 6 withdrew the grievance just prior to the scheduled arbitration. The grievance was formally withdrawn on June 6, 2005. This was communicated to Plaintiff's counsel by telephone on June 6, 2005 and by facsimile letter received by Plaintiff's counsel on June 6, 2005. Ex. 10: Letter from Manning to Adams dated June 6, 2005.

16.     There are several reasons why Local 6 decided not to proceed to arbitration. After reviewing the grievance with the Executive Board of Local 6, we determined that the case

did not have sufficient merit to win at arbitration. Based on our review of this case, the employer did not violate the CBA by denying Ms. O'Donnell's request for a leave of absence. The CBA contains the requirements governing requests for a leave of absence in Article 15 and provides as follows: "Unpaid leaves of absence for good and sufficient reason in the opinion of the employer shall be granted upon written request and shall not be unreasonably denied." Ex. 2 at 8.

17.    The Credit Union informed Ms. O'Donnell that if she was requesting a leave of absence for medical reasons, she should submit current medical documentation explaining why she was unable to work. Ms. O'Donnell did not provide any medical documentation. The employer denied her request for a leave of absence for failure to provide good and sufficient reason for the request, and asked her to resign or return to work by February 17, 2004. When Ms. O'Donnell informed the Credit Union that she would not return to work, the Credit Union terminated her for failing to return to work, pursuant to Article XX of the CBA. Ex. 2 at 13; Ex. 11: Letter from Weiner to Adams dated February 13, 2004.

18.    At a meeting held at the Local 6 office on February 24, 2004, Ms. O'Donnell confirmed that she had not provided medical documentation to the Credit Union to support her request for an unpaid leave.

19.    Based on the CBA's requirement of "good and sufficient reason" for leaves of absence, Local 6 determined that the Credit Union was within its rights under the CBA to ask for medical documentation. Because Ms. O'Donnell did not meet that requirement, Local 6 did not find it likely that an arbitrator would find a violation of the CBA by her employer.

20.     In addition, we learned that Ms. O'Donnell did not want to return to work at the Credit Union.  As a result, the Union determined that it would not be possible for the arbitrator to remedy the grievance.

21.     Also, Local 6 and the Credit Union had entered into settlement discussions with counsel for Ms. O'Donnell and had proposed a monetary settlement that Ms. O'Donnell had originally found acceptable.  The Union continued to leave that settlement option open until the day before the arbitration.  The Union decided to withdraw the grievance because we determined that we were unlikely to prove the employer violated the CBA, Ms. O'Donnell no longer wished to return to her position, and she no longer wished to pursue a reasonable settlement.

22.     A true and accurate copy of Ms. O'Donnell's National Labor Relations Board ("NLRB") Charge against Local 6 alleging violation of its duty of fair representation dated August 22, 2005 is attached hereto as Exhibit 12.

23.     A true and accurate copy of the response of Local 6 to the NLRB dated September 14, 2005 is attached hereto as Exhibit 13.  The response summarizes Local 6's reasons for withdrawing the grievance prior to the scheduled arbitration.

24.     A true and accurate copy of the NLRB Regional Director's dismissal of the Charge dated October 19, 2005 is attached hereto as Exhibit 14.  The Regional Director found that:

> The Union's decision not to take the case to arbitration was made after analysis of the grievance showed that it would not be possible for an arbitrator to remedy the grievance, thereby rendering the arbitration process moot. There is no evidence that the Union processed your grievance in an unfair or discriminatory manner.

The Regional Director refused to issue a Complaint in this matter, and advised Ms. O'Donnell of her right to appeal.  *Id.*

25.    A true and accurate copy of the denial of Ms. O'Donnell's appeal by the NLRB's

Director of the Office of Appeals dated December 9, 2005 is attached hereto as Exhibit 15.  The

Office of Appeals denied the appeal for substantially the reasons set forth in the Regional

Director's October 19, 2005 letter, and stated that "the evidence shows that the Union did not

pursue [the] grievance to arbitration after a good faith review of the dispute, because [Ms.

O'Donnell] refused either reinstatement or a negotiated monetary settlement.  Inasmuch as the

Union's decision was not based on unlawful considerations, further proceedings herein were

deemed unwarranted." Ex. 15.

**Signed under the pains and penalties of perjury** this _19_ day of January, 2007.


_Mary Mahoney_
Mary Mahoney

## CERTIFICATE OF SERVICE

I, Elizabeth A. Houlding, hereby certify that I have this 19th day of January, 2007, served
a copy of the foregoing document upon all counsel of record by causing a copy of same to be
electronically served upon:  seaink@earthlink.net


/s/Elizabeth A. Houlding

_____
Elizabeth A. Houlding


652772_1
193-90324

# EXHIBIT 1

# COLLECTIVE BARGAINING AGREEMENT
between the


## BOSTON GLOBE EMPLOYEES CREDIT UNION
and the


## OFFICE AND PROFESSIONAL EMPLOYEES
INTERNATIONAL UNION, LOCAL 6, AFL-CIO


# JANUARY 1, 2000 THROUGH DECEMBER 31, 2002

# TABLE OF CONTENTS

Anti-Discrimination ................................................ pg. 15
Applications ...................................................... pg. 11
Arbitration ....................................................... pg. 14
Bereavement Leave ................................................ pg. 7
Coverage and Employment .......................................... pg. 1
Cross Training and Fill-Ins ...................................... pg. 11
Discharge and Discipline Action .................................. pg. 13
Grievances ....................................................... pg. 11
Holidays ......................................................... pg. 4
Insurance ........................................................ pg. 6
Jury Duty ........................................................ pg. 5
Leaves of Absences ............................................... pg. 8
Length of Contract ............................................... pg. 18
Longevity ........................................................ pg. 16
Management Rights ................................................ pg. 3
New Job Catergories .............................................. pg. 9
No Strike/Lockout ................................................ pg. 15
Overtime ......................................................... pg. 3
Paid Sick Leave .................................................. pg. 7
Parental Leave of Absence ........................................ pg. 8
Part-Time Employees .............................................. pg. 16
Payroll Deductions ............................................... pg. 4
Personnel Files .................................................. pg. 15
Posting (of vacant positions) .................................... pg. 10
Promotions/Transfers ............................................. pg. 9
Recognition Clause ............................................... pg. 1
Retirement Plan .................................................. pg. 15
Seniority ........................................................ pg. 9
Service Letter ................................................... pg. 17
Temporary Vacancies .............................................. pg. 9
Tuition Reimbursement ............................................ pg. 17
Vacation ......................................................... pg. 5
Wages ............................................................ pg. 2
Work Week ........................................................ pg. 2

**ARTICLE I**        **RECOGNITION  CLAUSE**

The Employer recognizes the OPEIU Local 6 AFL-CIO as the sole
and exclusive Collective Bargaining Agent for all its full-time and
regular part-time office clerical employees as listed in the
*Certification of Representation from the National Labor Relations
Board.*

The Union recognizes that the Employer is subject to the
Massachusetts State Statutes and General Laws relating to
financial institutions and credit unions as a state-chartered
organization, and being insured by the *National Credit Union
Share Insurance Fund and Massachusetts Credit Union Share
Insurance Corporation*, subject to the regulations of the
*Commonwealth of Massachusetts Office of Commissioner of Banks*
both as amended or may be amended.  Therefore, no provision in
this agreement shall prevent the management from carrying out
their responsibilities under the regulations promulgated by the
aforementioned regulatory agencies.

Successors and Assigns
Should the Employer sell, transfer, or assign its right, title, or
interests or transfer by receivership or bankruptcy, its interest or
ownership in any form or manner to a successor employer, the
Employer will include in the transfer agreement a provision
requiring the successor employer to recognize the Union and to be
bound by the terms and conditions of this agreement and shall
deliver a copy of this agreement to the successor employer.  In the
event such a sale, transfer, or assignment occurs, the Employer
shall also deliver to the Union a copy of that portion of the sale,
transfer or assignment agreement that includes the provision that
the successor employer recognize the Union and that it agrees to be
bound by the terms and conditions of this agreement.

**ARTICLE II**       **COVERAGE AND EMPLOYMENT**

All employees presently in the bargaining unit and all probationary
employees upon completion of their probationary periods shall
become and remain members of the Union as a condition precedent
to continued employment with the Credit Union and the Union
agrees to receive into its membership all such employees who may
be eligible therefore according to the laws of the Union.

All new employees hired to fill positions covered by the
Bargaining Unit shall be probationary employees for the first 90

calendar days. The Credit Union may, during such 90 days, in its discretion, dismiss, lay off or transfer such employees whether with or without cause and no grievance shall be filed or claimed on behalf of such employees by the Union or on account of any action of the Credit Union during said 90 calendar days. However, all provisions of this Agreement, except where the contrary is indicated herein, shall apply to the probationary employees. Nothing herein, however, shall affect the termination of employment for just cause.

**ARTICLE III**       **WORK WEEK**

Employees current hours shall continue to be observed. The regular work week of 37.5 hours, shall consist of not more than five (5) days, of not more than 7.5 hours per day. Employees with regularly scheduled work days and hours will be given two weeks notice of any changes in schedule.

A.)  Breaks:

1.)  Part-time employees who work at least four (4) hours per day, but less than six (6) hours, shall receive a twenty (20) minute paid break, to be taken at the discretion of the immediate manager, based on the operational needs of the Credit Union. Part-time employees who work at least six (6) hours per day receive a one-half (1/2) hour paid break.

2.)  Full-time employees shall receive two (2) fifteen (15) minute paid breaks; one (1) in the morning, one (1) in the afternoon. A thirty (30) minute unpaid break shall be given for lunch; however, one-hour lunch breaks may be required, combining the two (2) fifteen (15) minute paid breaks together with the one-half (1/2) hour unpaid break lunch period, at the discretion of the immediate manager, based on the operational needs of the Credit Union.

**ARTICLE IV**        **WAGES**

A.       All employees covered by this agreement shall receive a 3% increase for each year of this agreement.

B.       Base pay for new hires:

|  |  |
|---|---|
| Systems Manager: | $600/wk |
| Bookkeeper: | $575/wk |
| Sr. Loan Officer: | $525/wk |

2

| | |
|---|---|
| Loan Officer: | $385/wk |
| Head Teller: | $425/wk |
| Operations Clerk: | $400/wk |
| Member Rep: | $325/wk |
| Asst. Head Teller: | $375/wk |
| Full-time Teller: | $350/wk |
| Exper. P/T Teller: | $8.50/hr. |
| In-exp. P/T Teller: | $8.25/hr. |

The base pay schedule will become effective on October 1, 2000.

C.    Merit raises will be allowed, with the approval of management, on an individual basis.

**ARTICLE V**      **OVERTIME**

Pay for work in excess of 7.5 hours per day or 37.5 hours per week, scheduled Monday through Saturday, will be paid at the rate of time and one-half of the employee's straight time rate. Pay for Holidays and Sundays will be paid at the rate of double-time.

Mandatory training sessions scheduled outside of the normal 7.5 hour work day or 37.5 hour work week shall be compensated at straight time, for all hours actually worked.

**ARTICLE VI**      **MANAGEMENT RIGHTS**

All management rights, powers, authority and functions, whether heretofore or hereafter exercised, and regardless of frequency or infrequency of their exercise, shall remain vested exclusively in the Credit Union, and the Credit Union shall have the sole and exclusive right to manage its business in every respect and to take any other action which the Credit Union deems desirable to the conduct of its business.

It is the intention of Credit Union and the Union that the management rights, powers, authority and functions referred to herein shall remain exclusively vested in the Credit Union except insofar as specifically forbidden or abridged by an express provision of this Agreement.

All disciplinary action undertaken by Management against a member of the Bargaining Unit shall be for just cause and will be conducted in private and in such manner as to create respect for authority and preserve individual dignity. It is the responsibility of

3

Management to inform individuals directly and in private of any alleged failure to perform their work properly so that the necessary changes and/or corrections can be made as speedily as possible.

Employees, at their request, may have a Union Representative during the interview, conference or hearing which may reasonably be expected to result in disciplinary action.

**ARTICLE VII**          **PAYROLL DEDUCTIONS**

The Credit Union agrees to make, at the request of the Union in writing, deductions of regular monthly Union dues from the employees who are members of the Union and who have submitted written authorizations to the Credit Union to make such deductions. The amount of such monthly Union dues and assessments is to be specified by the Union in writing to the Credit Union and such amounts shall be deducted from the earnings, if any, of each employee who shall have worked during the week when the deductions is to be made. Such deductions shall be made from the employee's earnings in each of the first four (4) payroll week each month. The deductions so made will be transmitted by the Credit Union to the Union. The Credit Union will make the voluntary deductions for *VOTE* (voice of the electorate) when so authorized.

A 401K Plan to be implemented by Credit Union management by November 1, 2000.

**ARTICLE VIII**         **HOLIDAYS**

Regular employees have the following nine (9) holidays, plus their birthday.

| | |
|---|---|
| New Year's Day | Martin Luther King Day |
| President's Day | Memorial Day |
| Independence Day | Labor Day |
| Columbus Day | Thanksgiving |
| Christmas | |

Unused holiday time must be used within an eight (8) week time-frame, seniority prevailing, allowing only one employee per department at a time. Situational circumstances to be allowed at the discretion of the immediate manager, based on the operational needs of the Credit Union. Requests will not be unreasonably denied.

4

Personal day (your birthday) must be used within one calendar year of your actual birthday.

**ARTICLE IX**          **VACATION**

Vacation for employees is based on service from the date of hire determined at December 31st of each year.

When a part-time employee is hired to a full-time position, all prior part-time service, on a pro-rata basis, shall be counted towards vacation provided there is not a break in service with the Credit Union.

| | |
|---|---|
| 0-3 months | 0 weeks |
| 3 months - 1 year | 1 week |
| 1 year - 7 years | 3 weeks |
| 8 years - 17 years | 4 weeks |
| 18 years or more | 5 weeks |

Vacation selections, where possible shall be made on the basis of seniority.

Employees with excess vacation days as of January 1, 2000, will be banked.

Starting January 1, 2000, all accrued vacation time must be taken by December 31st of each year. One week of accrued vacation time will be allowed to be carried over to the following year.

Situational circumstances to be allowed at the discretion of the immediate manager, based on the operational needs of the Credit Union. Requests will not be unreasonably denied.

**ARTICLE X**          **JURY DUTY**

An employee covered by this Agreement who is required to perform Jury Duty during a regular work day will be granted leave of absence with pay, less the amount received for Jury Duty. An employee serving on jury duty will continue to receive their salary and shall forward any per diem allowance to the Credit Union. The Credit Union shall be notified promptly of an employee's receipt of a Summons of Jury Service.

**ARTICLE XI**          **INSURANCE**

Full-time employees will receive the following insurance that will be 100% paid by the employer, except as noted below:

A.    *Credit Union League Group Insurance and Benefits Program* or other family or individual coverage as applicable.

B.    Life Insurance (including supplemental insurance as currently provided)

C.    Long-Term Disability Insurance

Employees, upon signing of this contract, shall receive a detailed description of all insurance coverage and yearly therafter.

1.    Effective January 1, 2000 the following caps for insurance costs shall be in place. Any overage amounts in costs relating to the coverage plans shall be shared by the seven (7) employees currently enrolled in said plan.

Year 1:  $4,750.00 per month  *2 000*
Year 2:  $5,250.00 per month  *2001*
Year 3:  $5,750.00 per month *200 2*

2.    In the event the Employer shall hire any new employees, and those employees sign under BGECU coverage plan, the caps shall be increased as follows:

Family Insurance Plan:  add $900.00 per employee
Single Insurance Plan:   add $500.00 per employee

3.    In the event that current employees shall at any time change the status of their coverage from Family to Single, or vice versa, adjustments in the cap shall be made in accordance with #2 above.

If an employee has medical coverage from a source other than the BGECU, he or she may decline the BGECU medical insurance and receive a $1,000.00 cash payment on or before January 1 of each year, or after six (6) months from date of hire. To be eligible for such payment the employee must:

6

1.    Complete and sign a waiver of benefit form

2.    Provide documentation of coverage under another health plan

3.    Submit the waiver form and documentation to the Credit Union C.E.O. or his/her designee on or before the anniversary date of the insurance. You will then be ineligible to sign up for insurance coverage until the following year.

## ARTICLE XII        PAID SICK LEAVE

Full-time employees shall not forfeit any part of his or her pay because of absence on account illness for up to fifteen (15) working days in any calendar year, or up to an additional fifteen (15) working days in any calendar year during the period of major illness. Accordingly, in cases of major illnesses, an employee will be entitled to up to (30) days sick leave consisting of a fifteen (15) day major illness allowance plus any unused portion of his/her fifteen (15) days sick leave.

In order to qualify for a major illness allowance, an employee must be absent for five (5) working days or more and produce certification from a hospital or medical doctor that the illness caused the employee to be absent for this period.

A full-time employee may use a total of three (3) sick days, from their accrued days, as personal days (example: doctor appointment, sick child, snow/hazardous weather).

Effective date of signing, part-time employees with a minimum of one (1) year of employment will be eligible for one (1) day of sick leave prorated. Effective January 1, 2001 part-time employees with a minimum of one (1) year of employment will be eligible for three (3) days of sick leave prorated.

## ARTICLE XIII        BEREAVEMENT LEAVE

In the event an employee's spouse, mother, father, step-parent or step-child, son, daughter, brother, sister, grandmother, grandfather, grandchild, mother-in-law, father-in-law, sister-in-law, brother-in-law, daughter-in-law, or son-in-law dies, such employee shall be permitted to absent himself/herself from work without loss of pay

on any of his/her regularly scheduled working days following within four (4) consecutive days, one of which shall be the day of the funeral. This shall not apply when the funeral occurs at a time when the employee is on vacation or leave of absence.

If the deceased person is not a member of the immediate family as defined above, the employee may request a vacation day or unpaid day off to attend the funeral of the relative.

One day's absence, with pay, is allowable for the death of an employee's aunt or uncle.

**ARTICLE XIV**    **PARENTAL LEAVE OF ABSENCE**

A.    Parental leave shall be available upon reasonable notice to all employees who become parents of newborn or newly-adopted children.

B.    A female employee on the regular payroll shall be entitled to a maternity leave not to exceed six (6) months. During the leave the employee may first use the unused portion of her sick leave (30 working days maximum), and then may schedule remaining earned vacation days. This will end the paid portion of the leave and the remaining time shall be unpaid leave.

C.    A male employee shall be entitled to paternity leave not to exceed ten (10) working days. This leave is unpaid.

D.    The Employer agrees to maintain all life and health insurance coverage during parental leave subject to any regular participation required by the Employee.

E.    An employee returning from parental leave shall be restored to his/her former position at the salary he/she would have received had employment been continuous.

**ARTICLE XV**    **LEAVES OF ABSENCES**

*Unpaid Leaves of Absence* Unpaid leaves of absence for good and sufficient reason in the opinion of the Employer shall be granted upon written request and shall not be unreasonably denied. Such leaves shall not be construed to be a termination of employment so long as they last no more than 6 months and the employee does not become employed by another employer. The employer will not be obligated to maintain benefits coverage

8

during leaves covered by this article, but may do so at its discretion considering each case.

**ARTICLE XVI**       **SENIORITY**

*The Boston Globe Employees Credit Union* seniority begins from the date of hire as a regular employee in the bargaining unit. When a person who has worked as a part-time employee is hired as a regular employee, credit will be given for the hours worked as a part-time employee towards seniority.

**ARTICLE XVII**      **PROMOTION/TRANSFERS**

Promotion/Transfer - The Employer agrees to inform the Union of any major changes in employment procedures. Also, in the case of a permanent or semi-permanent change in an employee's basic function and responsibility, the Employer agrees to give sufficient Notice to the Union.

The Credit Union is to promote from within whenever practicable. When seeking to fill vacancies in existing staff positions falling under the provisions of this agreement, the Employer shall first consider employees. However, applicants who are from outside the bargaining unit may also be selected based on the needs of the Credit Union as determined by the Employer, job requirements and applicant qualifications.

**ARTICLE XVIII**     **TEMPORARY VACANCIES**

Temporary vacancies shall be filled by the Office Manager or his/her designee in his/her discretion. A temporary vacancy shall continue until such time as the Board of Directors shall declare permanent vacancy.

At the discretion of the Office Manager or his/her designee, temporary employees may be hired during temporary vacancies or peak periods for work up to and including six months or longer by mutual agreement. At the expiration of said six months, such employees must either be terminated or, if continued in the employ of the Credit Union, must become members of the Union.

A.       **NEW JOB CATEGORIES**

The Union shall be notified thirty (30) days prior to the creation of job categories or positions not otherwise listed under the Recognition clause or elsewhere in the collective bargaining

agreement. This thirty (30) day notice shall be observed unless otherwise agreed to in writing by the Union. Said notice shall include a posting in the form as set forth in this Agreement. The Union and the Employer shall then negotiate the appropriate job description and scale. The new job shall be posted according to section B posting. If agreement is not reached within the thirty (30) day period, either party may refer the unresolved issues to arbitration.

**B.**    **POSTING**

At least fourteen (14) calendar days prior to filling a vacancy the Employer shall send notices to the Union offices of all openings that occur within the bargaining unit, whether existing or newly created.

The Union shall post all notices of job openings promptly. If the Employer does not deliver the postings to the Union by noon, the posting will be dated the next calendar day.

If the Union objects to such posting, it may seek a meeting with the Employer to address its inquiries. Such meeting must be held within five (5) working days of said inquiry. The posting procedure will not be delayed; however, the posting will be revised to include a notice that the Union is objecting to the posting. Any changes in the posting that result from such inquiry will serve to restart the fourteen (14) day posting period. If the issue is unresolved, the matter may be taken to arbitration.

Notices shall be filled out by the Employer per the following sample posting form:

## POSTING FORM

Date of Posting:                          Date to be taken down:

Dept:                                     Number of jobs to be filled:

Department Head:                          Job Title:

Shift:

Qualification:

Basic Function and Responsibilities:

If the posted vacancy has not been filled within twenty (20) days after the posting has been taken down, the vacancy may not be filled unless it is re-posted. If the Employer does not intend to fill the vacancy the Employer will notify the Union as to the reason for not filling the vacancy.

**C.     APPLICATIONS**

All bargaining unit employees will have the opportunity to submit an application to the CEO expressing interest in a posted position. Such application will include the name of the employee, current department, position applied for, resume and date of application. Only those employees, from within the bargaining unit, who have filed an application for a specific job posting will be considered for that posting. A list of such employees will be sent to the Union. At the end of the fourteen (14) day posting period, all Credit Union applicants will be interviewed. Personnel not receiving position will be notified in writing.

**D.     CROSS-TRAINING/FILL-INS**

In order to provide increased efficiency for the Credit Union and its customers union personnel will be cross trained (example: a teller may be trained as a customer representative).

Should an employee be required to fill-in for higher level position and actually performs the work of the employee replaced for a full day or more shall receive the wage rate for the higher for all hours worked.

**ARTICLE XIX**        **GRIEVANCES**

In the case of any different between the Credit Union and any employee within the bargaining unit out of the terms of this Agreement, the grievance procedure shall be as follows:

1.      The employee and/or the Shop Steward, within ten (10) working days after the Grievant or the Union has knowledge of it, whichever occurs first, will give written notice of the grievance to the Office Manager or his/her designee. The Office Manager or designee, within five (5)

11

working days, will respond and schedule a meeting to be held no later than ten (10) working days from the date of the response for the purpose of trying to resolve the grievance. The Office Manager or designee will issue his/her decision within three (3) working days of the meeting. If the employee disputes the decision of the Office Manager or designee fails to respond within the aforesaid time limit, then the grievance will be processed in the following manner:

2.    Within five (5) working days of the decision of the Office Manager or designee, the Business Agent of the Union shall submit the grievance, in writing to the Office Manager or designee. The Office Manager or designee shall schedule or hold a meeting with the Business Agent of the Union and the Grievant for the purpose of resolving the grievance. The Office Manager or designee shall issue a written decision within five (5) working days of said meeting. If there is no settlement or if the Office Manager or designee fails to issue hi/her decision within the aforesaid time limit, the Business Agent shall forward the written grievance to the President of the Credit Union with five (5) working days of the written response.

3.    Within ten (10) working days of the receipt of said notification, the President and Treasurer of the Credit Union shall schedule and hold a meeting with Business Agent of the Union for the purpose of trying to resolve the grievance. The President shall issue a decision within ten (10) working days of the meeting. If this matter is not settled or if the President fails to issue a decision within the agreed time limit, the Business Agent of the Union shall submit the grievance to arbitration, as herein provided, within ten (10) working days of the President's decision or failure to issue his/her response. Both parties agree fully to cooperate in an effort to resolve any grievance arising out of this Agreement.

Where there is no specific provision as set forth in this agreement, expectations to the above time limits shall be made only upon the mutual agreement of the Parties. In the absence of any such mutual agreement to extend the time limits, the failure of the Union to act within the above time limits shall constitute a waiver of that particular grievance and it shall be processed no further. Any such constructive waiver or acceptance shall be applicable to that particular grievance only and shall not serve as a precedent nor

a prejudice to the position of either the Union or the Credit Union in any future grievance.

**ARTICLE XX**          **DISCHARGE and DISCIPLINE ACTION**

The Union and Employer agree that discipline, ~~including discharge, must~~ be administered fairly and consistently for just cause. Discipline will ~~typically be~~ progressive. The offense facts and circumstances will determine the level of discipline to be applied regardless of prior discipline, if any. There shall be the following forms of discipline:

A.      Verbal Warnings, which constitute the lease severe form of discipline, consist of verbal reprimands to the employee by the department head or manager. A written record of a verbal warning may be made.

B.      Written Warnings may be issued regarding an aspect of an employee's performance which could lead to suspension or dismissal, if uncorrected.

A minimum of two written warnings will be issued before an employee may be dismissed ~~except in the case of gross neglect of duty or serious misconduct.~~

An employee will be allowed a reasonable amount of time to correct the behavior or conduct which led to the first written warning. Reasonable amount of time shall be determined, by the Credit Union management and Union representative, depending upon the severity of the behavior, conduct, or infraction. If the same behavior or conduct continues after that period of time, a second written warning may be issued.

Any written warning older than two (2) years shall cease to exist for purposes of progressive discipline. However, those warnings may be considered by the Employer in determining the degree of discipline to issue in future cases involving probation,, suspension, or discharging action.

The Union may request that a written warning be reviewed by the Employer for possible removal after one (1) year if the employee has made substantial progress toward correcting the behavior or conduct which resulted in a written warning.

13

C.  Suspension and/or disciplinary probation decisions will be Made by the C.E.O. or President of the Board. The Union shall be notified when a final decision to suspend or place on probation is made, and the same rights of representation and appeal will apply as are applied to written warnings or dismissals.

If, in conference, a suspension without pay is found by mutual agreement not to have been based on just cause, the Employer will restore the employee to his/her position with full pay and all benefits for the period from the date of suspension to date of reinstatement, with service record unimpaired. A lesser form of discipline may be invoked.

**ARTICLE XXI**                **ARBITRATION**

If any grievance is submitted to arbitration under the provisions of *Article XIX*, the arbitration procedure shall be as follows:

- The decision to resort to arbitration must be in writing and given to the other party as provided in Step 3 of the Grievance Procedure.

- Within fifteen (15) working days from the original date of the grievance submission, the Credit Union and the Union shall designate their arbitrators. The two arbitrators so chosen shall, within (15) working days from the original date of the submission of the grievance to arbitration, select a third arbitrator.

- In the event that the arbitrators selected by the Credit Union and the Union should be unable to agree upon a third arbitrator, then the Parties may contact the American Arbitration Association for a list of five (5) arbitrators. Within ten (10) working days of the receipt of the list, the two arbitrators selected by the Parties shall meet and alternately strike the name of an arbitrator, the last name on the list, subject to his/her acceptance, shall serve as the third arbitrator.

- The three arbitrators shall then endeavor to meet daily for the purpose of considering said grievance and the decision of the majority of said arbitrators,

14

submitted in writing to the Credit Union and the Union, shall be final and binding upon both Parties.

- Each Party shall bear the expenses of its arbitrator and the expense of the third arbitrator and any other expenses incurred in the conduct of the arbitration shall be borne equally by the Parties hereto.

**ARTICLE XXII**

## PERSONNEL FILES

Personnel files are confidential files. The employee is entitled to see his/her own file at reasonable times, excluding pre-employment material, upon written request. The employee may show his/her file to anyone upon written authorization to the C.E.O. The C.E.O. will provide the employee with a copy of any material that has been placed in his/her personnel file pertaining to his/her job performance that may result in disciplinary action. The employee shall be given the opportunity to respond in writing to such material, and such response shall be filed in his/her personnel file.

Every employee is entitled to see and reproduce his/her own personnel file as herein described at any reasonable time. The file shall remain in the custody of the C.E.O. at all times.

**ARTICLE XXIII**

## NO STRIKE - NO LOCKOUT

The Union agrees that there will be no strikes during the term of this Agreement and the Credit Union agrees there will be no lockouts during said period.

**ARTICLE XXIV**

## RETIREMENT PLAN

The Employer will continue the present retirement plan. The Employer will continue to contribute 15% of the base salary for each full time bargaining unit member.

**ARTICLE XV**

## ANTI-DISCRIMINATION

The Employer agrees that it will not discriminate against an employee or prospective employee by reason of race, color, creed, national origin, political or religious views, union position, sex, sexual orientation, age, physical or mental disability, marital status, physical appearance apart from

dress beyond bonafide occupational requirements of financial institutions, parenthood, or child bearing capacity.

**ARTICLE XXVI**          **LONGEVITY**

Each Union employee shall receive longevity compensation, minus applicable state and federal taxes as follows:

> Upon completion of ten years continuous service, a check in the amount of $150.00 shall be given to those employees once a year on the anniversary date of hire and once a year thereafter through the 14th year of service to the Credit Union.
>
> After 15 years through 19 years - $200.00
>
> After 20 years through 25 years - $300.00
>
> After 25 years and above - $400.00

Authorized leaves of absence shall not be deducted from an employee's length of service for purposes of this Article provided the employee does not engage in other employment during the authorized leave of absence.

An employee's longevity status will not be lost as a result of an interruption in service caused by a layoff.

**ARTICLE XXVII**         PART - TIME EMPLOYEES

For the purposes of this agreement, a part-time employee is defined as one who is scheduled for 25 hours a week or less.

No benefits specified in this agreement, other than pro-rata holidays, birthday holiday and vacation benefits shall accrue to part-time employees.  Part-time employees shall receive jury and bereavement benefits but only when such absences occur during the employee's regularly scheduled work day.

**ARTICLE XXVIII**      **TUITION REIMBURSEMENT**

The employer will pay up to 50% of the cost of all tuition fees and books per year (up to $2,000 per employee). There will be a cap of total tuition reimbursement for the bargaining unit of $5,000 per year. This cap may be raised or lowered by the board from year to year but will not be below $5,000.

When the employer requires that a course or courses be taken by members of the bargaining unit, the employer will pay all tuition expenses in advance.

**ARTICLE XXIX**      **SERVICE LETTER**

If requested, an employee of the Credit Union leaving the Credit Union's service shall be given a letter stating the term of service and the type of service performed at the Credit Union.

17

**ARTICLE XXX**          **LENGTH OF CONTRACT**

This agreement shall expire on December 31, 2002 after its acceptance and signing of both parties.

For the UNION:                    For the BOSTON GLOBE EMPLOYEES
                                  CREDIT UNION:


Walter Allen, Jr.                 J. Brendan Hall
Business Manager                  Member, Board of Director
OPEIU, Local 6                    Boston Globe Employees Credit Union


Ronda Tanguay                     Marion Doucette
Business Agent                    Manger/CEO
OPEIU, Local 6                    Boston Globe Employees Credit Union


Paula O'Donnell                   William Cleary
Shop Steward                      Member, Board of Directors
Boston Globe Employees            Boston Globe Employees Credit Union
Credit Union

18

# Exhibit 2

# COLLECTIVE BARGAINING AGREEMENT
between the

# BOSTON GLOBE EMPLOYEES CREDIT UNION
and the

# OFFICE AND PROFESSIONAL EMPLOYEES
# INTERNATIONAL UNION, LOCAL 6, AFL-CIO

# JANUARY 1, 2003 THROUGH DECEMBER 31, 2005

# OFFICE and PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, LOCAL 6

One Billings Road, Suite 200
North Quincy, MA 02171

617-984-0006
1-800-882-1462

opeiulocal6@aol.com

# TABLE OF CONTENTS

Anti-Discrimination .................................................... pg. 15
Applications ............................................................... pg. 11
Arbitration ................................................................. pg. 14
Bereavement Leave .................................................... pg. 7
Coverage and Employment .......................................... pg. 1
Cross Training and Fill-Ins ........................................ pg. 11
Discharge and Discipline Action ................................. pg. 12
Grievances ................................................................ pg. 11
Holidays .................................................................... pg. 4
Insurance .................................................................. pg. 5
Jury Duty .................................................................. pg. 5
Leaves of Absences .................................................... pg. 8
Length of Contract .................................................... pg. 18
Longevity .................................................................. pg. 15
Management Rights .................................................... pg. 3
New Job Catergories .................................................. pg. 9
No Strike/Lockout .................................................... pg. 15
Overtime ................................................................... pg. 3
Paid Sick Leave ......................................................... pg. 7
Parental Leave of Absence ......................................... pg. 8
Part-Time Employees ................................................. pg. 16
Payroll Deductions .................................................... pg. 4
Personnel Files .......................................................... pg. 15
Posting (of vacant positions) ...................................... pg. 10
Promotions/Transfers ................................................ pg. 9
Recognition Clause .................................................... pg. 1
Retirement Plan ........................................................ pg. 15
Seniority ................................................................... pg. 9
Service Letter ............................................................ pg. 17
Temporary Vacancies ................................................. pg. 9
Tuition Reimbursement .............................................. pg. 16
Vacation ................................................................... pg. 5
Wages ....................................................................... pg. 2
Workplace Relations Committee .................................. pg. 17
Work Week ............................................................... pg. 2

## ARTICLE I     RECOGNITION  CLAUSE

The Employer recognizes the OPEIU Local 6 AFL-CIO as the sole and exclusive Collective Bargaining Agent for all its full-time and regular part-time office clerical employees as listed in the Certification of Representation from the National Labor Relations Board.

The Union recognizes that the Employer is subject to the Massachusetts State Statutes and General Laws relating to financial institutions and credit unions as a state-chartered organization, and being insured by the National Credit Share Insurance Fund and Massachusetts Credit Union Share Insurance Corporation, subject to the regulations of the Commonwealth of Massachusetts Office of Commissioner of Banks both as amended or may be amended.  Therefore, no provision in this agreement shall prevent the management from carrying out their responsibilities under the regulations promulgated by the aforementioned regulatory agencies.

Successors and Assigns
Should the Employer sell, transfer, or assign its right, title, or interests or transfer by receivership or bankruptcy, its interest or ownership in any form or manner to a successor employer, the Employer will include in the transfer agreement a provision requiring the successor employer to recognize the Union and to be bound by the terms and conditions of this agreement and shall deliver a copy of this agreement to the successor employer.  In the event such a sale, transfer, or assignment occurs, the Employer shall also deliver to the Union a copy of that portion of the sale, transfer or assignment agreement that includes the provision that the successor employer recognize the Union and that it agrees to be bound by the terms and conditions of this agreement.

## ARTICLE II     COVERAGE AND EMPLOYMENT

All employees presently in the bargaining unit and all probationary employees upon completion of their probationary periods shall become and remain members of the Union as a condition precedent to continued employment with the Credit Union and the Union agrees to receive into its membership all such employees who may be eligible therefore according to the laws of the Union.

All new employees hired to fill positions covered by the Bargaining Unit shall be probationary employees for the first 90 calendar days.  The Credit Union may, during such 90 days, in its

discretion, dismiss, lay off or transfer such employees whether with or without cause and no grievance shall be filed or claimed on behalf of such employees by the Union or on account of any action of the Credit Union during said 90 calendar days. However, all provisions of this Agreement, except where the contrary is indicated herein, shall apply to the probationary employees. Nothing herein, however, shall affect the termination of employment for just cause.

**ARTICLE III**          **WORK WEEK**

Employees current hours shall continue to be observed. The regular work week of 37.5 hours, shall consist of not more than five (5) days, of not more than 7.5 hours per day. Employees with regularly scheduled work days and hours will be given two weeks notice of any changes in schedule.

A.) Breaks:

　　1.) Part-time employees who work at least four (4) hours per day, but less than six (6) hours, shall receive a twenty (20) minute paid break, to be taken at the discretion of the immediate manager, based on the operational needs of the Credit Union. Part-time employees who work at least six (6) hours per day receive a one-half (1/2) hour paid break.

　　2.) Full-time employees shall receive two (2) fifteen (15) minute paid breaks; one (1) in the morning, one (1) in the afternoon. A thirty (30) minute unpaid break shall be given for lunch; however, one-hour lunch breaks may be required, combining the two (2) fifteen (15) minute paid breaks together with the one-half (1/2) hour unpaid break lunch period, at the discretion of the immediate manager, based on the operational needs of the Credit Union.

**ARTICLE IV**          **WAGES**

A.    All employees covered by this agreement shall receive a 2% increase for each year of this agreement.

B.    Base pay for new hires:

|  |  |
|---|---|
| Systems Manager: | $600/wk |
| Bookkeeper: | $575/wk |
| Sr. Loan Officer: | $525/wk |
| Loan Officer: | $385/wk |
| Head Teller: | $425/wk |

2

| | |
|---|---|
| Operations Clerk | $400/wk |
| Member Rep: | $325/wk |
| Asst. Head Teller: | $375/wk |
| Full-time Teller: | $350/wk |
| Exper. P/T Teller: | $8.50/hr. |
| In-exp. P/T Teller: | $8.25/hr. |

C.    Merit raises will be allowed, with the approval of management, on an individual basis.

**ARTICLE V**        **OVERTIME**

Pay for work in excess of 7.5 hours per day or 37.5 hours per week, scheduled Monday through Saturday, will be paid at the rate of time and one-half of the employee's straight time rate. Pay for Holidays and Sundays will be paid at the rate of double-time.

Mandatory training sessions scheduled outside of the normal 7.5 hour work day or 37.5 hour work week shall be compensated at straight time, for all hours actually worked.

Day tellers asked to fill in for night tellers will be paid 3 hours at time and one half (1 ½) for one hour worked. When those tellers are required to work the following business day they may come in one half hour later than they would normally.

**ARTICLE VI**        **MANAGEMENT RIGHTS**

All management rights, powers, authority and functions, whether heretofore or hereafter exercised, and regardless of frequency or infrequency of their exercise, shall remain vested exclusively in the Credit Union, and the Credit Union shall have the sole and exclusive right to manage its business in every respect and to take any other action which the Credit Union deems desirable to the conduct of its business.

It is the intention of Credit Union and the Union that the management rights, powers, authority and functions referred to herein shall remain exclusively vested in the Credit Union except insofar as specifically forbidden or abridged by an express provision of this Agreement.

All disciplinary action undertaken by Management against a member of the Bargaining Unit shall be for just cause and will be conducted in private and in such manner as to create respect for

3

authority and preserve individual dignity. It is the responsibility of Management to inform individuals directly and in private of any alleged failure to perform their work properly so that the necessary changes and/or corrections can be made as speedily as possible.

Employees, at their request, may have a Union Representative during the interview, conference or hearing which may reasonably be expected to result in disciplinary action.

**ARTICLE VII**      **PAYROLL DEDUCTIONS**

The Credit Union agrees to make, at the request of the Union in writing, deductions of regular monthly Union dues from the employees who are members of the Union and who have submitted written authorizations to the Credit Union to make such deductions. The amount of such monthly Union dues and assessments is to be specified by the Union in writing to the Credit Union and such amounts shall be deducted from the earnings, if any, of each employee who shall have worked during the week when the deductions is to be made. Such deductions shall be made from the employee's earnings in each of the first four (4) payroll weeks each month. The deduction so made will be transmitted by the Credit Union to the Union. The Credit Union will make the voluntary deductions for VOTE (voice of the electorate) when so authorized.

A 401K Plan to be implemented by Credit Union management by November 1, 2000.

**ARTICLE VIII**      **HOLIDAYS**

Regular employees have the following nine (9) holidays, plus their birthday.

| | |
|---|---|
| New Year's Day | Martin Luther King Day |
| President's Day | Memorial Day |
| Independence Day | Labor Day |
| Columbus Day | Thanksgiving |
| Christmas | |

Unused holiday time must be used within an eight (8) week time-frame, seniority prevailing, allowing only one employee per department at a time. Situational circumstances to be allowed at the discretion of the immediate manager, based on the operational needs of the Credit Union. Requests will not be unreasonably denied.

Personal day (your birthday) must be used within one calendar year of your actual birthday.

**ARTICLE  IX**    **VACATION**

Vacation for employees is based on service from the date of hire determined at December 31st of each year.

When a part-time employee is hired to a full-time position, all prior part-time service, on a pro-rata basis, shall be counted towards vacation provided there is not a break in service with the Credit Union.

| | |
|---|---|
| 0-3 months | 0 weeks |
| 3 months - 1 year | 1 week |
| 1 year - 7 years | 3 weeks |
| 8 years - 17 years | 4 weeks |
| 18 years or more | 5 weeks |

Vacation selections, where possible shall be made on the basis of seniority.

One week of accrued vacation time will be allowed to be carried over to the following year and must be used no later than the last week in April of the year into which it was carried over.

Situational circumstances to be allowed at the discretion of the immediate manager, based on the operational needs of the Credit Union.  Requests will not be unreasonably denied.

**ARTICLE X**    **JURY DUTY**

An employee covered by this Agreement who is required to perform Jury Duty during a regular work day will be granted leave of absence with pay, less the amount received for Jury Duty.  An employee serving on jury duty will continue to receive their salary and shall forward any per diem allowance to the Credit Union. The Credit Union shall be notified promptly of an employee's receipt of a Summons of Jury Service.

**ARTICLE XI**    **INSURANCE**

Full-time employees will receive the following insurance that will be 100% paid by the employer, except as noted below:

A.   Credit Union League Group Insurance and Benefits
     Program or other family or individual coverage as
     applicable.

B.   Life Insurance, AD&D, Vision and Dental.

C.   Short-Term Disability Insurance

D.   Long-Term Disability Insurance

Employees, upon signing of this contract, shall receive a
detailed description of all insurance coverage and yearly
therafter.

1.   Effective January 1, 2003 the following caps for
     insurance costs shall be in place for up to seven
     employees.  Any overage amounts in costs relating
     to the coverage plans shall be shared by the seven
     (7) employees enrolled in said plan.

     Year 1:  $5,750.00 per month
     Year 2:  $6,000.00 per month
     Year 3:  $6,250.00 per month

2.   In the event the Employer shall hire any new
     employees, bringing the total number of employees
     to eight (8) or more, and those employees sign
     under BGECU coverage plan, the caps shall be
     increased as follows:

     Family Insurance Plan:  add $900.00 per employee
     Single Insurance Plan:   add $500.00 per employee

3.   In the event that employees shall at any time change
     the status of their coverage from Family to Single,
     or vice versa, adjustments in the cap shall be made
     in accordance with #2 above.

If an employee has medical coverage from a source other than the
BGECU, he or she may decline the BGECU medical insurance and
receive a $1,000.00 cash payment on or before January 1 of each
year, or after six (6) months from date of hire.  To be eligible for
such payment the employee must:

1.   Complete and sign a waiver of benefit form

6

2. Provide documentation of coverage under another health plan

3. Submit the waiver form and documentation to the Credit Union C.E.O. or his/her designee on or before the anniversary date of the insurance. You will then be ineligible to sign up for insurance coverage until the following year.

## ARTICLE XII    PAID SICK LEAVE

Full-time employees shall not forfeit any part of his or her pay because of an absence on account of an illness for up to fifteen (15) working days in any calendar year, or up to an additional fifteen (15) working days in any calendar year during the period of major illness. Accordingly, in cases of major illnesses, an employee will be entitled to up to (30) days sick leave consisting of a fifteen (15) day major illness allowance plus any unused portion of his/her fifteen (15) days sick leave.

In order to qualify for a major illness allowance, an employee must be absent for five (5) working days or more and produce certification from a hospital or medical doctor that the illness caused the employee to be absent for this period.

A full-time employee may use a total of three (3) sick days, from their accrued days, as personal days (example: doctor appointment, sick child, snow/hazardous weather).

A part-time employee with a minimum of one (1) year of employment will be eligible for three (3) days of sick leave.

## ARTICLE XIII    BEREAVEMENT LEAVE

In the event an employee's spouse, mother, father, step-parent or step-child, son, daughter, brother, sister, step-brother/sister, grandmother, grandfather, grandchild, mother-in-law, father-in-law, sister-in-law, brother-in-law, daughter-in-law, or son-in-law dies, such employee shall be permitted to absent himself/herself from work without loss of pay on any of his/her regularly scheduled working days following within four (4) consecutive days, one of which shall be the day of the funeral. This shall not apply when the funeral occurs at a time when the employee is on vacation or leave of absence.

If the deceased person is not a member of the immediate family as defined above, the employee may request a vacation day or unpaid day off to attend the funeral of the relative.

One day's absence, with pay, is allowable for the death of an employee's aunt or uncle.

**ARTICLE XIV**    **PARENTAL LEAVE OF ABSENCE**

A.    Parental leave shall be available upon reasonable notice to all employees who become parents of newborn or newly-adopted children.

B.    A female employee on the regular payroll shall be entitled to a maternity leave not to exceed six (6) months. During the leave the employee may first use the unused portion of her sick leave (30 working days maximum), and then may schedule remaining earned vacation days. This will end the paid portion of the leave and the remaining time shall be unpaid leave.

C.    A male employee shall be entitled to paternity leave not to exceed ten (10) working days. A male employee may utilize sick days and, if no accrued sick time is available, vacation time at the employee's request.

D.    An employee may elect to substitute paid vacation or paid sick leave as otherwise provided for in this Agreement, as part or all of the Parental Leave period.

E.    The Employer agrees to maintain all life and health insurance coverage during parental leave subject to any regular participation required by the Employee.

F.    An employee returning from parental leave shall be restored to his/her former position at the salary he/she would have received had employment been continuous.

**ARTICLE XV**    **LEAVES OF ABSENCES**

<u>Unpaid Leaves of Absence</u> - Unpaid leaves of absence for good and sufficient reason in the opinion of the Employer shall be granted upon written request and shall not be unreasonably denied. Such leaves shall not be construed to be a termination of employment so long as they last no more than 6 months and the employee does not become employed by another employer. The

8

employer will not be obligated to maintain benefits coverage during leaves covered by this article, but may do so at its discretion considering each case.

| | |
|---|---|
| **ARTICLE XVI** | **SENIORITY** |

The Boston Globe Employees Credit Union seniority begins from the date of hire as a regular employee in the bargaining unit. When a person who has worked as a part-time employee is hired as a regular employee, credit will be given for the hours worked as a part-time employee towards seniority.

| | |
|---|---|
| **ARTICLE XVII** | **PROMOTION/TRANSFERS** |

Promotion/Transfer - The Employer agrees to inform the Union of any major changes in employment procedures. Also, in the case of a permanent or semi-permanent change in an employee's basic function and responsibility, the Employer agrees to give sufficient notice to the Union.

The Credit Union is to promote from within whenever practicable. When seeking to fill vacancies in existing staff positions falling under the provisions of this agreement, the Employer shall first consider employees. However, applicants who are from outside the bargaining unit may also be selected based on the needs of the Credit Union as determined by the Employer, job requirements and applicant qualifications.

| | |
|---|---|
| **ARTICLE XVIII** | **TEMPORARY VACANCIES** |

Temporary vacancies shall be filled by the Office Manager or his/her designee in his/her discretion. A temporary vacancy shall continue until such time as the Board of Directors shall declare permanent vacancy.

At the discretion of the Office Manager or his/her designee, temporary employees may be hired during temporary vacancies or peak periods for work up to and including six months or longer by mutual agreement. At the expiration of said six months, such employees must either be terminated or, if continued in the employ of the Credit Union, must become members of the Union.

**A.    NEW JOB CATEGORIES**

The Union shall be notified thirty (30) days prior to the creation of job categories or positions not otherwise listed under the

9

~~Recognition clause or elsewhere in the~~ collective bargaining agreement. This thirty (30) day notice shall be observed unless otherwise agreed to in writing by the Union. Said notice shall include a posting in the form as set forth in this Agreement. The Union and the Employer shall then negotiate the appropriate job description and scale. The new job shall be posted according to section B posting. If agreement is not reached within the thirty (30) day period, either party may refer the unresolved issues to arbitration.

**B.    POSTING**

At least fourteen (14) calendar days prior to filling a vacancy the Employer shall send notices to the Union offices of all openings that occur within the bargaining unit, whether existing or newly created.

The Union shall post all notices of job openings promptly. If the Employer does not deliver the postings to the Union by noon, the posting will be dated the next calendar day.

If the Union objects to such posting, it may seek a meeting with the Employer to address its inquiries. Such meeting must be held within five (5) working days of said inquiry. The posting procedure will not be delayed; however, the posting will be revised to include a notice that the Union is objecting to the posting. Any changes in the posting that result from such inquiry will serve to restart the fourteen (14) day posting period. If the issue is unresolved, the matter may be taken to arbitration.

Notices shall be filled out by the Employer per the following sample posting form:

**POSTING FORM**

Date of Posting:                          Date to be taken down:

Dept:                                     Number of jobs to be filled:

Department Head:                          Job Title:

Shift:

Qualification:
Basic Function and Responsibilities:

10

If the posted vacancy has not been filled within twenty (20) days after the posting has been taken down, the vacancy may not be filled unless it is re-posted. If the Employer does not intend to fill the vacancy the Employer will notify the Union as to the reason for not filling the vacancy.

### C.    APPLICATIONS

All bargaining unit employees will have the opportunity to submit an application to the CEO expressing interest in a posted position. Such application will include the name of the employee, current department, position applied for, resume and date of application. Only those employees, from within the bargaining unit, who have filed an application for a specific job posting will be considered for that posting. A list of such employees will be sent to the Union. At the end of the fourteen (14) day posting period, all Credit Union applicants will be interviewed. Personnel not receiving position will be notified in writing.

### D.    CROSS-TRAINING/FILL-INS

In order to provide increased efficiency for the Credit Union and its customers union personnel will be cross trained (example: a teller may be trained as a customer representative).

Should an employee be required to fill-in for a higher level position and actually performs the work of the employee replaced for a full day or more, said employee shall receive the higher wage rate for all hours worked.

### ARTICLE XIX    GRIEVANCES

In the case of any different between the Credit Union and any employee within the bargaining unit out of the terms of this Agreement, the grievance procedure shall be as follows:

1.    The employee and/or the Shop Steward, within ten (10) working days after the Grievant or the Union has knowledge of it, whichever occurs first, will give written notice of the grievance to the Office Manager or his/her designee. The Office Manager or designee, within five (5) working days, will respond and schedule a meeting to be held no later than ten (10) working days from the date of the response for the purpose of trying to resolve the grievance. The Office Manager or designee will issue his/her decision within three (3) working days of the

~~meeting. If the employee disputes~~ the decision of the Office Manager or designee fails to respond within the aforesaid time limit, then the grievance will be processed in the following manner:

2.      Within five (5) working days of the decision of the Office Manager or designee, the Business Agent of the Union shall submit the grievance, in writing to the Office Manager or designee. The Office Manager or designee shall schedule or hold a meeting with the Business Agent of the Union and the Grievant for the purpose of resolving the grievance. The Office Manager or designee shall issue a written decision within five (5) working days of said meeting. If there is no settlement or if the Office Manager or designee fails to issue his/her decision within the aforesaid time limit, the Business Agent shall forward the written grievance to the President of the Credit Union with five (5) working days of the written response.

3.      Within ten (10) working days of the receipt of said notification, the President and Treasurer of the Credit Union shall schedule and hold a meeting with Business Agent of the Union for the purpose of trying to resolve the grievance. The President shall issue a decision within ten (10) working days of the meeting. If this matter is not settled or if the President fails to issue a decision within the agreed time limit, the Business Agent of the Union shall submit the grievance to arbitration, as herein provided, within ten (10) working days of the President's decision or failure to issue his/her response. Both parties agree fully to cooperate in an effort to resolve any grievance arising out of this Agreement.

Where there is no specific provisions set forth in this agreement, expectations to the above time limits shall be only upon the mutual agreement of the Parties. In the absence of any such mutual agreement to extend the time limits, the failure of the Union to act within the above time limits shall constitute a waiver of that particular grievance and it shall be processed no further. Any such constructive waiver or acceptance shall be applicable to that particular grievance only and shall not serve as a precedent nor a prejudice to the position of either the Union or the Credit Union in any future grievance.

**ARTICLE XX**          **DISCHARGE and DISCIPLINE ACTION**

12

The Union and Employer agree that discipline, including discharge, must be administered fairly and consistently for just cause. Discipline will typically be progressive. The offense facts and circumstances will determine the level of discipline to be applied regardless of prior discipline, if any. There shall be the following forms of discipline:

A.  Verbal Warnings, which constitute the lease severe form of discipline, consist of verbal reprimands to the employee by the department head or manager. A written record of a verbal warning may be made.

B.  Written Warnings may be issued regarding an aspect of an employee's performance which could lead to suspension or dismissal, if uncorrected.

A minimum of two written warnings will be issued before an employee may be dismissed except in the case of gross neglect of duty or serious misconduct.

An employee will be allowed a reasonable amount of time to correct the behavior or conduct which led to the first written warning. Reasonable amount of time shall be determined, by the Credit Union management and Union representative, depending upon the severity of the behavior, conduct, or infraction. If the same behavior or conduct continues after that period of time, a second written warning may be issued.

Any written warning older than two (2) years shall cease to exist for purposes of progressive discipline. However, those warnings may be considered by the Employer in determining the degree of discipline to issue in future cases involving probation, suspension, or discharging action.

The Union may request that a written warning be reviewed by the Employer for possible removal after one (1) year if the employee has made substantial progress toward correcting the behavior or conduct which resulted in a written warning.

C.  Suspension and/or disciplinary probation decisions will be made by the C.E.O. or President of the Board. The Union shall be notified when a final decision to suspend or place on probation is made, and the same rights of representation

13

and appeal will apply as are applied to written warnings or dismissals.

If, in conference, a suspension without pay is found by mutual agreement not to have been based on just cause, the Employer will restore the employee to his/her position with full pay and all benefits for the period from the date of suspension to date of reinstatement, with service record unimpaired. A lesser form of discipline may be invoked.

**ARTICLE XXI**          **ARBITRATION**

If any grievance is submitted to arbitration under the provisions of Article XIX, the arbitration procedure shall be as follows:

- The decision to resort to arbitration must be in writing and given to the other party as provided in Step 3 of the Grievance Procedure.

- Within fifteen (15) working days from the original date of the grievance submission, the Credit Union and the Union shall designate their arbitrators. The two arbitrators so chosen shall, within (15) working days from the original date of the submission of the grievance to arbitration, select a third arbitrator.

- In the event that the arbitrators selected by the Credit Union and the Union should be unable to agree upon a third arbitrator, then the Parties may contact the American Arbitration Association for a list of five (5) arbitrators. Within ten (10) working days of the receipt of the list, the two arbitrators selected by the Parties shall meet and alternately strike the name of an arbitrator, the last name on the list, subject to his/her acceptance, shall serve as the third arbitrator.

- The three arbitrators shall then endeavor to meet daily for the purpose of considering said grievance and the decision of the majority of said arbitrators, submitted in writing to the Credit Union and the Union, shall be final and binding upon both Parties.

- Each Party shall bear the expenses of its arbitrator and the expense of the third arbitrator and any other

14

expenses incurred in the conduct of the arbitration shall be borne equally by the Parties hereto.

**ARTICLE XXII**          **PERSONNEL FILES**

Personnel files are confidential files. The employee is entitled to see his/her own file at reasonable times, excluding pre-employment material, upon written request. The employee may show his/her file to anyone upon written authorization to the C.E.O. The C.E.O. will provide the employee with a copy of any material that has been placed in his/her personnel file pertaining to his/her job performance that may result in disciplinary action. The employee shall be given the opportunity to respond in writing to such material, and such response shall be filed in his/her personnel file.

Every employee is entitled to see and reproduce his/her own personnel file as herein described at any reasonable time. The file shall remain in the custody of the C.E.O. at all times.

**ARTICLE XXIII**         **NO STRIKE - NO LOCKOUT**

The Union agrees that there will be no strikes during the term of this Agreement and the Credit Union agrees there will be no lockouts during said period.

**ARTICLE XXIV**          **RETIREMENT PLAN**

The Employer will continue the present retirement plan. The Employer will continue to contribute 15% of the base salary for each full time bargaining unit member.

**ARTICLE XXV**           **ANTI-DISCRIMINATION**

The Employer agrees that it will not discriminate against an employee or prospective employee by reason of race, color, creed, national origin, political or religious views, union position, sex, sexual orientation, age, physical or mental disability, marital status, physical appearance apart from dress beyond bonafide occupational requirements of financial institutions, parenthood, or child bearing capacity.

**ARTICLE XXVI**          **LONGEVITY**

15

Each Union employee shall receive longevity compensation, minus applicable state and federal taxes as follows:

> Upon completion of ten years continuous service, a check in the amount of $150.00 shall be given to those employees once a year on the anniversary date of hire and once a year thereafter through the 14th year of service to the Credit Union.
>
> After 15 years through 19 years - $200.00
>
> After 20 years through 25 years - $300.00
>
> After 25 years and above - $400.00

Authorized leaves of absence shall not be deducted from an employee's length of service for purposes of this Article provided the employee does not engage in other employment during the authorized leave of absence.

An employee's longevity status will not be lost as a result of an interruption in service caused by a layoff.

**ARTICLE XXVII**          **PART - TIME EMPLOYEES**

For the purposes of this agreement, a part-time employee is defined as one who is scheduled for 25 hours a week or less.

No benefits specified in this agreement, other than pro-rata holidays, birthday holiday and vacation benefits shall accrue to part-time employees. Part-time employees shall receive jury and bereavement benefits but only when such absences occur during the employee's regularly scheduled work day.

**ARTICLE XXVIII**          **TUITION REIMBURSEMENT**

The employer will pay up to 50% of the cost of all tuition fees and books per year (up to $2,000 per employee). There will be a cap of total tuition reimbursement for the bargaining unit of $5,000 per year. This cap may be raised or lowered by the board from year to year but will not be below $5,000.

When the employer requires that a course or courses be taken by members of the bargaining unit, the employer will pay all tuition expenses in advance.

**ARTICLE XXIX**

**SERVICE LETTER**

If requested, an employee of the Credit Union leaving the Credit Union's service shall be given a letter stating the term of service and the type of service performed at the Credit Union.

**ARTICLE XXX**

**WORKPLACE RELATIONS COMMITTEE**

It is agreed that in order to provide a means for continuous communication and to promote a climate of harmony and mutual responsibility, there should be a Workplace Relations Committee consisting of two individuals selected by the union and two individuals selected by management.

The Committee shall meet quarterly and either side has the option to propose additional meetings if mutually agreed. This Committee will help establish better communication and the review of other areas of concern.

Current areas of concern to be reviewed but not limited to are:

- Grievance Language
- Seniority Language
- Discipline Language
- Promotion/transfer Language

17

**ARTICLE XXXI**          **LENGTH OF CONTRACT**

This agreement shall expire on December 31, 2005 after its acceptance and signing of both parties.

**For the UNION:**                    **For the BOSTON GLOBE EMPLOYEES CREDIT UNION:**

_Mary Mahoney_

Mary Mahoney
Business Manager
OPEIU, Local 6

_Marion Doucette_

Marion Doucette
Manager
Boston Globe Employees Credit Union

_Lisa M. Lemieux_

Lisa M. Lemieux
Business Agent
OPEIU, Local 6

_J. Brendan Hall_

J. Brendan Hall
Member, Board of Directors
Boston Globe Employees Credit Union

_Kay Toland_

Kay Toland
Committee Member
Boston Globe Employees
Credit Union

_Marylou Meighan_

Marylou Meighan
Member, Board of Directors
Boston Globe Employees Credit Union

_John J. Quinn_

John J. Quinn
Chairman, Board of Directors
Boston Globe Employees Credit Union

# EXHIBIT 3



**Office & Professional Employees**
**International Union, AFL-CIO, Local 6**
One Billings Road, Suite 200 • Quincy, MA 02171 • 617-984-0006 • 1-800-882-1462 • FAX 617-984-5882

**Mary Mahoney**
President

**AFFILIATIONS**
American Federation of Labor and Congress of Industrial Organizations
Massachusetts State Labor Council (AFL-CIO)



February 25, 2004

Boston Globe Employees Credit Union
Ms. Marion Doucette
P. O. Box 2378
135 Morrissey Blvd.
Dorchester,  MA      02107

RE: Step I Grievance Hearing Request for Paula O'Donnell – Termination

Ms. Marion Doucette;

Enclosed please find a grievance for the above named grievant.  Please contact me at your
earliest convenience so we can schedule a Step I hearing at a mutually agreed upon time.

Thank you for your anticipated cooperation.


Sincerely,


Lisa M. Lemieux
Business Agent
OPEIU Local 6

cc:  Paula O'Donnell
      File
      Mary Mahoney



opeiu:6
afl-cio

# GRIEVANCE FORM
## OPEIU Local 6

*I hereby elect to process the grievance described below in accordance with the Collective Bargaining Agreement between OPEIU Local 6 and the Employer.*

**Aggrieved employee:**

**Name:** Paula O'Donnell                    **Position/Title:** Systems Manager

**Employer Name:** Boston Globe Employees Credit Union    **Location:** 135 Morrissey Blvd.
                                                                      Boston, MA 02125

**Immed. Mgr's Name:** Marion Doucette        **Position/Title:** Manager

**Describe grievance, including date of the incident and Article(s) of Agreement alleged to have been violated:**

On or about February 17, 2004, the grievant was unjustly terminated. The union contends this violates Articles I, VI, XV, XX and any other relevant articles of the collective bargaining agreement.

**Describe remedy sought:** Reinstatement and to be made whole.

**Aggrieved employee:** Paula O'Donnell        **Date:** February 25, 2004

**Home Address:** 18 Hillview Lane              **Home #:** 508-746-8506
                  Plymouth, MA 02360
**Union Official:** Lisa M. Lemieux             **Date:** February 25, 2004

STEP 1:      Date Submitted _____

Disposition: _____

_____

_____

_____

_____

_____

_____

                                              (Manager's Signature)      (Date)

STEP 2:      Date Submitted _____

Disposition: _____

_____

_____

_____

_____

_____

                                              (Manager's Signature)      (Date)

STEP 3:      Date Submitted _____

Disposition: _____

_____

_____

_____

_____

_____

                                              (Manager's Signature)      (Date)

**EXHIBIT 4**



**Office & Professional Employees
International Union, AFL-CIO, Local 6**
One Billings Road, Suite 200 • Quincy, MA 02171 • 617-984-0006 • 1-800-882-1462 • FAX 617-984-5882

Mary Mahoney
President

**AFFILIATIONS**
American Federation of Labor and Congress of Industrial Organizations
Massachusetts State Labor Council (AFL-CIO)



August 24, 2004

Boston Globe Employees Credit Union
Peter Vinci, Manager/ CEO
P. O. Box 2378
135 Morrissey Blvd.
Dorchester, MA 02107

**RE: Paula O'Donnel**

Dear Mr. Vinci;

    As per your request, the Union has put our request in writing along with a summary of events. The Union is hereby requesting that Paula O'Donnells' employment be reinstated. In order to avoid mutual arbitration costs and/or civil charges, the Union stands by ready to negotiate the terms of Paula's reinstatement.

    February 17, 2004 termination

    February 25, 2004 grievance submitted

    March 19, 2004 grievance hearing

    March 24, 2004 letter from Brendan with questions, I called with response

    March 25, 2004 letter from Brendan denying grievance

    March 29, 2004 Brendan & I (B.A., Lisa M. Lemieux) spoke re: next step. We verbally agreed to keep grievance in abeyance while the Union researched the merits of the grievance further to determine if the Union would be moving forward.

    During this time of abeyance the Union gathered more information from the Globe Nurse, had discussions with Paula and her attorney, Marion Doucette retired and new CEO Peter Vinci came on board at the BGECU. Paula through out this entire period has remained under doctors care and has worked diligently to get improve her health and has had much improvement. Both Paula and her doctor feel Paula is able to come back to work.

    August 11, 2004 termination grievance reconvened with Mr. Vinci, CEO, Kay Toland, Steward, and Lisa M. Lemieux, B.A. The Union explained that we were making a last

Case 1:05-cv-11257-NG   Document 31-5   Filed 01/19/2007   Page 3 of 3

request from the company to reinstate Paula back for the reasons listed below in order to avoid arbitration costs and/or civil charges.

➢ Paula's health has improved and is able to come back to work

➢ The Union believes that one of the root causes for Paula's absences was on the job stress from a relationship between Paula and Marion Doucette, who is no longer employed at the BGECU,

➢ New CEO and Manager, Peter Vinci had identified the need for an experienced Systems Manager.

➢ Mr. Vinci also identified that it was clear to him that Paula knew her job and did it well. As the books were kept balanced up until Paula left and that he would be willing to work with her knowing she could do the job if the Board agreed.

➢ Paula is a 30 year employee, that should mean something to the BGECU, an employee like Paula should not loose her job and or earned benefits because she had an illness.

Please contact me at 671-984-0006 to see if we can work this out.

Sincerely,

Lisa M. Lemieux
Business Agent

cc: Paula O'donnel
    Kay Toland
    File

opeiu:6
afl-cio

# EXHIBIT 5

March 25, 2004


Lisa M. Lemieux, BA
Office & Professional Employees
International Union, AFL-CIO, Local 6
One Billings Road, Suite 200
Quincy, MA 021711


Dear Lisa,


We have decided to let our decision concerning Paula stand as is.




Sincerely,



J. Brendan Hall

**EXHIBIT 6**

Case 1:05-cv-11257-NG    Document 31-7    Filed 01/19/2007    Page 2 of 2



**Office & Professional Employees
International Union, AFL-CIO, Local 6**

One Billings Road, Suite 200 • Quincy, MA 02171 • 617-984-0006 • 1-800-882-1462 • FAX 617-984-5882

Mary Mahoney
President

**AFFILIATIONS**
American Federation of Labor and Congress of Industrial Organizations
Massachusetts State Labor Council (AFL-CIO)



September 7, 2004

Peter M. Vinci, Manager/CEO
Board of Directors
Boston Globe Employees Credit Union
P. O. Box 55819
Boston, MA 02205-5819

Dear Mr. Vinci,

RE:   Paula O'Donnell termination grievance

I am writing in response of your letter dated August 27, 2004. The Union is submitting the termination grievance of Paula O'Donnell to arbitration under the provisions of Article XIX of the collective bargaining agreement. The Union hereby designates Mary Mahoney as the Union Arbitrator.

Please have the Boston Globe Employee Credit Union's designated arbitrator contact Mary Mahoney to select a mutual third arbitrator. She can be reached at 617-684-0006.

Thank you for your attention to this matter.

Sincerely,

Lisa M. Lemieux
Business Agent

cc:   Paula O'Donnell
Mary Mahoney
Robert S. Manning, Esq.

opeiu:6
afl-cio

**EXHIBIT 7**



**Boston Globe
Employees
Credit Union**

September 13, 2004

Lisa M. Lemieux
Business Agent
Office of Professional Employees
International Union, AFL-CIO Local 6
One Billings Road, Suite 200
Quincy, Massachusetts 02171

Dear Ms. Lemieux,

I am in receipt of your letter dated September 7, 2004 whereas you have requested that the termination of Paula O'Donnell on February 17, 2004, the submission of said grievance dated February 25, 2004, and the denial of said grievance by the Board of Directors of the Boston Globe Employees Credit Union on March 25, 2004, that was forwarded to you and/or Local 6 in writing, under the signature of J. Brendan Hall be appealed to arbitration for consideration and merit.

This request was forwarded for review, and for the determination of the validity of this request, as it pertains to the provisions of Article XIX of the Collective Bargaining Agreement to the Credit Union's attorney.  I unfortunately regret to inform you that this request has been denied.  It is our interpretation of Article XIX that the request for arbitration concerning this grievance and/or the termination of Paula O'Donnell does not qualify for arbitration due to the tardiness of the request, more than (10) ten days after the denial of the grievance.  As it clearly states within the agreement under Article XIX:

**"Where there is no specific provisions set forth in this agreement, expectations to the above time limits shall be only upon the mutual agreement of the Parties.  In the absence of any such mutual agreement to extend the time limits, the failure of the Union to act within the above time limits shall constitute a waiver of that particular grievance and it shall be applicable to that particular grievance only and shall not serve as a precedent nor a prejudice to the position of either the Union of the Credit Union in any future grievance."**

Whereas there is no written mutual agreement of both parties to extend the time frame of the grievance, it is the Credit Union's position that such time limitations had expired at midnight on April 4, 2004, (10) ten days after denial of such grievance in writing by Mr. J. Brendan Hall on March 25, 2004, and that no further action is required at this time.

Respectfully,

Peter M. Vinci
Manager & CEO

P.O. Box 2378
Boston, MA 02107-2378

(617) 929-2741
FAX (617) 929-2386

**EXHIBIT 8**



**Office & Professional Employees
International Union, AFL-CIO, Local 6**
One Billings Road, Suite 200 • Quincy, MA 02171 • 617-984-0006 • 1-800-882-1462 • FAX 617-984-5882

Mary Mahoney
President

**AFFILIATIONS**
American Federation of Labor and Congress of Industrial Organizations
Massachusetts State Labor Council (AFL-CIO)



September 15, 2004

Board of Directors
Mr. Peter M. Vinci, Manager/CEO
Boston Globe Employees Credit Union
P.O. Box 55819
Boston, MA 02205-5819

    Re:    Paula O'Donnell – Discharge

Dear Mr. Vinci:

    I have spoken with our attorney about your September 13, 2004 letter in which you declined to participate in the arbitration procedure outlined in our collective bargaining agreement because, you claim, that there was "no written mutual agreement of both parties to extend the time frame of the grievance . . ."

    It is the Union's position that, in fact, both parties did agree to extend the time frames of the grievance procedure; Brendan Hall and I had agreed orally on March 29 to hold this matter in abeyance until we further investigated the merits of the grievance to determine if we would go forward to arbitration. On August 11, 2004, you and I met and you agreed to take a settlement offer we made back to the board of directors for consideration. When you informed me, by letter dated August 27, that the board of directors "would not entertain or reconsider Ms. O'Donnell's termination or job-reinstatement request," we timely filed for arbitration.

    It is our position that the Credit must designate its arbitrator, in accordance with Article XXI of the labor agreement, even if management is raising an issue over arbitrability. It is ultimately up to the arbitrator to determine that issue. In the meantime, as the labor agreement states: "Both parties agree fully to cooperate in an effort to resolve any grievance arising out of this Agreement." This includes the obligation to participate in the arbitration procedure.

    Therefore, if management refuses to designate its arbitrator, we will file a demand to arbitrate with the American Arbitration Association and take the position that management has forfeited its right to have a company-designated arbitrator participate in the hearing. In addition, we will consider filing an unfair labor practice against the Credit Union for refusing to participate in good faith in the grievance/arbitration procedure.

We would like to avoid those actions if necessary. So, I suggest that you at least inform us who the Credit Union arbitrator will be and that we let a third, neutral arbitrator determine the issue of arbitrability. Please speak to the Credit Union's labor counsel about this matter and let me know, promptly, what you intend to do. In addition, if it would be of assistance, your attorney could speak to our general counsel, Robert S. Manning, to go over this issue. He can be reached at our office.

Thank you for your cooperation and attention to this matter.

Sincerely yours,

Lisa M. Lemieux
Business Agent

cc:     Paula O'Donnell
        Robert S. Manning, Esq.

**EXHIBIT 9**

**PEABODY & ARNOLD** LLP
COUNSELLORS AT LAW

30 ROWES WHARF, BOSTON, MA 02110
[617] 951.2100 FAX [617] 951.2125

BOSTON, MA    PROVIDENCE, RI

HARVEY WEINER
[617] 951.2014
hweiner@peabodyarnold.com

September 21, 2004

Lisa M. Lemieux
Business Agent
Office & Professional Employees
International Union, AFL-CIO, Local 6
One Billings Road, Suite 200
Quincy, MA 02171

Re:    Paula O'Donnell v. Boston Globe Employees Credit Union

Dear Ms. Lemieux:

I have been asked to respond to your September 15, 2004 letter on behalf of the Boston Globe Employees Credit Union ("Credit Union"). While maintaining and specifically not waiving its position that the time for arbitration of this matter has expired and that the alleged claim is not arbitratable, the Credit Union hereby designated Maria Walsh as its arbitrator. She can be reached at (617) 228-0200. Once again, Brendan Hall has indicated that he did not agree with you orally or in any other manner on March 29, 2004 to "hold the matter in abeyance."

Sincerely yours,

Harvey Weiner

HW/jac
cc: Peter Vinci (personal and confidential)
    Robert S. Manning, Esquire
PABOS2:HWEINER:597755_1
193-90324

**EXHIBIT 10**



# Office & Professional Employees
## International Union, AFL-CIO, Local 6

One Billings Road, Suite 200 • Quincy, MA 02171 • 617-984-0006 • 1-800-882-1462 • FAX 617-984-5882

**Mary Mahoney**
President

**AFFILIATIONS**
American Federation of Labor and Congress of Industrial Organizations
Massachusetts State Labor Council (AFL-CIO)



## FAX TRANSMITTAL COVER SHEET
## CONFIDENTIAL

**TO:**  Scott Adams

**FAX NO.:**  617 742 8599

**FROM:** Robert S. Manning, General Counsel

**RE:**  Paula O'Donnell – Discharge

**DATE:**  6/6/05

**COMMENTS:**

Number of pages (including cover page)  2

The information contained in this communication is confidential, may constitute attorney-client communications or attorney work product, and is intended only for the use of the individual or entity addressed above. Unauthorized use, disclosure, dissemination, or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address through the U.S. Postal Service. Thank you.

# Office and Professional Employees International Union, AFL-CIO, Local 6

**OPEIU**

One Billings Road, Suite 200 • North Quincy, MA 02171 • 617-984-0006 • 800-882-1462
E-MAIL: opeiulocal6@aol.com • WEBSITE: www.opeiulocal6.org  FAX: 617-984-5882

**Mary Mahoney**
*President*
*Business Manager*

**AFFILIATIONS**
American Federation of Labor and Congress of Industrial Organizations • Massachusetts State Labor Council (AFL-CIO)

June 6, 2005

VIA FACSIMILE/MAIL

Scott Adams
Attorney at Law
92 State Street, 9th Floor
Boston, MA 02109

Re:    OPEIU Local 6 and Boston Globe Employees Credit Union
       Paula O'Donnell – Discharge

Dear Mr. Adams:

This letter will confirm our conversation today. As we have discussed, the Union has decided not to proceed to arbitration on Ms. O'Donnell's grievance. Our investigation and analysis of the matter has led us to believe that the grievance is not sufficiently meritorious to win at arbitration. Instead, the company complied with its obligations under Articles XV and XX of the collective-bargaining agreement. We are therefore withdrawing the case.

If you have any questions or comments, please do not hesitate to call me.

Very truly yours,

Robert S. Manning
General Counsel

**EXHIBIT 11**

**PEABODY & ARNOLD** LLP
COUNSELLORS AT LAW

30 ROWES WHARF, BOSTON, MA 02110
[617] 951.2100 FAX [617] 951.2125

BOSTON, MA    PROVIDENCE, RI

HARVEY WEINER
[617] 951.2014
hweiner@peabodyarnold.com

February 13, 2004

**VIA FACSIMILE AND REGULAR MAIL**
**(617) 742-8599**

Scott Adams
Attorney at Law
92 State Street, 9th Floor
Boston, MA 02109

   Re:  Paula O'Donnell/Boston Globe Employees Credit Union ("Credit Union")

Dear Mr. Adams:

   I have received your February 11, 2004 letter in response to my February 2, 2004 letter to you and have forwarded it to the Board of Directors of the Credit Union. In your letter, you state that your client will not return to work at the Credit Union on February 17, 2004. You also indicate that your "client is medically unable to return to work, and has been advised not to do so in view of the certainty of [alleged] continued harassment." As indicated to you earlier, such unsupported allegations from you are insufficient to justify a leave of absence without a doctor's report explaining your client's present medical condition and why that prevents her from working at the Credit Union at this time, all as indicated in my February 2, 2004 letter to you.

   Since you did not affirm by the end of business on Thursday, February 12, 2004 that your client intended to return to work on February 17, 2004, the Board hereby terminates your client's employment at the Credit Union for gross neglect of duty, as indicated in my February 2, 2004 letter to you.

             Very truly yours,

             Harvey Weiner

HW/jac
cc: Donna Boggs, Esquire
(via facsimile and regular mail)

# EXHIBIT 12

FORM EXEMPT UNDER 44 U.S.C 3512

FORM NLRB-508
(6-90)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST LABOR ORGANIZATIONS
OR ITS AGENTS**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 1-CB-10511 | / /  8/22/2005 |

**INSTRUCTIONS:** File an original together with four copies and a copy for each additional charged party named in item 1 with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT

| a. Name | b. Union Representative to contact |
|---|---|
| Local 6, Office and Professional Employees Union | Mary Mahoney |
| | President and Business Manager |

| c. Telephone No.<br>(617)984-0006<br>Fax No.<br>(617)984-5882 | d. Address *(Street, city, state, and ZIP code)* | |
|---|---|---|
| | 1 Billings Road | Suite 200 |
| | North Quincy | MA  02171 |

e. The above-named organization(s) or its agents has *(have)* engaged in and is *(are)* engaging in unfair labor practices within the meaning of section 8(b), subsection(s) *(list subsections)* 1(A)_____ of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Union discriminated against Paula O'Donnell, based on her mental handicap, and thus violated its duty of fair representation when it chose not to take her grievance to arbitration.

| 3. Name of Employer<br>Boston Globe Credit Union | 4. Telephone No.<br>( ) - 617-929-2741<br>Fax No.<br>( ) - 617-929-3386 |
|---|---|
| 5. Location of plant involved *(street, city, state and ZIP code)*<br>135 MORRISSEY BLVD. Boston MA 02107 | 6. Employer representative to contact<br>PETER VINCI / CEO |

| 7. Type of establishment *(factory, mine, wholesaler, etc.)*<br>Bank/credit union | 8. Identify principal product or service<br>Bank/credit union | 9. Number of workers employed<br>About 8 |
|---|---|---|

| 10. Full name of party filing charge |
|---|
| Paula O'Donnell |

| 11. Address of party filing charge *(street, city, state and ZIP code.)* | 12. Telephone No.<br>(508)746-8506<br>Fax No<br>(508)746-8506 |
|---|---|
| 18 Hillview Lane | |
| Plymouth    MA    02360 | |

**13. DECLARATION**

I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

| By Paula O'Donnell<br>*(signature of representative or person making charge)* | Individual<br>*(Print/type name and title or office, if any)* |
|---|---|
| Address: See Above | (Fax) ( ) -<br>( ) -<br>*(Telephone No.)*    8/11/05 *(date)* |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

01-2005-1273

CU 27

**EXHIBIT 13**



**Office and Professional En~~~~~~~~~al Union, AFL-CIO, Local 6**

One Billings Road, Suite 200 • North Quincy, MA 02171 • 617-984-0006 • 800-882-1462
E-MAIL: opeiulocal6@aol.com • WEBSITE: www.opeiulocal6.org FAX: 617-984-5882

**AFFILIATIONS**
American Federation of Labor and Congress of Industrial Organizations • Massachusetts State Labor Council (AFL-CIO)

Mary Mahoney
*President*
*Business Manager*

> **EXHIBIT**
> Mahoney 27
> 11.20.06   jem

September 14, 2005

VIA FACSIMILE

Ms. Megan M. Millar
Board Agent
National Labor Relations Board
Region 1
10 Causeway Street, 6th Floor
Boston, MA 02222-1072

Re:    OPEIU Local 6 (Boston Credit Union)
       Case No. 1-CB-10511

Dear Ms. Millar:

This letter is the statement of OPEIU Local 6 explaining why we decided not to pursue the grievance of Paula O'Donnell through arbitration.

Ms. O'Donnell left her position with the Boston Globe Credit Union around August 14, 2003, claiming that her supervisor acted in an improper, demeaning, and abusive manner; she exhausted her accrued sick, vacation, and personal time. She was denied a 6-month unpaid leave of absence when she was unable and/or unwilling to provide medical documentation justifying her remaining on leave. When she still refused to return to work her employment was terminated in February 2004.

She filed a grievance on this matter seeking to overturn her discharge and place her on the 6-month unpaid leave of absence. When the case was not resolved, the Union filed for arbitration. The Union ultimately concluded, however, that the employer was within its rights to deny the unpaid leave of absence, and that she was required to obey and grieve. In addition, the Union learned from Ms. O'Donnell that she did not want to return to work for the credit union.

As a result, the Union, in consultation with her private attorney, reached a settlement with the employer, whereby she would receive $5,000 and still be allowed to continue a private lawsuit she had against the directors of the credit union. Although this was initially acceptable to her, she later rejected this offer. She wanted the Union to pursue her case to arbitration, even though she did not want to return to work.

Based on these considerations, the Union decided that the grievance did not merit arbitration and withdrew the case. The Union did not withdraw the case out of a reluctance to pay the costs associated with arbitration, but on an evaluation of the merits of the case, namely, that it was unlikely to prove that the employer breached the collective-bargaining agreement and that Ms. O'Donnell was not seeking to preserve her employment with the credit union.

I hope this information is sufficient for the Board. Thank you.

Very truly yours,

Robert S. Manning
General Counsel

**EXHIBIT 14**

**UNITED STATES GOVERNMENT**

# NATIONAL LABOR RELATIONS BOARD

Region 1  Boston, Massachusetts
10 Causeway Street, 6th Floor
Boston, MA 02222-1072
(617) 565-6700

October 19, 2005

Ms. Paula O'Donnell
18 Hillview Lane
Plymouth MA 02360

Re:  Office & Professional Employees Int'l Union, Local 6
(Boston Globe Credit Union)
Case No. 1-CB-10511

Dear Ms. O'Donnell:

The Region has carefully investigated and considered your charge against the Office &
Professional Employees International Union, Local 6 alleging violations under Section 8 of the
National Labor Relations Act.

Decision to Dismiss:  Based on that investigation, I have concluded that further
proceedings are not warranted, and I am dismissing your charge for the following reasons:

Your charge alleges that the Union violated Section 8(b)(I)(A) of the Act when it refused
to take your grievance to arbitration in May 2005.  The Union's decision not to take the case to
arbitration was made after analysis of the grievance showed that it would not be possible for an
arbitrator to remedy the grievance, thereby rendering the arbitration process moot.  There is no
evidence that the Union processed your grievance in an unfair or discriminatory manner.
Therefore, I am refusing to issue a complaint in this matter.

Your Right to Appeal:  The National Labor Relations Board Rules and Regulations
permit you to obtain a review of this action by filing an appeal with the General Counsel of the
National Labor Relations Board.  If you wish to file an appeal, your attention is directed to the
following:

Appeal Due Date: The appeal must be received by the General Counsel in Washington,
D.C.  by the close of business at 5 p.m. on November 2, 2005.  However, if you mail the appeal,
it will be considered timely if it is postmarked no later than one day before the due date.  The
appeal MAY NOT be filed by facsimile transmission.

Extension of Time to File Appeal:  Upon good cause shown, the General Counsel may
grant you an extension of time to file the appeal.  You may file a request for an extension of time
to file by mail, facsimile transmission, or through the Internet.  The fax number is (202) 273-
4283.  Special instructions for requesting an extension of time over the Internet are set forth in
the attached Access Code Certificate.  While an appeal will be accepted as timely filed if it is

**CU 22**

postmarked no later than one day prior to the appeal due date, this rule does not apply to requests for extensions of time. A request for an extension of time to file an appeal **must be received** on or before the original appeal due date. A request that is postmarked prior to the appeal due date but received after the appeal due date will be rejected as untimely. Unless filed through the Internet, a copy of any request for extension of time should be sent to me.

Appeal Contents: The appeal must contain a complete statement setting forth the facts and the reasons why you believe the decision to dismiss the charge is incorrect.

Confidentiality/Privilege: Please be advised that we cannot accept any limitations on the use of any appeal statement or evidence in support thereof provided to the Agency. Thus, any claim of confidentiality or privilege cannot be honored, except as provided by the FOIA, 5 U.S.C. 552, and any appeal statement may be subject to discretionary disclosure to a party upon request during the processing of the appeal. In the event the appeal is sustained, any statement or material submitted may be subject to introduction as evidence at any hearing that may be held before an administrative law judge. Further, we are required by the Federal Records Act to keep copies of documents used in our case handling for some period of years after a case closes. Accordingly, we may be required by the FOIA to disclose such records upon request, absent some applicable exemption such as those that protect a confidential source, commercial/financial information or personal privacy interests (e.g., FOIA Exemptions 4, 6, 7(C) and 7(D), 5 U.S.C. § 552(b)(4), (6), (7)(C) and 7(D)). Accordingly we will not honor any requests to place limitations on our use of appeal statements or supporting evidence beyond those prescribed by the foregoing laws, regulations, and policies.

Address for Appeal: The appeal should be sent to the General Counsel of the National Labor Relations Board, Office of Appeals, 1099 14th Street, N.W., Washington, D.C. 20570. You should send a copy of the appeal to me. At the time you send the appeal to the General Counsel, please complete the enclosed Notice of Appeal Form (NLRB-4767) and send one copy of the form to each of the parties whose names and addresses are listed below. Mailing the notice form to the parties does not relieve you of the obligation to file the appeal itself with the General Counsel and to send a copy of the appeal to me by the due date.

Very truly yours,

/s/ Rosemary Pye

Rosemary Pye
Regional Director

cc: See Attachment

CU 23

Office and Professional Employees Union,
Local 6
Ms. Mary Mahoney, President and
  Business Manager
Robert Manning, Attorney
1 Billings Road, Suite 200
North Quincy, MA  02171

Boston Globe Credit Union
Mr. Peter Vinci, Chief Executive Officer
135 Morrissey Blvd.
Boston, MA   02107

General Counsel, Office of Appeals
National Labor Relations Board
1099 14th Street, NW
Washington, DC   20570


H:\R01COM\dismissals\2005 Dismissal\1-CB-10511 OPEIU Local 6.doc

**CU 24**

**EXHIBIT 15**



**UNITED STATES GOVERNMENT**

# NATIONAL LABOR RELATIONS BOARD

**OFFICE OF THE GENERAL COUNSEL**

Washington, D.C.    20570

December 9, 2005

Re:  OPEIU, Local 6
     (Boston Globe Credit Union)
     Case No. 1-CB-10511-1

Ms. Paula O'Donnell
18 Hillview Lane
Plymouth, MA  02360

Dear Ms. O'Donnell:

Your appeal from the Regional Director's refusal to issue complaint has been carefully considered.  The appeal is denied substantially for the reasons set forth in the Regional Director's letter of October 19, 2005.  Under the National Labor Relations Act, a union does not violate its duty of fair representation toward a bargaining unit member so long as its actions are not arbitrary, discriminatory or in bad faith.  *See Vaca v. Sipes*, 386 U.S. 171 (1971).  Thus, a wide range of reasonableness is allowed a statutory representative in deciding whether to exercise its discretionary powers.  An employee does not have an absolute right to have a union process a grievance.  Here, the evidence shows that the Union did not pursue your grievance to arbitration after a good faith review of the dispute, because you refused either reinstatement or a negotiated monetary settlement.  Inasmuch as the Union's decision was not based on unlawful considerations, further proceedings herein were deemed unwarranted.

Sincerely,

Arthur F. Rosenfeld
Acting General Counsel

By _____
    Yvonne T. Dixon, Director
    Office of Appeals

**CU 20**

Case No. 1-CB-10511                                                                    -2

cc:    Director, Region 1

       Robert Manning, Esq.                    Mr. Peter Vinci
       Ms. Mary Mahoney                        Boston Globe Credit Union
       OPEIU, Local 6                          135 Morrissey Boulevard
       One Billings Road, Suite 200            Boston, MA  02107
       North Quincy, MA  02171

trs

CU 21