# UNITED STATES DISTRICT COURT
# THE DISTRICT OF MASSACHUSETTS

Paula O'Donnell,

    Plaintiff

v.                                                        Civil Action No. 05-CV-11257- NG

Donna Boggs, et al.,

    Defendants.

## Plaintiff's Motion to Strike
## Portions of Defendants' Non-Compliant Affidavits

### Request for Oral Argument

Plaintiff believes that the interests of efficient and just administration of justice are best served by allowing the parties an opportunity for oral argument on the matters at issue.

**Table of Contents**

I.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  Standard for Review of Affidavits and Motion to Strike . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Affidavit of Harvey Weiner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A.  Generally - Treatment of an Attorney Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.  Inadmissible Representations Not of Personal Knowledge . . . . . . . . . . . . . . . . . . . . 4
    C.  Representations Failing to Authenticate Documentary Evidence . . . . . . . . . . . . . . . 5
    D.  Hearsay and Evidence from Non-Authenticated Documents . . . . . . . . . . . . . . . . . . 6

IV. Affidavit of Mary Mahoney . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    A.  Speculation, Opinion and Contradiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    B.  Lack of Foundation and Impermissible Opinion in NLRB Documents . . . . . . . . . . 10
    C.  Other Hearsay and Inadmissible Representations . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**I.   Introduction**

Defendants' Motion for Summary Judgment is supported by two affidavits; that of (i) Defendants' counsel, Harvey Weiner, and (ii) a third party union official named Mary Mahoney. <u>There are no affidavits of Defendants themselves</u>. Plaintiff moves to strike significant portions of both affidavits for failure to comply with Rule 56(e), and to strike those portions of (i) Defendants Statement of Facts and (ii) Motion for Summary Judgment relying on the stricken portions of the affidavits. To address this issue, the affidavits will be addressed in turn and representations examined either singly or combined where similar objections are in issue.

Another notable problem is that Defendants' counsel, Harvey Weiner, is impermissibly testifying as to material facts in support of summary judgment. In this he is no longer attorney but, rather, a fact witness before the Court submitting materials as an affiant "competent to testify." See Rule 56(e). By testifying in this manner, he has waived or extinguished attorney-client privilege.[1]

**II.   Standard for Review of Affidavits and Motion to Strike**

Under Rule 56(e), an affidavit <u>must satisfy all of the following</u>: (i) made on personal knowledge, (ii) set forth such facts admissible in evidence, and (iii) show affirmatively that the affiant is competent to testify to the matters stated. A representation in an affidavit that does not meet these requirements is insufficient and must be stricken. <u>Santiago v. Canon U.S.A., Inc.</u>, 138 F.3d 1, 6 (1st Cir.1998))(stating "The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

---

[1] The problematic nature of the attorney Weiner's affidavit is not raised here for the first time. It was noted in a response to a prior dispositive motion and, since submitted anew, is open to attack. See <u>Perez v Volvo Car Corp.</u>, 247 F. 3d 303, 313-15 (C.A.1 2001)(see 1. Need for Motion to Strike).

The party moving to strike must specify the objectionable portions of the affidavit and the grounds for objection. See Casas Office Machines, Inc. v. Mita Copystar, 42 F.3d 668, 682 (1994) (citing 10A Charles Wright et al., Federal Practice & Procedure § 2738 at 507 (2d ed. 1983)). The Court, when requested, must strike non-compliant portions of a summary judgment affidavit, which may consist of hearsay, legal conclusions, speculative assertions or otherwise do not satisfy the standards of personal knowledge, admissibility and competence required by Fed.R.Civ.P. 56(e). *See* e.g., Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir.1998) ("Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment.").

**III.   Affidavit of Harvey Weiner** (Not Filed or Served, but Referenced as Docket Paper #7)

A.   Generally - Treatment of an Attorney Affidavit

An attorney might allowably attest of personal knowledge as to matters related to the litigation (e.g., communications with opposing counsel, filing and content of pleadings, representations of opposing counsel, etc.), but it is impermissible for the attorney to testify as to material facts, whether at trial or to support or sustain summary judgment. See e.g., Mass.R.Prof.Conduct 3.7 (Lawyer as Witness). We do not litigate matters based upon attorney statements.

Here, Defendants provide no affidavits and nearly all of the facts that Defendants rely on for summary judgment are from their attorney, Harvey Weiner. In this, he has transgressed his proper role and become a fact witness, waiving attorney client privilege. Even if his testimony was otherwise viable upon his withdrawal, much of his affidavit would still fail for lack of personal knowledge of "facts, as opposed to conclusions, assumptions or surmise." See Perez v Volvo Car Corp., 247 F. 3d 303, 315 (C.A. 1 Mass. 2001). Also, much of what he attests to occurred prior to his involvement

in the case,[2] and would be inadmissible on the basis that his knowledge of matters pre-dating his involvement is impermissibly based upon mere information and belief, or hearsay. *Id.*

Material facts that should be attested to by the Defendants or third parties have entered into consideration of Defendants' Summary Judgment Motion solely upon the representations of counsel. Whether or not factual allegations in Mr. Weiner's affidavit are true or sustainable through some alternative production is immaterial for the purposes of a motion to strike under Rule 56(e). At issue is the affidavit upon which judgment and avoidance of trial would rest, not the abstract veracity or admissibility of the facts stated. On this basis, it would be expedient to strike all of attorney Weiner's affidavit not related to litigation matters for which he is arguably competent to testify.

B.    <u>Inadmissible Representations Not of Personal Knowledge</u>

The following representations of attorney Weiner are impermissible and must be stricken for multiple reasons. It should first be noted that he is attesting, pursuant to Rule 56(e), that he is competent to testify as a witness on these matters. This is an impermissible role for an attorney and waives attorney client privilege. Furthermore, the foundation for his testimony is clearly information and belief, or hearsay, as he has set forth no foundation by establishing the function, duty or personal familiarity he has with the matters stated, many of which predate his association with the parties.

6.    The Credit Union is a state-chartered financial institution incorporated in 1962 and located in Boston, Massachusetts.

7.    Defendant Donna Boggs was a member of Credit Union's Board of Directors at all times relevant until 2004 and served as Chairman during the relevant period.

---

[2] Weiner affidavit ¶13: "I was retained by the Credit Union in November, 2003 relative to Ms. O'Donnell's complaints and failure to return to work."

4

8.  Defendant J. Brendan Hall was a member of the Credit Union's Board of Directors at all times relevant.

9.  Defendant William Francis has been a member of the Credit Union's Board of Directors since 2000.

10. Defendant Mary Lou Meighan has been a member of the Credit Union's Board of Directors since 2001.

11. Defendant Marion Doucette was an employee of the Credit Union for 30 years. She served on the Credit Union's Board of Directors at all times relevant, and served as Manager/CEO of the Credit Union from June 1998 until her retirement on July 2, 2004.

22. O'Donnell did not return to her job after August 14, 2003. Her sick leave and vacation time expired on or about November 30, 2003.

C.  <u>Representations Failing to Authenticate Documentary Evidence</u>

Attorney Weiner also attempts to introduce documentary evidence which, in order to be admissible, must have sufficient foundation or authentication. Of the various means available, none have been set forth in attorney Weiner's affidavit. *See generally*, <u>Dodi v. The Putnam Companies</u>, 94 F.3d 640 (C.A.1 1996). Mere existence or possession of a document, even production by an opponent, is insufficient to establish the necessary foundation for admissibility that Rule 56(e) requires. *Id.* It is, of course, also problematic for attorney Weiner to authenticate documents, other than litigation communications sent by him or to him–although that is what he attempts. Clearly he was not the custodian or author of the noted documents, and he has not set forth any other circumstances or foundation that would allow them to be authenticated as a predicate to admissibility. For these reasons, each of the following representations should be stricken.

2.  A true and accurate copy of the Collective Bargaining Agreement ("CBA") between the Boston Globe Employees Credit Union ("Credit Union") and the Office and Professional Employees International Union, Local 6, AFL-CIO ("Local 6"), dated January 1, 2000 through December 31, 2002 is attached hereto as Exhibit 1.

3.  A true and accurate copy of the CBA between the Credit Union and Local 6 dated January 1, 2003 through December 31, 2005 is attached hereto as Exhibit 2.

4.  True and accurate copies of the following correspondence between Scott Adams, Esquire (attorney for Paula O'Donnell, hereinafter "Adams"), Harvey Weiner, Esquire (attorney for the Credit Union, hereinafter "Weiner"), the Credit Union and Local 6 related to Ms. O'Donnell's claims and grievance are attached hereto as indicated:

    Letter from Adams to Donna Boggs dated October 27, 2003 -Exhibit 3;

    Letter from Lisa Lemieux, Business Agent for Local 6 ("Lemieux"), to Marion Doucette, dated February 25, 2004 and enclosing grievance -Exhibit 11;

    Letter from J. Brendan Hall to Lemieux dated March 25, 2004 (unsigned) -Exhibit 11A;

    Letter from Lemieux to Peter Vinci, Manager/CEO of the Credit Union ("Vinci"), dated August 24, 2004- Exhibit 12;

    Letter from Vinci to Lemieux dated August 27, 2004- Exhibit 13;

    Letter from Lemieux to Vinci dated September 7, 2004 -Exhibit 14;

    Letter from Vinci to Lemieux dated September 13, 2004 -Exhibit 15;

    Letter from Lemieux to Vinci dated September 15, 2004 -Exhibit 16;

D.  Hearsay and Evidence from Non-Authenticated Documents

Attorney Weiner also impermissibly attempts to introduce hearsay or conclusory evidence contained in the documents noted above. Each representation should be stricken.

6

[The documents at issue are denoted below by striking the Exhibit reference in the representation.]

14. Credit Union employees are covered by a CBA between the Credit Union and Local 6. The text of the relevant portions of the CBA remained unchanged from the January 1, 2000 agreement through the January1, 2003 agreement. Compare ~~Ex. 1, Ex. 2~~.

15. O'Donnell was a signatory to the agreement as Shop Steward for Local 6 for the CBA in effect from January 1,2000 through December 31,2002, and was a member of Local 6 at all relevant times. ~~Ex. 1~~ ....

16. Defendants Marion Doucette and J. Brendan Hall were also signatories to the CBA during the same period. Id. Doucette signed as Manager/CEO and Hall signed as a Member of the Board of Directors. ~~Id~~.

17. Defendants Doucette, Hall and Marylou Meighan were signatories to the CBA in effect from January 1,2003 through December 31,2005. ~~Ex. 2~~ .... Hall and Meighan signed as members of the Board of Directors and Doucette signed as Manager. Id.

18. The CBA includes: Article VI, which vests all management rights in the Credit Union; Article XV, which addresses unpaid leaves of absence; Article XIX, which provides a grievance procedure; Article XX, which addresses discipline and discharge; and Article XXI, which provides for arbitration of grievances. ~~Ex. 1~~ ...; ~~Ex. 2~~ .....

19. Article VI of the CBA provides in part: .......... ~~Ex. 1~~ ...; ~~Ex. 2~~ ....

20. Article XV of the CBA states as follows: ............. ~~Ex. 1~~ ...; ~~Ex. 2~~ ....

21. Article XX of the CBA states in part: ......... ~~Ex. 1~~ ...; ~~Ex. 2~~ ....

23. Through her attorney, Adams, O'Donnell indicated that she would not return to work because of what she perceived to be a hostile working environment. ~~Ex. 3:~~ ....

28. Loca16 pursued a grievance on behalf of O'Donnell on February 25, 2004. Ex. 11.: ... The grievance alleged that O'Donnell's termination violated Articles I, VI, XV and XX of the CBA, and sought O'Donnell's reinstatement. Id.

29. There is a multiple-step grievance process under the CBA. Ex. 2 .... A grievance hearing was held on March 19, 2004. Ex. 13: ... The Credit Union denied the grievance on March 25, 2004. Ex. 11A: ...

30. There was a dispute as to the subsequent steps in the grievance process between Loca16 and the Credit Union. See Ex. 14: ...; Ex. 15: ... ; Ex. 16: ... . Ultimately, the Credit Union agreed to arbitrate the grievance despite a dispute over the timing of the request for arbitration. Ex. 17: ....

IV. **Affidavit of Mary Mahoney** (ECF Document #31)

The affidavit of Mary Mahoney, a union official, is more than strikingly similar to that of attorney Harvey Weiner, it actually contains an extraordinary number of identical representations. One might reasonably infer that the Union affidavit was prepared by, or in close consultation with, attorney Weiner. (A situation which may be problematic when the Union's independence and good faith are at issue.) While the Mahoney affidavit sets forth some admissible representations, many of these are not recognized or relied upon by Defendants in their Statement of Material Facts, which primarily relies on the Weiner affidavit. As Defendants bear the burden under Rule 56 of producing materials in the proper form for consideration of the Court, it is not a reasonable or implied duty that Plaintiff scour Defendants' submissions in order to locate what Defendants may have intended to set forth, rather than what they actually set forth. For this reason, most of the Mahoney affidavit is of little consequence to Defendants' Motion for Summary Judgment.

A. <u>Speculation, Opinion and Contradiction</u>

The most notable and problematic of Mahoney's representations concerns the withdrawal of Ms. O'Donnell's grievance, especially when viewed in conjunction with that of attorney Weiner:

| | | |
|---|---|---|
| Mahoney: (1/2007) | 15. | Local 6 withdrew the grievance just prior to the scheduled arbitration. The grievance was formally withdrawn on June 6, 2005. This was communicated to Plaintiffs counsel by telephone on June 6, 2005 and by facsimile letter received by Plaintiff's counsel on June 6, 2005. Ex. 10: ... |
| Weiner: (9/2005) | 31. | Local 6 abandoned the grievance just prior to a scheduled arbitration. The grievance was formally withdrawn on June 14, 2005. Ex. 18: Letter from Peter Manning to Weiner dated June 14, 2005. |

Mahoney may testify as to the Union's withdrawal of the grievance but not as to a communication she was not privy to[3] (e.g., hearsay) and the date of receipt of a document by Ms. O'Donnell's counsel (e.g., mere speculation). These matters should be sticken. <u>More problematic is a direct contradiction as to the date of the withdrawal of the grievance.</u>

Weiner (9/05)...:   The grievance was formally withdrawn on June 14, 2005.

Mahoney (2/07):   The grievance was formally withdrawn on June 6, 2005.

The Mahoney affidavit is tailored to counteract attorney Weiner's earlier affidavit concerning the date the grievance was "formally withdrawn," apparently to serve Defendants' current statute of limitations argument. In fact, it creates a factual dispute sufficient to preclude summary judgment.

---

[3] See Adams affidavit ¶ 2, recalling no phone conversation in which Mary Mahoney was a participant.

9

B.  <u>Lack of Foundation and Impermissible Opinion in NLRB Documents</u>

Another problematic issue with Ms. Mahoney's affidavit is the attempt to introduce NLRB statements either for the truth of the matter or for precedential effect. In the first instance, Mahoney is neither the custodian or author of the NLRP Charge and Decision documents. No foundation is established for these documents, and the Union's mere receipt or possession of them does not cure the defect. Even if a foundation is established, they are no more than hearsay and opinion as they do not represent findings after evidentiary hearing upon to which deference <u>might</u> be afforded. Plaintiff is not appealing any action or inaction by the NLRB, and such documents have no evidentiary or preclusive value. All of the following representations should be stricken on this basis.

22. A true and accurate copy of Ms. O'Donnell's National Labor Relations Board ("NLRB") Charge against Local 6 alleging violation of its duty of fair representation dated August 22, 2005 is attached hereto as Exhibit 12.

24. A true and accurate copy of the NLRB Regional Director's dismissal of the Charge dated October 19, 2005 is attached hereto as Exhibit 14. The Regional Director found that: The Union's decision not to take the case to arbitration was made after analysis of the grievance showed that it would not be possible for an arbitrator to remedy the grievance, thereby rendering the arbitration process moot. There is no evidence that the Union processed your grievance in an unfair or discriminatory manner. The Regional Director refused to issue a Complaint in this matter, and advised Ms. O'Donnell of her right to appeal. *Id.*

25. A true and accurate copy of the denial of Ms. O'Donnell's appeal by the NLRB's Director of the Office of Appeals dated December 9, 2005 is attached hereto as Exhibit 15. The Office of Appeals denied the appeal for substantially the reasons set forth in the Regional Director's October 19, 2005 letter, and stated that "the evidence shows that the Union did

>   not pursue [the] grievance to arbitration after a good faith review of the dispute, because [Ms. O'Donnell] refused either reinstatement or a negotiated monetary settlement. Inasmuch as the Union's decision was not based on unlawful considerations, further proceedings herein were deemed unwarranted." Ex. 15.

Reperesentations in ¶¶ 24, 25 also contained inadmissible hearsay and conclusory statements.

C. <u>Other Hearsay and Inadmissible Representations</u>

Other representations in the Mahoney affidavit also present statements of the nature that fail to comply with Rule 56(e) and must be stricken:

16. There are several reasons why Local 6 decided not to proceed to arbitration. After reviewing the grievance with the Executive Board of Local 6, we determined that the case did not have sufficient merit to win at arbitration. Based on our review of this case, the employer did not violate the CBA by denying Ms. O'Donnell's request for a leave of absence. The CBA contains the requirements governing requests for a leave of absence in Article 15 and provides as follows: "Unpaid leaves of absence for good and sufficient reason in the opinion of the employer shall be granted upon written request and shall not be unreasonably denied." Ex. 2 at 8.

19. Based on the CBA's requirement of "good and sufficient reason" for leaves of absence, Local 6 determined that the Credit Union was within its rights under the CBA to ask for medical documentation. Because Ms. O'Donnell did not meet that requirement, Local 6 did not find it likely that an arbitrator would find a violation of the CBA by her employer.

20. In addition, we learned that Ms. O'Donnell did not want to return to work at the Credit Union. As a result, the Union determined that it would not be possible for the arbitrator to remedy the grievance.

While the representations in ¶¶16, 19 and 20 may be sufficient evidence of the Union's "state of

mind" or intention, they are inadmissible for the truth of whether or not Ms. O'Donnell could or would "win at arbitration" and whether or not any remedy might be fashioned, or the merit of her claim. Both ¶19 and ¶20 seek, impermissibly, to introduce as fact the Union's mere belief, speculation or opinion that an arbitrator would not find a violation of the CBA, and could not create a remedy if such a determination was made. Clearly, to the extent that the Union seeks to introduce as fact mere speculation or opinion concerning an arbitrator, this is impermissible under Rule 56(e).

17. The Credit Union informed Ms. O'Donnell that if she was requesting a leave of absence for medical reasons, she should submit current medical documentation explaining why she was unable to work. Ms. O'Donnell did not provide any medical documentation. The employer denied her request for a leave of absence for failure to provide good and sufficient reason for the request, and asked her to resign or return to work by February 17, 2004. When Ms. O'Donnell informed the Credit Union that she would not return to work, the Credit Union terminated her for failing to return to work, pursuant to Article XX of the CBA. Ex. 2 at 13; Ex. 11: Letter from Weiner to Adams dated February 13, 2004.

The representation of ¶17 is primarily hearsay from a third party (i.e., the Credit Union), and clearly made without the requisite personal knowledge required under Rule 56(e). It refers to unspecified communications and actions by unspecified individuals at the Credit Union, and actually seeks to introduce communications of a third party without proper foundation. Furthermore, much of the representation is conclusory and the entire representation should be stricken.

21. Also, Local 6 and the Credit Union had entered into settlement discussions with counsel for Ms. O'Donnell and had proposed a monetary settlement that Ms. O'Donnell had originally found acceptable. The Union continued to leave that settlement option open until the day before the arbitration. The Union decided to withdraw the grievance because

we determined that we were unlikely to prove the employer violated the CBA, Ms. O'Donnell no longer wished to return to her position, and she no longer wished to pursue a reasonable settlement.

The representations in ¶21 appear to impermissibly, pursuant to F.R.E. 408, admit evidence of settlement discussions to be used against Plaintiff, and no foundation or countervailing evidence to establish that it would be used for an admissible purpose appears. Furthermore, the representations appear to lack foundation of personal knowledge, and present mere hearsay and opinion. The representation should be struck on that basis.

**WHEREFORE**, the representations noted should be stricken, along with all pendant Statements of Material Facts and argument based upon them.

Respectfully submitted for Plaintiff,
By her attorney,

dated: February 20, 2007    __/s/ Scott Adams_____

Scott Adams (BBO# 639166)
92 State St., 9th Flr.
Boston, MA 02109
Tel: (617) 742-4554

---

*Certificate of Service*

*I hereby certify that a true copy of this document and any attachments was served upon all parties pro se or parties' attorneys by hand / mail / fax / ECF on ____2/20___, 2007.*

____/s/ Scott Adams_____ _2__/_20__/07