UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA O'DONNELL<br><br>            Plaintiff<br><br>v.<br><br>DONNA BOGGS[*], MARIAN DOUCETTE*,<br>BRENDAN HALL, WILLIAM FRANCIS,<br>MARY LOU MEGAN*, and BOSTON<br>GLOBE EMPLOYEES CREDIT UNION<br><br>            Defendants | Civil Action No. 05-11257-NG |

**REPLY BRIEF OF DEFENDANTS IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

---

The Defendants submit this Reply Brief in response to Plaintiff's Opposition to

Defendants' Motion for Summary Judgment. As set forth in Defendants' Memorandum of Law

filed on January 19, 2007, Plaintiff's claims against her former employer, the Boston Globe

Employees Credit Union (the "Credit Union"), and certain board members (the "individual

defendants") are governed by Section 301 of the Labor Management Relations Act ("LMRA")

(29 U.S.C. § 185). As previously held by this Court, Plaintiff's state law claims against the

---

[*] Defendant Donna Boggs was incorrectly identified in Defendants' Notice of Removal as Donna Briggs. Plaintiff has misspelled the names of defendants Mary Lou Meighan and Marion Doucette in her Complaints. The proper spelling is used herein, as is the caption contained in Plaintiff's First Amended (Consolidated) Complaint.

individual defendants for tortious interference with contractual relations are preempted by Section 301. *See* Electronic Order dated May 18, 2006, adopting the Report and Recommendations of Magistrate Judge M. B. Bowler (the "Report") (Docket Entry #11).

Further, Plaintiff's brief fails to overcome Defendants' arguments that:

- Plaintiff cannot prove her Section 301 claim because she has presented no admissible evidence of a breach of the duty of fair representation by Local 6 of the Office and Professional Employees International Union, AFL-CIO ("Local 6"), or a breach of contract by the Credit Union;

- Plaintiff's Section 301 claim is untimely and is barred by the LMRA's six-month statute of limitations; and

- Plaintiff's federal or state civil rights claims or public policy claims also fail because they are preempted under Section 301 here, and because Plaintiff has failed to identify any civil right or public policy claim that would entitle her to relief. Plaintiff makes no real argument on this and appears to have waived Count IV of the Amended Complaint.

I. **PLAINTIFF HAS FAILED TO IDENTIFY ANY REASON FOR THE COURT TO REVERSE ITS EARLIER DECISION THAT THE TORTIOUS INTERFERENCE CLAIMS ARE PREEMPTED UNDER SECTION 301. (COUNTS I and II)**

Plaintiff's argument regarding her tortious interference claims is twofold: First, she contends that Defendants do not challenge the substance of the claims, and second, she contends that the claims are not preempted "where underlying tort liability is based on actual malice." (Plaintiff's Brief at 9.) The first theory misses the point of Defendants' preemption argument, and the second theory misstates the applicable law.

This Court has already addressed and rejected these arguments in ruling on the Defendants' first motion for summary judgment. (*See* Report at 7-14.) As discussed in the Court's Report, "[f]ederal courts in this circuit uniformly hold claims of intentional interference with contractual relations to be preempted by section 301." *Id.* at 9 (citing *Magerer v. John Sexton & Co.*, 912 F.2d 525 (1st Cir. 1990); *Troconis v. Lucent Technologies, Inc.*, 160 F. Supp.

2

2d 150, 153-54 (D. Mass. 2001); *Acciavatti v. Professional Services Group, Inc.*, 982 F. Supp. 69, 76 (D. Mass. 1997)). Because Plaintiff's tortious interference with contractual relations claims depend on an interpretation of the CBA between the Credit Union and Local 6, "section 301 preempts plaintiff's claims." *Id.* at 14. As in her earlier brief in opposition to summary judgment, Plaintiff again relies on cases in which Section 301 preemption was not an issue or where a CBA did not govern the plaintiffs' employment. For that reason, and as the Court pointed out in its Report, *Tosti*, *Zimmerman*, *Legoff*, *Ruffino*, and *Boyle* do not apply here. (*See* Report at 14-15, and n. 10 and n. 11.)

Plaintiff's reliance on three other cases -- *Russell*, *Young*, and *Johnson* -- for the proposition that interference with contractual relations claims are not preempted is similarly misplaced. *Russell* did not involve Section 301 preemption. *International Union, UAW v. Russell*, 356 U.S. 634 (1958). In *Russell*, the United States Supreme Court held that a state court, in 1952, had jurisdiction to hear an action by an employee in an industry affecting interstate commerce against a union and its agent for malicious interference with the employee's lawful employment during a strike. *Id.*, 356 U.S. at 646. In *Young*, the Ninth Circuit rejected the plaintiff's argument that her state law tort claims for breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, wrongful discharge in violation of public policy, and intentional and negligent infliction of emotional distress were not preempted by Section 301. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999-1002 (9th Cir. 1987). The court held that each of these claims could only be resolved by referring to the terms of the collective bargaining agreement, and affirmed summary judgment for the defendant employer. *Id.*

In *Johnson*, the Eighth Circuit also affirmed summary judgment for the defendant employer and held that the plaintiff's state law claims for tortious interference with contractual relations, wrongful discharge, slander, and intentional infliction of emotional distress were preempted under Section 301. *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 624-625 (8th Cir. 1989). The plaintiff's claim for libel was also preempted insofar as it alleged that false accusations about his involvement in a tire slashing incident were reduced to writing and seen internally by other employees, but was not preempted insofar as it alleged that a co-worker separately filed an insurance claim falsely accusing the plaintiff of property damage because this action did not "require construction of any term of the collective bargaining agreement." *Id.*, 876 F.2d at 625. The same analysis applied to the plaintiff's claims of malicious prosecution and false arrest. *Id*. These claims were not preempted because they could be resolved independently of the collective bargaining agreement. *Id*.

None of the cases cited by the Plaintiff supports her effort to revive her claims for tortious interference with contractual relations. As this Court has already held, the Plaintiff's tortious interference claims require an interpretation of the CBA, and they are properly preempted. The law of the case doctrine also calls for this result. The Defendants are thus entitled to judgment as a matter of law on Counts I and II of the Amended Complaint.

II.     **PLAINTIFF'S SECTION 301 CLAIM FAILS AS A MATTER OF SUBSTANTIVE AND PROCEDURAL LAW.  (COUNT III)**

In an attempt to avoid dismissal of her Section 301 claim, Plaintiff contends that there is a factual dispute over whether the Credit Union's denial of her request for an unpaid leave of absence was reasonable (Plaintiff's Brief at 13-14), and that the Union's decision to withdraw her grievance was arbitrary and capricious (*id.*, at 15-17). Neither argument withstands summary judgment. On this record, there is no evidence that the Credit Union breached the CBA, or that

4

the Union breached its duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164-65 (1983); *Mulvihill v. Top-Flite Golf Co.*, 335 F. 3d 15, 20-21 (1st Cir. 2003) (plaintiff must provide "sufficient evidence from which a reasonable factfinder can conclude not only that the discharge was improper but also that the union's breach undermined the grievance process and thereby contributed to the error"). She must prove both elements to survive a Rule 56 motion, and the summary judgment record establishes that she cannot do so.

### A.   Plaintiff Has Not Identified a Genuine Issue of Material Fact Regarding the Union's Duty of Fair Representation.

Plaintiff contends that the Union breached its duty of fair representation by withdrawing her grievance prior to arbitration. (Plaintiff's Brief at 15-17.) The essence of her argument is that the Union's decision to withdraw the grievance was "belated and sudden" and thus indicative of "an arbitrary and capricious decision by the Union to abandon Ms. O'Donnell." *Id.* at 17. This argument fails to address the well-established body of law which holds that a union's actions are arbitrary only when they so exceed a wide range of reasonableness as to be irrational, and that employees have no absolute right to have a grievance taken to arbitration. *Miller v. United States Postal Service*, 985 F.2d 9, 11-12 (1st Cir. 1993) (affirming summary judgment in favor of defendants Postal Service and union on claims for breach of duty of fair representation and breach of collective bargaining agreement); *Vaca v. Sipes*, 386 U.S. 171, 193-94 (1967) (reversing jury award to plaintiff employee because evidence at trial did not support a verdict that union acted arbitrarily or in bad faith in processing his grievance). "A union is under no duty to arbitrate a grievance that it honestly and in good faith believes lacks merit." *Chaparro-Febus v. Int'l Longshoremen Ass'n Local 1575*, 983 F.2d 325, 331 (1st Cir. 1992) (affirming summary judgment in favor of defendants employer and union on claims for breach of duty of fair representation and breach of collective bargaining agreement).

5

Plaintiff also fails to address the Affidavit of Mary Mahoney, the Union's President and Business Manager, which sets forth Local 6's many reasons for withdrawing the Plaintiff's grievance, and Plaintiff offers <u>no</u> evidence to contradict the Union's good faith view that the grievance was unlikely to succeed. The Mahoney Affidavit is uncontradicted, and establishes that the Union reviewed the Plaintiff's grievance and determined that the Credit Union did not violate the CBA. (Mahoney Aff. ¶¶ 16-19.) Because the Plaintiff did not want to return to work at the Credit Union, the Union found there was no viable remedy for the grievance. *Id.,* ¶20. "Courts may not substitute their own views for those of the union." *Miller*, 985 F.2d at 12.

The NLRB reviewed the Union's decision on appeal and found that there is "no evidence that the Union processed [the] grievance in an unfair or discriminatory manner." (Mahoney Aff. ¶24; Mahoney Aff. Ex. 14.) The Plaintiff appealed the NLRB's dismissal to the Office of Appeals, which held that "the evidence shows that the Union did not pursue [the] grievance to arbitration after a good faith review of the dispute, because [Plaintiff] refused either reinstatement or a negotiated monetary settlement." (*Id.*, ¶25; Mahoney Aff. Ex. 15.) On this record, there is no evidence or arbitrary or bad faith conduct by the Union.

Plaintiff has failed to identify any evidence here that would justify deviating from the general rule that ample deference be accorded to union decisions on pursuing grievances to arbitration. *Miller*, 985 F.2d at 12 ("We... allow the union great latitude in determining the merits of an employee's grievance and the level of effort it will expend to pursue it."); *Berrigan v. Greyhound Lines, Inc.*, 782 F. 2d 295, 298 (1st Cir. 1986) (if a union were forced to arbitrate "a case that it felt had little basis in the contract, it arguably would jeopardize its credibility with the employer for purposes of later, more supportable, disputes with management policies, instituted on behalf of all members"); *Sear v. Cadillac Automobile Co. of Boston*, 654 F.2d 4, 8 (1st Cir.

6

1981) (First Circuit is "unwilling to hold that a union breaches its duty of fair representation merely because, in the course of representing all of its members, it fails to espouse a position supported by some of the members who comprise its membership"). Plaintiff's position on this dispositive issue is speculative and conclusory. She offers no evidence of arbitrary, capricious, unreasonable, or discriminatory conduct by the Union, and there are no grounds to second guess the Union's decision or the NLRB's determination that Local 6 did not breach its duty of fair representation.

**B.    Plaintiff Has Not Identified a Genuine Issue of Material Fact Regarding the Credit Union's Actions Under the CBA.**

After failing to show up for work for over four months, the Plaintiff then declined to provide the Credit Union with any medical documentation to support her request for a leave of absence. Her position on this is that she was under no obligation to provide it. This sidesteps the requisite analysis under the CBA. The CBA provides that "[u]npaid leaves of absence for good and sufficient reason in the opinion of the employer shall be granted upon written request and shall not be unreasonably denied." (Weiner Aff. Ex. 2, at 8.)[1] By the time the Plaintiff requested an authorized leave of absence, her sick time and vacation time had expired almost two months earlier. The Credit Union therefore requested that if she was asking for a leave for medical reasons she should "submit a current doctor's report explaining the medical reason and why it prevents your client from working." (*Id.*, Ex. 6.) Under the terms of the CBA, the only issue is whether the Plaintiff's request was "unreasonably denied." It is clear that Plaintiff's request was

---

[1] As noted in the Defendants' Opposition to the Plaintiff's Motion to Strike Certain Portions of the Affidavits of Harvey Weiner and Mary Mahoney, the Plaintiff objects to the inclusion of the CBAs with the Weiner Affidavit, but does not question their authenticity. The same documents are attached to and identified in the Mahoney Affidavit as Exhibits 1 and 2. These documents cannot be seriously in dispute.

7

for medical reasons. She concedes as much by stating that "the medical issue was noted," but contends that "there was no refusal to provide medical documentation." (Plaintiff's Brief at 15.) In fact, she provided no medical documentation to the Credit Union. Plaintiff appears to concede this. She states that "there is no competent or admissible undisputed evidence" that she "was required to or refused to provide medical information." (Plaintiff's Brief at 15-16.) This is so coy as to be of no help to the Court. The only evidence in the record is that the Credit Union asked her to submit a current doctor's report explaining why she was unable to work, and the Plaintiff provided no medical documentation. *See* Weiner Aff. Exs. 6 and 7; *see also* Mahoney Aff. ¶18, which Plaintiff does not contest, stating that Plaintiff confirmed at a meeting on February 24, 2004 that she failed to provide the Credit Union with any medical documentation.

It is hardly unreasonable for an employer to request medical documentation from an employee who had failed to report to work for over four months, had long since used up all of her sick time and vacation time, and who claimed that she was unable to return to work at least partially for health reasons. In reviewing the Plaintiff's grievance, Local 6 found no violation of the CBA by the Credit Union, and the NLRB affirmed the Union's decision to withdraw the grievance based on the Union's belief that the grievance was unlikely to succeed. (Mahoney Aff. ¶¶ 16-25.) Plaintiff has provided no reason to negate those determinations here.

Because Plaintiff cannot prove a breach by Local 6 or the Credit Union, her Section 301 claim fails as a matter of law, and the Defendants are entitled to judgment on Count III of the Amended Complaint.

### III. PLAINTIFF CANNOT ESTABLISH THAT SHE MET THE SIX-MONTH STATUTE OF LIMITATIONS FOR HER SECTION 301 CLAIM.

Plaintiff admits that for purposes of her Section 301 claim the cause of action arises from the date she had notice that the Union breached its duty by failing to proceed with her grievance.

8

(Plaintiff's Brief at 17 n. 1.)  The relevant statute of limitations in a Section 301 action with respect to both the breach of contract claim against the employer and the fair representation claim against the union is six months, as dictated by Section 10(b) of the NLRA.  *DelCostello*, 462 U.S. at 165; *Demars v. General Dynamics Corp.*, 779 F.2d 95, 97 (1st Cir. 1985) (section 301 cause of action accrues when the plaintiff received notice of the alleged union wrongdoing); *see also* Report at 20.  The Plaintiff had verbal and written notice of the Union's decision to withdraw the grievance from arbitration on June 6, 2005.  (Mahoney Aff. ¶15; Mahoney Aff. Ex. 10.)  She filed the Section 301 claim on December 12, 2005, which is six days beyond the six-month limitations period.

In an effort to overcome Defendants' argument on the statute of limitations, Plaintiff ignores the impact of the Union's June 6, 2005 letter to her confirming that the Union had decided not to proceed to arbitration on her grievance, and instead contends that there is a factual dispute regarding the date she received notice.  There is no genuine dispute on this issue.  Contrary to the Plaintiff's assertion, the Defendants have not "tailored" the Affidavit of Mary Mahoney "to counteract" Attorney Weiner's earlier affidavit filed in this action.  (*See* Plaintiff's Motion to Strike at 9.)  There is simply no support for this position.

A review of both affidavits reveals that they in fact deal with two separate letters written by Local 6.  The first letter is dated June 6, 2005 and it is addressed to counsel for the Plaintiff, Attorney Scott Adams.[2]  (Mahoney Aff. ¶15; Mahoney Aff. Ex. 10.)  The letter is from the General Counsel for Local 6, written on the letterhead of Local 6, and states:  "This letter will

---

[2] Defendants have filed herewith their Opposition to the Plaintiff's Motion to Strike Certain Portions of the Defendants' Affidavits.  There is no legitimate reason to strike Exhibit 10 to the Mahoney Affidavit.  Ms. Mahoney is the President and Business Manager of Local 6, and she

9

confirm our conversation today.  As we have discussed, the Union has decided not to proceed to arbitration on Ms. O'Donnell's grievance."  (Mahoney Aff. Ex. 10.)  The letter clearly constitutes notice to the Plaintiff that Local 6 had decided not to pursue her grievance to arbitration, and confirms the telephone call between the General Counsel for Local 6 and Plaintiff's counsel that same day.  Plaintiff offers no argument to the contrary.  She does not contest the authenticity of the June 6, 2005 letter, nor does she contend that she did not receive it on June 6, 2005 or that the Union did not notify her by telephone that day of its decision to withdraw her grievance.  *See* Affidavit of Attorney Scott Adams, ¶2, in which Attorney Adams states only that he cannot recall having any telephone conversation with General Counsel for Local 6 in which Mary Mahoney participated.  This in no way contradicts the Mahoney Affidavit and does not challenge the authenticity of the June 6, 2005 letter sent to the Plaintiff by Local 6.  If, as Plaintiff now claims, the Union breached some duty to her by withdrawing her grievance, she was obliged to file suit alleging that breach within six months.  She failed to do so.

     The Weiner Affidavit deals with a subsequent letter, which Local 6 sent to Attorney Weiner eight days later on June 14, 2005.  (Weiner Aff. Ex. 18.)  This letter is not addressed to the Plaintiff or her counsel and it merely informs defense counsel that the Union "has withdrawn" the Plaintiff's grievance.  (*Id*.)  The June 6, 2005 letter was not disclosed to the Defendants until discovery in this matter.  Therefore, it could not be attached to the Weiner Affidavit, which was filed in support of the defendants' first motion for summary judgment on September 6, 2005.  There is no contradiction between the two affidavits.  Attorney Weiner relied on the June 14, 2005 letter in his Affidavit because at that time it was the only evidence

---

has identified the June 6, 2005 letter as correspondence sent by Local 6 to the Plaintiff.
(Mahoney Aff. ¶¶1 and 15.)

known to the Defendants of Local 6's decision to withdraw the grievance. Upon receipt of the June 6, 2005 letter in discovery it became clear that Local 6 had in fact notified the Plaintiff by telephone and in writing of its decision to withdraw Plaintiff's grievance on June 6, 2005. (Mahoney Aff. ¶15; Mahoney Aff. Ex. 10.) The existence of a subsequent letter to defense counsel does not create a factual dispute as to when the Plaintiff had notice of the Union's decision not to proceed to arbitration of her grievance. Only one of these letters constitutes notice to the Plaintiff: that letter is dated June 6, 2005 and it was sent to her more than six months before she filed her Section 301 claim.[3]

Plaintiff's final argument on this issue also fails. She contends that her Section 301 claim relates back to the "original state court filing" because it occurred before the withdrawal of the grievance by the Union. (Plaintiff's Brief at 19-20.) The "relation back" doctrine is inapplicable here. As Defendants have already set forth in their opening brief, Plaintiff's filing of the original Complaint in Massachusetts Superior Court on April 28, 2005 does not save her. That Complaint included only state law claims for tortious interference with contractual relations against the following individual defendants: Donna Boggs, Brendan Hall, William Francis, Mary Lou Meighan, Bob Sylvester, and Marion Doucette. Count I of the Complaint is styled "Tortious Interference with Contractual Relations by Marion Doucette." Count II is styled "Tortious Interference with Contractual Relations by Various Board Members." Plaintiff did not assert a cause of action of any kind against the Credit Union until December 12, 2005 when she

---

[3] Plaintiff's argument regarding "anticipatory breach" is unavailing. (Plaintiff's Brief at 19.) The case law is clear that the cause of action accrues upon notice to the plaintiff, and there is no merit to Plaintiff's suggestion that the Union's confirmatory correspondence to counsel for the Credit Union eight days later can serve as the triggering date for accrual of the Plaintiff's cause of action. *See Arriaga-Zayas v. Int'l Ladies' Garment Workers,* 835 F.2d 11, 13 (1st Cir. 1987)

11

filed a separate suit solely against the Credit Union, alleging breach of the CBA under Section 301.  *See O'Donnell v. Boston Globe Employees Credit Union*, Civ. A. No. 05-12490-NG (the "Credit Union Action").

Plaintiff's choice of parties and cause of action was deliberate.  She was represented by counsel at all relevant times.  Plaintiff was terminated by the Credit Union on or about February 13, 2004.  She pursued her grievance against the Credit Union through Local 6.  She filed her state court action on April 28, 2005, alleging intentional interference with contractual relations against the individual defendants whom she perceived to be hostile towards her.  She did not name the Credit Union or the Union as defendants.  In June 2005, Local 6 decided to withdraw the grievance prior to arbitration.  Plaintiff received notice of the Union's decision to withdraw that grievance on June 6, 2005.  She did not file a claim relating to the withdrawal of her grievance until December 12, 2005.

Plaintiff cannot now salvage her Section 301 claim through the earlier filing of her intentional interference with contractual relations claims against the individual Defendants.  The Union had not yet withdrawn her grievance when she filed her tort claims in state court.  Under all of the relevant case law, the Section 301 cause of action did not exist until the Union decided to withdraw her grievance.  *Arriaga-Zayas*, 835 F.2d at 13 (Section 301 cause of action accrues when the plaintiff knows or reasonably should know of the acts constituting the <u>Union's</u> alleged wrongdoing).  Rule 15(c) simply does not apply where, as here, the Plaintiff did not seek to "amend" or "supplement" her original pleading, but, rather, filed an entirely new civil action against a different defendant based on an entirely new claim at a subsequent date.  There is

---

(cause of action accrues when "the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing").

nothing to which the Credit Union action could relate back. Rule 15(c) requires the existence of a live cause of action to which to "relate back." *See Neverson v. Bissonnette*, 261 F.3d 120, 126 (1st Cir. 2000) (where plaintiff did not seek to "amend" or "supplement" his original habeas corpus petition but instead opted to file an entirely new petition, second petition did not relate back to original dismissed petition) (citing *Marsh v. Soares*, 223 F.3d 1217, 1219 (10th Cir. 2000) (holding "relation back" doctrine inapplicable when initial habeas petition had been dismissed because there was no pleading to which the new petition could relate back)). "While courts have generally allowed amendments that correct technical errors to relate back where such corrections do not set up a new claim for relief," the First Circuit "has refused to allow an amendment to assert a claim which was not even suggested in the original complaint." *O'Laughlin v. National Railroad Passenger Corp.*, 928 F.2d 24, 26 (1st Cir. 1991) (citing *Tessier v. United States*, 269 F.2d 305, 308 (1st Cir.1959); 6A Wright, Miller & Kane, Federal Practice and Procedure, § 1497 (2d ed. 1990); and 3 Moore's Federal Practice, ¶15.15[3] (1990)). *See, e.g.*, *Bengar v. Clark Equipment Co.*, 401 Mass. 554, 556-57, 517 N.E.2d 1286, 1287 (1988) (even under Massachusetts' liberal amendment policy, which is broader than the federal practice, Rule 15(c) does not permit an amendment to relate back to the date of the commencement of the action when "the amendment seeks to add a new defendant after the statute of limitations has run and to allege against that new defendant a theory of liability wholly different from the theory of liability of the original complaint").

Further, in filing her state court action against the individual Defendants on April 28, 2005, the Plaintiff did not and could not assert a claim of tortious interference with contractual relations against the Credit Union itself, since an employer cannot be held liable for interfering with a contract to which it is a party. *See Harrison v. NetCentric Corp.*, 433 Mass. 465, 477-78,

13

744 N.E.2d 622 (2001). She did not assert a breach of contract action against the individual board members because they are not parties to the CBA between the Union and the Credit Union.

Pursuant to the Scheduling Conference held in the Credit Union Action on April 20, 2006, the Court ordered the parties to file a joint motion to consolidate the Credit Union Action with this Action. The parties did so on April 26, 2006, and the Court granted the Motion to Consolidate the two cases on May 8, 2006. (Docket Entry of May 8, 2006 in the Credit Union Action, Civ. A. No. 05-12490-NG.) On May 18, 2006, the Court granted leave in the instant action for the Plaintiff to amend her Complaint and ordered her to consolidate her claims from the Credit Union Action into the new Amended Complaint. (Docket Entry, May 18, 2006.)

None of this timing regarding the May 2006 consolidation of the two federal civil actions is relevant to the Section 301 statute of limitations issue. The Plaintiff had notice of the alleged breach by the Union on June 6, 2005. She did not file any claim under Section 301 until December 12, 2005. Accordingly, Plaintiff's Section 301 claim is barred by the applicable six-month statute of limitations. This constitutes further grounds for the entry of summary judgment on Count III of the Amended Complaint.

### IV.   PLAINTIFF HAS NO FEDERAL OR STATE CIVIL RIGHTS OR PUBLIC POLICY CLAIMS.  (COUNT IV)

Plaintiff fails to identify any federal or state civil right or public policy claim that she should be permitted to pursue, and appears to waive Count IV of the Amended Complaint. She states that her allegations that she "engaged in protected activities and suffered retaliation as a result" are "not intended to establish substantive claims but to prove rights independent of the CBA and the wrongful nature of Defendants' conduct." (Plaintiff's Brief at 12.)   This argument is insufficient to survive summary judgment. Either the Plaintiff has specific causes of action

14

and evidence to support those claims or she doesn't.  For purposes of opposing a Rule 56 motion, it is her burden to identify what these purported "civil rights and public policy violations" claims consist of.  Instead, Plaintiff cites various federal and state regulations (12 CFR 748.0 and 748.1; and 209 CMR 4.03) without identifying a specific cause of action or stating why the Defendants are not entitled to summary judgment on Count IV of the Amended Complaint.

The federal regulations to which Plaintiff refers do not <u>create</u> a cause of action for credit union employees.  12 CFR 748.0 provides that federally insured credit unions must have a written security program.  12 CFR 748.1 pertains to the filing of reports by credit unions with the regional director certifying compliance with the security program.  12 CFR 748.1(c) provides that a credit union must file a report "if it knows, suspects, or has reason to suspect that any crime or any suspicious transaction related to money laundering activity or a violation of the Bank Security Act has occurred."  209 CMR 4.03 provides that compliance with 12 CFR 748 meets the state requirements.  None of these regulations is relevant here.  Plaintiff vaguely asserts that "the retaliation experienced by Ms. O'Donnell at the hands of the Defendants implicates such rights, and measures the wrongfulness of their conduct." (Plaintiff's Brief at 12.) Plaintiff is wrong.  These are not "rights," they are regulations, and they do not provide the Plaintiff with a cause of action against the Defendants.

Plaintiff admits that she "did not inform the Banking Commission about the ATM fraud of Linda Doucette." *Id.*  She does not challenge Defendants' arguments in their Memorandum that 31 U.S.C. § 5328 (a whistleblower statute for employees of financial institutions) does not apply here, and that she is not entitled to relief under the Massachusetts Civil Rights Act.  She does not address the Defendants' preemption argument with regard to these claims, nor does she address the Defendants' substantive attack on these claims.  She should be found to have

15

conceded that she has no viable federal or state civil rights or public policy claims. Accordingly, Count IV of the Amended Complaint fails as a matter of law, and should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons and those set forth in the Defendants' Memorandum of Law, the Defendants are entitled to summary judgment on all claims against them, and the Court should enter judgment in their favor on all counts of the Amended Complaint.

Respectfully submitted,

Defendants

DONNA BOGGS, MARIAN DOUCETTE, BRENDAN HALL, WILLIAM FRANCIS, MARY LOU MEGAN, and BOSTON GLOBE EMPLOYEES CREDIT UNION

By their attorneys,

/s/Elizabeth A. Houlding

Harvey Weiner, BBO#519840
Elizabeth A. Houlding, BBO#645981
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA  02110
March 9, 2007                                    (617) 951-2100

## **CERTIFICATE OF SERVICE**

      I, Elizabeth A. Houlding, counsel for the defendants, do hereby certify, that I have this date, served the *Reply Brief of Defendants in Support of Their Motion for Summary Judgment*, by causing a copy thereof, to be sent electronically to the registered participants in this case, if any, as identified on the Notice of Electronic Filing (NEF) and paper copies mailed, first class mail, postage prepaid to any non registered participants in this case.

      /s/Elizabeth A. Houlding
      _____
      Elizabeth A. Houlding

PABOS2:EHOULDI:656510_1
193-90324