UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

**Paula O'Donnell,**
    **Plaintiff**
v.                                                                         **Civil Action No. 05-CV-11257- NG**

**Donna Boggs, et al.,**
    **Defendants.**

**Plaintiff's Motion for Reconsideration**

Plaintiff Paula O'Donnell respectfully seeks Reconsideration of Judgment in order to avoid error and manifest injustice. She requests the Court's particular attention to her common law claim against Defendant Marrion Doucette for tortious interference.[1]

Standing Apart on a Distinct Claim

Defendant Doucette stands apart from the other defendants, for it was her threats and intimidation that so physically and emotionally reduced Plaintiff O'Donnell's ability to function and perform her duties that her employer's medical department advised Mrs. O'Donnell to take a leave of absence.[2] Doucette did not merely voice verbal complaints or take recognizable and acceptable disciplinary action, she engaged in egregious conduct clearly recognized in the Magistrate's report that would be unacceptable in any surrounding, including the offices and chambers of this building.

---

[1] Plaintiff raises this issue without waiving the right of appeal on other issues.

[2] The Report acknowledges that Mrs. O'Donnell's complaints elicited retaliation "on the part of both [CEO] Doucette and the [Credit Union] board," and the retaliation "resulted in an increasingly difficult work environment." [Magistrate's Rpt. 14]. The Report acknowledges that Doucette engaged in "weekly incidents of verbal and physical intimidation," and interfered with Mrs. O'Donnell's duties as System Manager. [Id.]. The Report also acknowledges that Mrs. O'Donnell eventually experienced such debilitating physical and emotional conditions caused by the retaliation, that "[s]he began suffering 'sleepless nights, stress, panic attacks, shortness of breath, spells of nausea, vomiting and crying and general depression,'" and the Boston Globe's own medical staff recommended she take a leave of absence, which she did. [Magistrate's Rpt. 14-15].

This Court must accept the allegations regarding Doucette's conduct and Plaintiff O'Donnell's injuries at this stage of proceedings, and should recognize the Magistrate's determination that Doucette's conduct was "retaliation." The Magistrate's decision did not decide that Plaintiff O'Donnell failed to meet her burden of establishing the elements of a tortious interference claim, or that Defendant has an incontestable affirmative defense or privilege for such conduct.[3] How then, was Plaintiff O'Donnell's claim extinguished?

Justice Disclosed in a Mirror

Mirrors can provide alternate, useful views of the world, and holding a mirror to Mrs. O'Donnell's claim shows us what to expect if circumstances were reversed. Ignoring–for the moment–that Mrs. O'Donnell was a union member, what if she "retaliated" against Mrs. Doucette with the same "weekly incidents of verbal and physical intimidation" Doucette engaged in [see Magistrate's Rpt. 14], either because Doucette failed or refused to take any action against her daughter, or to punish Doucette for her daughter's misconduct? In this mirrored circumstance, there is nothing in the law that would allow Mrs. O'Donnell to escape liability.

If this Court has not retreated from or renounced the holdings of law and principles previously expressed,[4] and no federal or state appellate court negated or overruled those decisions

---

[3] It is the existence of a such a privilege that protects Mrs. O'Donnell from any claim of tortious interference that Defendant Doucette's daughter might have alleged after she was forced to resign or be terminated.

[4] *See* Ruffino v. State Street Bank & Trust Co., 908 F.Supp. 1019, 1050-52 (D.Mass. 1995)(stating interference need not cause termination to sustain claim of tortious interference)(Gertner, J.); *See also* Boyle v. Boston Foundation, Inc., 788 F.Supp. 627, 630 (D.Mass. 1992)(stating discharge not necessary to sustain tortious interference claim when interference causes contractual performance to be more burdensome).

2

and principles, then Mrs. Doucette would not even need to resign or be terminated by the Credit Union to sustain her claim against Mrs. O'Donnell.  A medically advised leave of absence would be more than sufficient proof of injury for a tort that was accomplished through unprivileged "retaliation" taking the form of "weekly incidents of verbal and physical intimidation."  The only viable question remaining would be the measure of damage.

Principles Etched in Stone

Etched in stone on the walls of the building from which the Magistrate's decision issued are significant and inspiring principles. The public walks past the words of Justice Holmes, stating "[t]he law is the witness and external deposit of our moral life," and citizens would be shocked at a judicial system with a moral compass allowing less than uniform treatment by the law or other than uniform results in like circumstances.  Citizens, and especially workers, would reasonably expect identical results whether Mrs. O'Donnell was the victim or the perpetrator of the conduct at issue.

Then, what extinguished Mrs. O'Donnell's claim against Defendant Doucette when Mrs. O'Donnell would be liable under a reversal of circumstance?  The mere fact that Mrs. O'Donnell was a union member should not and cannot explain the divergent results since no law holds, or even suggests, a double standard for union workers and their non-union managers. Absence or failure of Plaintiff O'Donnell's ancillary claims against the Credit Union and the other defendants would not defeat Mrs' O'DOnnell's claim against Doucette since those claims are immaterial to the tortious interference claim.  If Plaintiff O'Donnell remained employed at the Credit Union, or if she made no claims after being terminated, the retaliation and injury leading to a leave of absence would have been sufficient to sustain the independent claim against Doucette for tortious interference.

3

Conclusion

When a mirror is held up to Plaintiff O'Donnell's claim, the difference in results highlights the manifest injustice, and an error, in denying Plaintiff's claim against Defendant Doucette. Unless this Court interprets the law, or intends to establish a rule, such that a dual standard exists in a union shop and that certain tortious conduct is permissible for managers and not for workers, the decision to adopt the Magistrate's report on this issue should be reconsidered and reversed, and summary judgment denied to Defendant Doucette on this claim.


Submitted for
Plaintiff, by her attorney,

\_\_\_/s/ Scott Adams_____         \_\_\_8/25/2008_____
Scott Adams (BBO# 639166)                    date
34 Ridgemont St.
Allston, MA 02134
Tel: (617) 694-1332


Certificate of Service: I, Scott Adams, hereby certify that on this date of 8/25/2008 I served a copy of this document on Defendants' counsel of record by electronic service.

\_\_\_/s/ Scott Adams_____         \_\_\_8/25/2008_____
Scott Adams (BBO# 639166)                    date